## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

POWER2B, INC.,

          *Plaintiff*,

   v.

SAMSUNG ELECTRONICS CO., LTD.
and SAMSUNG ELECTRONICS AMERICA,
INC.,

          *Defendants*.

Case No. 6:20-CV-01183

**Jury Trial Requested**

---

**SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA,
INC.'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO POWER2B, LLC'S COMPLAINT FOR PATENT
INFRINGEMENT**

Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America,

Inc. ("SEA") (collectively, "Samsung"), by and through the undersigned attorneys, for their

Answer, Affirmative Defenses, and Counterclaims to the Complaint for Patent Infringement filed

on December 23, 2020 ("Complaint") by Plaintiff Power2B, Inc. ("Power2B"), admit and deny

as follows. Except as hereinafter specifically admitted, qualified, or affirmatively alleged,

Samsung denies each and every allegation, matter, or thing contained in the Complaint and states

in response to each of the numbered paragraphs of said Complaint as follows:

## I.  <u>NATURE OF THE ACTION</u>

1.     Samsung admits that Power2B's Complaint purports to allege patent infringement

by Samsung. Samsung denies the remaining allegations in Paragraph 1 of the Complaint, and

specifically denies that it has committed or is committing any act of patent infringement.

## II.  **PARTIES**

2.      Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and on that basis denies them.

3.      Samsung admits that SEC is a corporation organized under the laws of the Republic of Korea. Samsung admits that SEC has a place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, 443-742, Republic of Korea. Samsung denies the remaining allegations in Paragraph 3 of the Complaint.

4.      Samsung admits that SEA is a corporation organized under the laws of New York. Samsung admits that SEA has a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 97660. SEA further admits that CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, is a registered agent of SEA for certain purposes. Samsung denies the remaining allegations in Paragraph 4 of the Complaint.

5.      Samsung admits that SEC designs and/or manufactures certain products that are sold in the United States and other markets, including certain consumer electronics, mobile phones, tablets, computers, and televisions. Samsung denies the remaining allegations in Paragraph 5 of the Complaint.

6.      Samsung admits that SEA is a wholly-owned subsidiary of SEC. Samsung admits that SEA distributes certain Samsung consumer electronics products in the United States, including certain products accused in the Complaint. Samsung denies the remaining allegations in Paragraph 6 of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

### III.   JURISDICTION AND VENUE

7.      Samsung admits that, for purposes of this case only, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      Samsung, for purposes of this case only, will not challenge personal jurisdiction in this Court. Samsung admits that Samsung devices are sold in the United States and the State of Texas, including in the Western District of Texas. The remaining allegations in Paragraph 8 of the Complaint express legal conclusions and thus no response is required. To the extent that a response is required, Samsung denies the remaining allegations in Paragraph 8 of the Complaint.

9.      Samsung admits that SEA is registered to do business in Texas and uses a registered agent in Texas for certain purposes. Samsung denies the remaining allegations in Paragraph 9 of the Complaint.

10.      Samsung admits that Samsung devices are sold in the State of Texas, including in the Western District of Texas. Samsung denies the remaining allegations in Paragraph 10 of the Complaint.

11.      Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and on that basis denies them.

12.      Samsung denies the allegations in Paragraph 12 of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

13.      Samsung will not contest, for purposes of this case only, that venue over SEC properly lies in this District. Samsung denies the remaining allegations in Paragraph 13 of the Complaint.

14.      Samsung will not contest, for purposes of this case only, that venue over SEA properly lies in this District. SEA denies the remaining allegations in Paragraph 14 of the

Complaint, and specifically denies that it has committed or is committing any act of patent infringement, or that it has regular and established places of business in this District.

15.     Samsung is without information sufficient to form a belief as to whether Power2B anticipates there will be substantial overlap with respect to discovery, and on that basis denies the same. Samsung denies the remaining allegations in Paragraph 15 of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

16.     Samsung denies the allegations in Paragraph 16 of the Complaint.

## IV.  THE ASSERTED PATENTS

17.     Samsung admits that, on its face, U.S. Patent No. 8,610,675 (the "'675 Patent") is titled "Interactive Devices," names Sarah Michelle Lipman, Eran Kali, Boris Gutin, Moti Margalit, Robert Michael Lipman, and Ken Zwiebel as inventors, and states that it issued on December 17, 2013. Samsung admits that what purports to be a copy of the '675 Patent was attached to the Complaint as Exhibit A. Samsung denies that the United States Patent and Trademark Office (USPTO) duly and legally issued the '675 Patent. Samsung denies the remaining allegations in Paragraph 17 of the Complaint.

18.     Samsung admits that, on its face, U.S. Patent No. 8,624,850 (the "'850 Patent") is titled "Displays and Information Input Devices," names Sarah Michelle Lipman, Eran Kali, Boris Gutin, Moti Margalit, Robert Michael Lipman, and Ken Zwiebel as inventors, and states that it issued on January 7, 2014. Samsung admits that what purports to be a copy of the '850 Patent was attached to the Complaint as Exhibit B. Samsung denies that the USPTO duly and legally issued the '850 Patent. Samsung denies the remaining allegations in Paragraph 18 of the Complaint.

19.     Samsung admits that, on its face, U.S. Patent No. 9,317,170 (the "'170 Patent") is titled "Interactive Devices," names Sarah Michelle Lipman, Eran Kali, Boris Gutin, Moti Margalit, Robert Michael Lipman, and Ken Zwiebel as inventors, and states that it issued on January 7, 2014. Samsung admits that what purports to be a copy of the '170 Patent was attached to the Complaint as Exhibit C. Samsung denies that the USPTO duly and legally issued the '170 Patent. Samsung denies the remaining allegations in Paragraph 19 of the Complaint.

20.     Samsung admits that, on its face, U.S. Patent No. 9,569,093 (the "'093 Patent") is titled "Displays and Information Input Devices," names Sarah Michelle Lipman, Eran Kali, Boris Gutin, Moti Margalit, Robert Michael Lipman, and Ken Zwiebel as inventors, and states that it issued on February 14, 2017. Samsung admits that what purports to be a copy of the '093 Patent was attached to the Complaint as Exhibit D. Samsung denies that the USPTO duly and legally issued the '093 Patent. Samsung denies the remaining allegations in Paragraph 20 of the Complaint.

21.     Samsung admits that, on its face, U.S. Patent No. 10,156,931 (the "'931 Patent") is titled "Displays and Information Input Devices," names Eran Kali, Sarah Michelle Lipman, Boris Gutin, and Moti Margalit as inventors, and states that it issued on December 18, 2018. Samsung admits that what purports to be a copy of the '931 Patent was attached to the Complaint as Exhibit E. Samsung denies that the USPTO duly and legally issued the '931 Patent. Samsung denies the remaining allegations in Paragraph 21 of the Complaint.

22.     Samsung admits that Power2B purports to allege that Samsung has infringed and continues to infringe at least one claim of each of the '675, '850, '170, '093 and '931 Patents (collectively, the "Asserted Patents"). Samsung denies the remaining allegations in Paragraph 22

of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

**V.**          **FACTUAL ALLEGATIONS**
### Overview of the Patented Technology

23.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint, and on that basis denies them.

24.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint, and on that basis denies them.

25.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint, and on that basis denies them.

### Power2B's Alleged Interactions with Samsung

26.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint, and on that basis denies them.

27.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint, and on that basis denies them.

28.     Samsung denies that it gained actual knowledge and notice of any of the Asserted Patents through the alleged dealings referenced in Paragraph 28 of the Complaint. Samsung is without information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint, and on that basis denies them.

29.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint, and on that basis denies them.

30.     Samsung denies the allegations in Paragraph 30 of the Complaint.

31.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint, and on that basis denies them.

32.     Samsung denies the allegations in Paragraph 32 of the Complaint.

33.     Samsung denies the allegations in Paragraph 33 of the Complaint.

34.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint, and on that basis denies them.

### The Accused Products

35.     Samsung denies the allegations in Paragraph 35 of the Complaint.

36.     Samsung denies the allegations in Paragraph 36 of the Complaint.

37.     Samsung denies the allegations in Paragraph 37 of the Complaint.

38.     Samsung admits that it marketed at least some of the Accused Products. Samsung denies the remaining allegations in Paragraph 38 of the Complaint.

39.     Samsung admits that Paragraph 39 of the Complaint purports to include a portion of a Galaxy S4 User Manual. Samsung further admits that Paragraph 39 of the Complaint purports to include a screen shot of a Galaxy S4 that shows the phrase "Air gesture." Samsung denies the remaining allegations in Paragraph 39 of the Complaint.

40.     Samsung denies the allegations in Paragraph 40 of the Complaint.

### Samsung's Alleged Acts of Infringement

41.     Samsung denies the allegations in Paragraph 41 of the Complaint.

42.     Samsung denies the allegations in Paragraph 42 of the Complaint.

43.     Samsung denies the allegations in Paragraph 43 of the Complaint.

44.     Samsung denies the allegations in Paragraph 44 of the Complaint.

45.     Samsung denies the allegations in Paragraph 45 of the Complaint.

46.     Samsung denies the allegations in Paragraph 46 of the Complaint.

47.     Samsung denies the allegations in Paragraph 47 of the Complaint.

48.     Samsung denies the allegations in Paragraph 48 of the Complaint.

49.     Samsung admits that it gained knowledge of the Asserted Patents no later than the date of service of the Complaint. Samsung denies the remaining allegations in Paragraph 49 of the Complaint.

50.     Paragraph 50 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the Complaint, and on that basis denies them.

## VI.  COUNT ONE
### Alleged Infringement of U.S. Patent No. 8,610,675

51.     Samsung incorporates by reference its responses to Power2B's allegations in the preceding paragraphs as if specifically set forth herein.

52.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint regarding the rights, title, and interest in and to the '675 Patent, and on that basis denies them. Samsung denies the remaining allegations in Paragraph 52 of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

53.     Samsung denies the allegations in Paragraph 53 of the Complaint.

54.     Samsung denies the allegations in Paragraph 54 of the Complaint.

55.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 55 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

56.     Paragraph 56 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 56 of the Complaint.

57.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 57 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

58.     Paragraph 58 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Accused Products include AMOLED displays. Samsung denies the remaining allegation in Paragraph 58 of the Complaint.

59.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 59 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

60.     Paragraph 60 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 60 of the Complaint.

61.     Paragraph 61 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Galaxy S4-S6 and Note 3-4 support a functionality called "air gesture," but specifically denies that the functionality called "air gesture" in different products operate in the same way, or as described in Paragraph 61 of the Complaint. Samsung denies the remaining allegations in Paragraph 61 of the Complaint.

62.    Paragraph 62 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 62 of the Complaint.

63.    Samsung denies the allegations in Paragraph 63 of the Complaint.

64.    Paragraph 64 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 64 of the Complaint.

65.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 65 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

66.    Paragraph 66 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 66 of the Complaint.

67.    Samsung denies the allegations in Paragraph 67 of the Complaint.

68.    Samsung denies the allegations in Paragraph 68 of the Complaint.

69.    Samsung denies the allegations in Paragraph 69 of the Complaint.

70.    Samsung denies the allegations in Paragraph 70 of the Complaint.

71.    Samsung denies the allegations in Paragraph 71 of the Complaint.

72.    Samsung denies the allegations in Paragraph 72 of the Complaint.

73.    Samsung denies the allegations in Paragraph 73 of the Complaint.

74.    Samsung denies the allegations in Paragraph 74 of the Complaint.

75.    Samsung denies the allegations in Paragraph 75 of the Complaint.

76.    Samsung denies the allegations in Paragraph 76 of the Complaint.

77.     Samsung denies the allegations in Paragraph 77 of the Complaint.

78.     Samsung denies the allegations in Paragraph 78 of the Complaint.

## VII.  COUNT TWO
## Alleged Infringement of U.S. Patent No. 8,624,850

79.     Samsung incorporates by reference its responses to Power2B's allegations in the preceding paragraphs as if specifically set forth herein.

80.     Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 80 of the Complaint regarding the rights, title, and interest in and to the '850 Patent, and on that basis denies them. Samsung denies the remaining allegations in Paragraph 80 of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

81.     Samsung denies the allegations in Paragraph 81 of the Complaint.

82.     Samsung denies the allegations in Paragraph 82 of the Complaint.

83.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 83 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

84.     Paragraph 84 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Accused Products include AMOLED displays. Samsung denies the remaining allegations in Paragraph 84 of the Complaint.

85.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 85 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

86.     Paragraph 86 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Accused Products include AMOLED displays. Samsung denies the remaining allegation in Paragraph 86 of the Complaint.

87.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 87 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

88.     Paragraph 88 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 88 of the Complaint.

89.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 89 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

90.     Paragraph 90 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 90 of the Complaint.

91.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 91 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

92.     Paragraph 92 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Accused Products include AMOLED displays. Samsung denies the remaining allegation in Paragraph 92 of the Complaint.

93.     Samsung denies the allegations in Paragraph 93 of the Complaint.

94.     Samsung denies the allegations in Paragraph 94 of the Complaint.

95.     Samsung denies the allegations in Paragraph 95 of the Complaint.

96.     Samsung denies the allegations in Paragraph 96 of the Complaint.

97.     Samsung denies the allegations in Paragraph 97 of the Complaint.

98.     Samsung denies the allegations in Paragraph 98 of the Complaint.

99.     Samsung denies the allegations in Paragraph 99 of the Complaint.

100.    Samsung denies the allegations in Paragraph 100 of the Complaint.

101.    Samsung denies the allegations in Paragraph 101 of the Complaint.

102.    Samsung denies the allegations in Paragraph 102 of the Complaint.

103.    Samsung denies the allegations in Paragraph 103 of the Complaint.

104.    Samsung denies the allegations in Paragraph 104 of the Complaint.

**VIII.  COUNT THREE**
**Alleged Infringement of U.S. Patent No. 9,317,170**

105.    Samsung incorporates by reference its responses to Power2B's allegations in the preceding paragraphs as if specifically set forth herein.

106.    Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 106 of the Complaint regarding the rights, title, and interest in and to the '170 Patent, and on that basis denies them. Samsung denies the remaining allegations in Paragraph 106 of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

107.    Samsung denies the allegations in Paragraph 107 of the Complaint.

108.    Samsung denies the allegations in Paragraph 108 of the Complaint.

109.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 109 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

110.     Paragraph 110 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Accused Products include AMOLED displays. Samsung denies the remaining allegations in Paragraph 110 of the Complaint.

111.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 111 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

112.     Paragraph 112 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 112 of the Complaint.

113.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 113 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

114.     Paragraph 114 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 114 of the Complaint.

115.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 115 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

116.     Paragraph 116 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 116 of the Complaint.

117.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 117 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

118.     Paragraph 118 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 118 of the Complaint.

119.     Paragraph 119 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Accused Products include a Maxim MAX88920 or AMS AG TMD490X. Samsung denies the remaining allegations in Paragraph 119 of the Complaint.

120.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 120 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

121.     Paragraph 121 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 121 of the Complaint.

122.     Samsung denies the allegations in Paragraph 122 of the Complaint.

123.     Samsung denies the allegations in Paragraph 123 of the Complaint.

124.     Samsung denies the allegations in Paragraph 124 of the Complaint.

125.     Samsung denies the allegations in Paragraph 125 of the Complaint.

126.    Samsung denies the allegations in Paragraph 126 of the Complaint.

127.    Samsung denies the allegations in Paragraph 127 of the Complaint.

128.    Samsung denies the allegations in Paragraph 128 of the Complaint.

129.    Samsung denies the allegations in Paragraph 129 of the Complaint.

130.    Samsung denies the allegations in Paragraph 130 of the Complaint.

131.    Samsung denies the allegations in Paragraph 131 of the Complaint.

132.    Samsung denies the allegations in Paragraph 132 of the Complaint.

133.    Samsung denies the allegations in Paragraph 133 of the Complaint.

## IX.  COUNT FOUR
### Alleged Infringement of U.S. Patent No. 9,569,093

134.    Samsung incorporates by reference its responses to Power2B's allegations in the preceding paragraphs as if specifically set forth herein.

135.    Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 135 of the Complaint regarding the rights, title, and interest in and to the '093 Patent, and on that basis denies them. Samsung denies the remaining allegations in Paragraph 135 of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

136.    Samsung denies the allegations in Paragraph 136 of the Complaint.

137.    Samsung denies the allegations in Paragraph 137 of the Complaint.

138.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 138 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

139.    Paragraph 139 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the

Accused Products include AMOLED displays. Samsung denies the remaining allegations in Paragraph 139 of the Complaint.

140.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 140 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

141.    Paragraph 141 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 141 of the Complaint.

142.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 142 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

143.    Paragraph 143 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 143 of the Complaint.

144.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 144 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

145.    Paragraph 145 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 145 of the Complaint.

146.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 146 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

147. Paragraph 147 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 147 of the Complaint.

148. Samsung denies the allegations in Paragraph 148 of the Complaint.

149. Samsung denies the allegations in Paragraph 149 of the Complaint.

150. Samsung denies the allegations in Paragraph 150 of the Complaint.

151. Samsung denies the allegations in Paragraph 151 of the Complaint.

152. Samsung denies the allegations in Paragraph 152 of the Complaint.

153. Samsung denies the allegations in Paragraph 153 of the Complaint.

154. Samsung denies the allegations in Paragraph 154 of the Complaint.

155. Samsung denies the allegations in Paragraph 155 of the Complaint.

156. Samsung denies the allegations in Paragraph 156 of the Complaint.

157. Samsung denies the allegations in Paragraph 157 of the Complaint.

158. Samsung denies the allegations in Paragraph 158 of the Complaint.

159. Samsung denies the allegations in Paragraph 159 of the Complaint.

## X.  COUNT FIVE
### Alleged Infringement of U.S. Patent No. 10,156,931

160. Samsung incorporates by reference its responses to Power2B's allegations in the preceding paragraphs as if specifically set forth herein.

161. Samsung is without information sufficient to form a belief as to the truth of the allegations in Paragraph 161 of the Complaint regarding the rights, title, and interest in and to the '931 Patent, and on that basis denies them. Samsung denies the remaining allegations in Paragraph 161 of the Complaint, and specifically denies that it has committed or is committing any act of patent infringement.

162.    Samsung denies the allegations in Paragraph 162 of the Complaint.

163.    Samsung denies the allegations in Paragraph 163 of the Complaint.

164.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 164 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

165.    Paragraph 165 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Accused Products include AMOLED displays. Samsung denies the remaining allegations in Paragraph 165 of the Complaint.

166.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 166 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

167.    Paragraph 167 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung is without information sufficient to form a belief as to whether the photos in Paragraph 167 of the Complaint are device sensors from a Samsung Galaxy S4, and on that basis denies that Paragraph 167 of the Complaint shows photos of Samsung Galaxy S4 device sensors. Samsung denies the remaining allegations in Paragraph 167 of the Complaint.

168.    Paragraph 168 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 168 of the Complaint.

169.     Paragraph 169 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 169 of the Complaint.

170.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 170 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

171.     Paragraph 171 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 171 of the Complaint.

172.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 172 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

173.     Paragraph 173 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 173 of the Complaint.

174.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 174 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

175.     Paragraph 175 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 175 of the Complaint.

176.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 176 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

177.    Paragraph 177 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung admits that at least some of the Accused Products include AMOLED displays. Samsung denies the remaining allegations in Paragraph 177 of the Complaint.

178.    Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 178 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

179.    Paragraph 179 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung is without information sufficient to form a belief as to whether the photos in Paragraph 179 of the Complaint are device sensors from a Samsung Galaxy S4, and on that basis denies that Paragraph 179 of the Complaint shows photos of Samsung Galaxy S4 device sensors. Samsung denies the remaining allegations in Paragraph 179 of the Complaint.

180.    Paragraph 180 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 180 of the Complaint.

181.    Paragraph 181 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 181 of the Complaint.

182.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 182 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

183.     Paragraph 183 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 183 of the Complaint.

184.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 184 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

185.     Paragraph 185 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 185 of the Complaint.

186.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 186 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

187.     Paragraph 187 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 187 of the Complaint.

188.     Samsung avers that the referenced claim speaks for itself, and otherwise denies the allegations of Paragraph 188 of the Complaint, including all characterizations of the claim beyond the text of the claim and distortions via selective excerpts.

189.     Paragraph 189 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 189 of the Complaint.

190.     Samsung denies the allegations in Paragraph 190 of the Complaint.

191.     Samsung denies the allegations in Paragraph 191 of the Complaint.

192.     Samsung denies the allegations in Paragraph 192 of the Complaint.

193.     Samsung denies the allegations in Paragraph 193 of the Complaint.

194.     Samsung denies the allegations in Paragraph 194 of the Complaint.

195.     Samsung denies the allegations in Paragraph 195 of the Complaint.

196.     Samsung denies the allegations in Paragraph 196 of the Complaint.

197.     Samsung denies the allegations in Paragraph 197 of the Complaint.

198.     Samsung denies the allegations in Paragraph 198 of the Complaint.

199.     Samsung denies the allegations in Paragraph 199 of the Complaint.

200.     Samsung denies the allegations in Paragraph 200 of the Complaint.

201.     Samsung denies the allegations in Paragraph 201 of the Complaint.

## XI.   EXCEPTIONAL CASE

202.     Paragraph 202 of the Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Samsung denies the allegations in Paragraph 202 of the Complaint.

## XII.   RESPONSE TO POWER2B'S JURY DEMAND

203.     To the extent a response is required, Samsung admits that Power2B's Complaint contains a request for a jury trial.

## XIII.   RESPONSE TO POWER2B'S PRAYER FOR RELIEF

204.     To the extent a response is required, Samsung denies that Power2B is entitled to any of its requested relief. Samsung specifically denies that it, literally and/or under the doctrine of equivalents, has infringed or is infringing any of the Asserted Patents; specifically denies that Power2B is entitled to judgment of willful infringement; specifically denies that Power2B is entitled to any injunctive relief; specifically denies that Power2B is entitled to damages, costs, expenses, or enhanced damages for alleged infringement of the Asserted Patents; specifically denies that Samsung should provide an accounting or pay supplemental damages, including any pre-judgment or post-judgment interest to Power2B; specifically denies that this is an exceptional case within the meaning of 35 U.S.C. § 285; specifically denies that Power2B is entitled to attorneys' fees; and specifically denies that Power2B is entitled to any other relief in this action.

## GENERAL DENIAL

205.     To the extent that any allegations of the Complaint are not specifically admitted, Samsung hereby denies them.

## AFFIRMATIVE DEFENSES

206.     Without admitting or acknowledging that Samsung bears the burden of proof as to any of them and reserving the right to amend its answer as additional information becomes available, Samsung pleads the following defenses:

## FIRST DEFENSE
### (Non-infringement)

207.     Samsung has not engaged in any acts that would constitute direct or indirect infringement of any valid claim of the '675 Patent, either literally or under the doctrine of equivalents.

208.    Samsung has not engaged in any acts that would constitute direct or indirect infringement of any valid claim of the '850 Patent, either literally or under the doctrine of equivalents.

209.    Samsung has not engaged in any acts that would constitute direct or indirect infringement of any valid claim of the '170 Patent, either literally or under the doctrine of equivalents.

210.    Samsung has not engaged in any acts that would constitute direct or indirect infringement of any valid claim of the '093 Patent, either literally or under the doctrine of equivalents.

211.    Samsung has not engaged in any acts that would constitute direct or indirect infringement of any valid claim of the '931 Patent, either literally or under the doctrine of equivalents.

## SECOND DEFENSE
### (Invalidity)

212.    The '675 Patent is invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq*., including at least sections 101, 102, 103, and 112.

213.    The '850 Patent is invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq*., including at least sections 101, 102, 103, and 112.

214.    The '170 Patent is invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq*., including at least sections 101, 102, 103, and 112.

215.    The '093 Patent is invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq*., including at least sections 101, 102, 103, and 112.

216.    The '931 Patent is invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq*., including at least sections 101, 102, 103, and 112.

## THIRD DEFENSE
### (Prosecution History Estoppel)

217.    Power2B is barred or limited from recovery in whole or in part by the doctrine of prosecution history estoppel.

## FOURTH DEFENSE
### (Equitable Doctrines)

218.    Power2B is barred or limited from recovery in whole or in part by the doctrines of estoppel, waiver, acquiescence, patent misuse, and/or unclean hands.

## FIFTH DEFENSE
### (Limitation on Damages)

219.    Power2B's right to seek damages is limited by statute because it may not recover money damages for any alleged infringement committed more than six years prior to the filing of its Complaint under of 35 U.S.C. § 286.

## SIXTH DEFENSE
### (Adequate Remedy at Law)

220.    Power2B is not entitled to an injunction because Power2B is not likely to prevail on the merits, has not suffered and will not suffer irreparable harm because of Samsung's conduct, and has an adequate remedy at law.

## SEVENTH DEFENSE
### (License; Exhaustion)

221.    Power2B's claims for relief are barred or limited to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to Samsung or are imported, sold by, offered for sale by, made by, or made for, any entity or entities having express or implied licenses to one or more of the Asserted Patents, and/or under the doctrines of exhaustion, first sale, or full compensation.

## EIGHTH DEFENSE
### (Territoriality)

222.    To the extent that Power2B's claims are directed to acts occurring outside the

United States, those claims for relief are barred or limited by the doctrine of territoriality by 35

U.S.C. § 271 et seq., including but not limited to § 271(a) and (c).

## NINTH DEFENSE
### (No Attorneys' Fees)

223.    Power2B is not entitled to recover attorneys' fees associated with this action

under 35 U.S.C. § 285 or costs associated with this action under 35 U.S.C. § 288.

## TENTH DEFENSE
### (Failure To State A Claim)

224.    Power2B has failed to state a claim upon which relief can be granted.

## ELEVENTH DEFENSE
### (Marking)

225.    Power2B is barred in whole or in part from recovering damages by a failure by

the owner and/or licensee of the Asserted Patents to mark relevant products as required by 35

U.S.C. § 287.

## TWELFTH DEFENSE
### (Lack of Standing)

226.    To the extent that Power2B lacks all substantive rights to bring suit and to exclude

others from practicing the claims of one or more of the Asserted Patents, Power2B's claims are

barred by a lack of standing.

## THIRTEENTH DEFENSE
### (Inequitable Conduct – Unenforceability of the '675 Patent)

227.    All claims of the '675 Patent are unenforceable because the '675 Patent was

obtained through inequitable conduct before the United States Patent and Trademark Office

("USPTO") by intentionally and deceptively failing to disclose to the USPTO material

information during the prosecution of the application for the '675 Patent.

228.     Specifically, the inventors, their patent counsel, and/or other individuals associated with the filing and prosecution of the application for the '675 Patent intentionally and deceptively failed to disclose to the USPTO during the prosecution of the patent application material information.  The material information include USPTO's Office Actions and the prior art relied upon by the patent examiner in the prosecution of patents and patent applications by the inventors of the '675 Patent.  Those patents and patent applications were being prosecuted by the same patent counsel and directed to the same invention as the '675 Patent.  The withheld information was material to the patentability of at least one of the claims of the '675 Patent, and the intentional and deceptive failure to disclose this material information to the USPTO constituted inequitable conduct.

### Background Regarding the '675 Patent and
### Prosecution of U.S. Patent Application No. 12/066,238

229.     On March 7, 2008, Mr. S. Peter Ledwig of Darby & Darby, PC, filed U.S. Patent Application No. 12/066,238 (the "'238 Application").  The '238 Application lists Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit as inventors.  Each of the inventors of the '238 Application is also a named inventor of the '675 Patent.

230.     On September 11, 2009,  Mr. Alan Young of Young Law Firm, P.C., filed U.S. Patent Application No. 12/531,039 (the "'039 Application or the "'675 Patent Application").  The '039 Application eventually issued as the '675 Patent.  The '039 Application lists as inventors Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, who are also the inventors of the '238 Application, as well as Robert Michael Lipman and Ken Zwiebel.

231.     The '238 Application and the '675 Patent Application were each assigned to different examiners.

232.     On May 10, 2010, Mr. Paul Y. Feng of Fulwder Patton LLP filed  a revocation of Power of Attorney for prior patent counsel and filed a new Power of Attorney to represent the

inventors of the '238 Applications in the prosecution of the '238 Application.  On the same day, Mr. Feng also filed a revocation of Power of Attorney for prior patent counsel and filed a new Power of Attorney to represent the inventors of the '675 Patent Application.

233.    Mr. Feng became aware of U.S. Patent Application Publication No. 2002/0075243 ("Newton") at least as early as December 23, 2011, when the examiner assigned to the '238 Application issued an office action.  In the office action, the examiner rejected all pending claims of the '238 Application as anticipated by Newton.  On information and belief, each of Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, also learned of Newton reference at least through Mr. Feng.

234.    On June 21, 2012, Mr. Feng substantively responded to the December 23, 2011, office action in the '238 Application.

235.    Mr. Feng became aware of U.S. Patent Application Publication No. 2003/0034439 ("Reime") at least as early as January 23, 2013, when the examiner assigned to the '238 Application issued an office action.  In the office action, the examiner rejected all pending claims of the '238 Application as anticipated by Reime.  On information and belief, each of Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, also learned of Reime reference at least through Mr. Feng.

236.    On July 23, 2013, Mr. Feng substantively responded to the January 23, 2013, office action in the '238 Application.

237.    While prosecuting the '238 Application and responding to office actions based on Newton and Reime, Mr. Feng was actively filing various papers in the prosecution of the '675 Patent Application, including responding to a requirement for restriction (filed on October 29, 2012), and substantively amending claims and responding to an office action (filed on January

23, 2013).  Nonetheless, Mr. Feng failed to disclose Newton or Reime to the USPTO during the prosecution of the '675 Patent Application.

238.   On August 20, 2013, the examiner in the '675 Patent Application issued a Notice of Allowance, without having been made aware of Newton or Reime.

239.   On August 30, 2013, the examiner in the '238 Application issued a final rejection of then-pending claims of the '238 Application, again based on Reime.

240.   On February 28, 2014, Mr. Feng substantively responded to the August 30, 2013, office action in the '238 Application.

241.   On March 27, 2014, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

242.   On November 21, 2014, Mr. Feng substantively responded to the March 27, 2014, office action in the '238 Application.

243.   On January 13, 2015, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

244.   On February 9, 2016, Mr. Feng substantively responded to the January 13, 2015, office action in the '238 Application.

245.   On March 11, 2016, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

246.   After having failed to overcome Reime reference through multiple rounds of amendments and arguments over three years, Power2B retained a new patent counsel.  On April 8, 2016, Mr. Adam P. Daniels of Polsinelli PC replaced Mr. Feng in the prosecution of the '238 Application. *See* Ex. 1 at  SAMS302-0051220 (Power of Attorney dated April 8, 2016).

247.   On June 10, 2016, Mr. Daniels substantively responded to the March 11, 2016, office action.

248.     On July 19, 2016, Mr. Daniels also filed a Power of Attorney in the '675 Patent

Application, and on July 20, 2016, filed a request for certificate of correction for the '675 Patent.

249.     On August 30, 2016, the examiner in the '238 Application conducted an interview

Mr. Daniels.  *See* Ex. 1 at SAMS302-0051260 (Interview summary, dated September 14, 2016).

During the interview, the examiner "discussed subject matter of independent claims in view

Patent# 9317170, 8610675 and 8624850; and how these claims could be potentially rejected

under ODP. Examiner requested for Applicant to file a Terminal Disclaimer for ALL THREE

Patent# mentioned above."  *Id.* (capitalization original).  On September 1, 2016, Mr. Daniels

filed terminal disclaimers in the prosecution of the '238 Application on behalf of Power2B.

250.     While prosecuting the '238 Application, Mr. Daniels was also actively filing

various papers relating to the '675 Patent Application, including a petition to correct priority

claim (filed on July 20, 2016), and response to decision on petition (filed September 22, 2016).

Nonetheless, Mr. Daniels failed to disclose Newton or Reime to the USPTO.

### Newton and Reime References Were Material to the Patentability of the '675 Patent and Not Cumulative to Other Information Before the USPTO

251.     Newton was published on June 20, 2002, and therefore is a prior art to the '675

Patent.

252.     During prosecution of the '675 Patent Application, the examiner rejected then-

pending claims of the '675 Patent Application as anticipated by a prior art. *See* Ex. 2  at

P2BGES-0003318 – P2BGES-0003320 ('675 Patent File History, Office Action dated January

16, 2013 at 2-4).  The examiner stated that then-pending dependent claim 160 would be

patentable if written in independent form.  The dependent claim 160 recited "A position sensing

assembly according to claim 152, wherein the change in the amount of radiation detected results

from ones of the plurality of detector elements detecting reflected light from the object in

31

addition to detecting the radiation at the baseline level." Ex. 2  at P2BGES-0003393 ('675

Patent File History, Claims dated October 29, 2012, at 10).

253.    During prosecution of the '238 Application, the examiner characterized Newton

as below:

> Regarding claim 58, Newton teaches a position sensing assembly comprising: a plate (touch panel display screen 100; Fig 1) defining a surface; and at least one pixel array (109; Fig 1) comprising a plurality of detector elements (109a-109e; Fig 1) detecting electromagnetic radiation (infrared, visible light, microwave radiation; para [0017]) at a baseline level (para [0036]; para [0041]), said at least one pixel array being operative to sense a position of an object with respect to said surface according to locations of ones of said plurality of detector elements at which at least one of the amount of radiation detected and the change in the amount of radiation detected exceed a predetermined threshold (para [0036] - para [0041]). (Note: as explained in para [0041], comparing a detection map created at the instant in time of a touch to a stored detection match created when the touch panel display screen 100 is not being touched (a baseline level), a determination may be made as to which beams have been interrupted. This comparing, indicates the change in the amount of radiation detected exceed a predetermined threshold).
>
> Regarding claim 59, Newton further teaches the position sensing assembly and wherein said change in the amount of radiation detected results from ones of said plurality of detector elements detecting reflected light from said object in addition to detecting said radiation at said baseline level (para [0041]).

Ex. 1 at SAMS302-0050859 – SAMS302-0050860 ('238 Application File
History, Office Action dated June 7, 2011, at 4-5) (emphasis added).

254.    Thus, the examiner in the '238 Application stated that Newton teaches the same

element that were found missing in the prior art that was before the examiner in the '675 Patent

Application.  Despite having knowledge the disclosure of Newton and the interpretation of

Newton's disclosure discussed during '238 Application, Mr. Feng did not disclose Newton to the

examiner in the '675 Patent Application.  Instead, Mr. Feng redrafted then-pending independent

claim 152 of the '675 Patent Application to add the additional limitation of the claim 160 to

secure allowability.  *See* Ex. 2 at P2BGES-0003303 ('675 Patent File History, Claims dated June

27, 2013, at 2).  The re-written claim 152 issued as Claim 1 of the '675 Patent.

255.    Thus, on information and belief,  Newton was material and also not cumulative of

the prior already before the USPTO during the prosecution of the '675 Patent Application, at

least because Newton disclosed the elements considered missing in the prior art presented during

the prosecution of the '675 Patent Application, and because the perceived absence of the element

("change in the amount of radiation detected results from ones of the plurality of detector

elements detecting reflected light from the object in addition to detecting the radiation at the

baseline level") in the prior art was the reason '675 Patent was allowed to issue.

256.    Reime was published on February 20, 2003, and therefore is a prior art to the '675

Patent.

257.    During prosecution of the '238 Application, the examiner characterized Reime as

below:

> Regarding claim 58, Reime teaches a position sensing assembly
> comprising: a plate (cover plate 60; Fig 8a; para [0086]) defining a
> surface (a touch surface; Fig 8A; para [0086]); and at least one pixel
> array (RXU, RXD; Fig 5A) comprising a plurality of detector
> elements (RXU and RXD; Fig 5A) detecting electromagnetic
> radiation (Fig 1; LED operated in an infrared (IR) = type of
> electromagnetic radiation; para [0092]) at a baseline level (baseline
> of the output signal; para [0088]), said at least one pixel array being
> operative to sense a position (position of finger 100; para [0073];
> para [0074]) of an object (finger 100' or pencil 100; Fig 1; Fig 2a;
> para [0073]; Fig 11) with respect to said surface according to
> locations of .ones of said plurality of detector elements (Fig 1; Fig
> 2A; Fig 8D; Fig 11) at which at least one of the amount of radiation
> detected (light rays 202,204 reach the receiver 30 by way of partial
> reflection is described in para [0086] which indicated that at least
> one amount of radiation is detected by receiver 30) and the change
> in the amount of radiation detected exceed a predetermined
> threshold (reflection causes the increase in the received light amount
> by the receiver 30; para [0086]; the term "increase" with respect to
> the partial reflection clearly shows that the amount of radiation
> detected exceed a predetermined threshold where predetermined
> threshold is broadly interpreted as any threshold value).

> Regarding claim 59, <u>Reime further teaches the position sensing
> assembly according to claim 58 and wherein said change in the
> amount of radiation detected results from ones of said plurality of
> detector elements (detecting elements 30; Fig 8D from the plurality
> as shown in Fig 7) detecting reflected light from said object in
> addition to detecting said radiation at said baseline level (reflection
> causes the increase in the received light amount by the receiver 30;
> para [0086]; with respect to partial reflection as in para [0086]).</u>

Ex. 1 at SAMS302-0050992 – SAMS302-0050993 ('238 Application File
History, Office Action dated January 23, 2013, at 4-5) (emphasis added) (original
emphasis omitted).

258.    Thus, the examiner in the '238 Application stated that Reime teaches the same

element that were found missing in the prior art that was before the examiner in the '675 Patent

Application.  Despite having knowledge the disclosure of Reime and the interpretation of

Newton's disclosure discussed during '238 Application, Mr. Feng did not disclose Reime to the

examiner in the '675 Patent Application.  Instead, Mr. Feng redrafted then-pending independent

claim 152 of the '675 Patent Application to add the additional limitation of the claim 160 to

secure allowability.  *See* Ex.2 at P2BGES-0003303 ('675 Patent File History, Claims dated June

27, 2013, at 2).  The re-written claim 152 issued as Claim 1 of the '675 Patent.

259.    Reime is material and non-cumulative of other prior art already before the

USPTO during the prosecution of the '675 Patent Application, and renders claims of the '675

Patent invalid.  *See* Ex. 3 (Samsung's IPR petition on '675 Patent).  Samsung filed an *inter-

partes* review to invalidate the claims of the '675 Patent based on disclosure of Reime.  Samsung

incorporates by reference the allegations made in Samsung's *inter-partes* review petition as if

stated herein.

260.    Thus, on information and belief, Reime was material and also not cumulative of

the prior already before the USPTO during the prosecution of the '675 Patent Application, at

least because Reime disclosed the elements considered missing in the prior art presented during

the prosecution of the '675 Patent Application, and because the perceived absence of the element

("change in the amount of radiation detected results from ones of the plurality of detector elements detecting reflected light from the object in addition to detecting the radiation at the baseline level") in the prior art was the reason '675 Patent was allowed to issue.

261.    Thus, the examiner would not have allowed the '675 Patent claims to issue had it been aware of the undisclosed Newton and Reime references. Specifically, but-for their omission, the claims would not have been allowed.

### Individuals Involved in the Prosecution of the '675 Patent Knew Newton and Reime Were Material to the Patentability of the '675 Patent and Not Cumulative to Other Information Before the USPTO

262.    On information and belief, Mr. Feng was aware of the materiality of the Newton and Reime references to the '675 Patent Application, at least due to the similarity of the claims in the '238 Application and the '675 Patent Application, and the rejections of the claims of the '238 Application based on the Newton and Reime references, the disclosure of these references, and his intimate familiarity with Newton and Reime, gained through the prosecution of the '238 Application.

263.    For example, Mr. Feng substantively responded to the examiner's rejections based on Newton reference, discussing the disclosure of Newton.  *See* Ex. 1 at SAMS302-0050901 – SAMS302-0050921; SAMS302-0050953 – SAMS302-0050967  ('238 File History, Applicant Argument dated December 7, 2011; Applicant Argument dated June 21, 2012).  As a prosecuting attorney for the '238 Application, Mr. Feng was familiar with the examiner's characterization of Newton's disclosure in the '238 Application.

264.    For example, Mr. Feng substantively responded to the examiner's rejections based on Reime reference, discussing the disclosure of Reime.  *See* Ex. 1 at SAMS203-0051009 – SAMS203-0051022; SAMS302-0051060 – SAMS302-0051071; SAMS302-0051129 – SAMS302-0051141 ('238 File History, Applicant Argument dated July 23, 2013; Applicant

Argument dated February 28, 2014; Applicant Argument dated November 21, 2014; Applicant Argument dated February 9, 2016). As a prosecuting attorney for the '238 Application, Mr. Feng was also familiar with the examiner's characterization of Reime's disclosure in the '238 Application.

265. On information and belief, as a prosecuting attorney for the '675 Patent Application, Mr. Feng was familiar with the claims of the '675 Patent Application, which later issued as the '675 Patent, and was familiar with the element considered missing in the prior art during the prosecution of the '675 Patent Application. Thus, on information and belief, Mr. Feng would have understood that Newton and Reime are material and non-cumulative references to the patentability of the '675 Patent.

266. On information and belief, Mr. Daniels was aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '675 Patent Application, and the rejections of the claims of the '238 Application based on the Newton and Reime references, the disclosure of these references, and his intimate familiarity with Newton and Reime, gained through the prosecution of the '238 Application. In addition, Mr. Daniels was specifically made aware of the similarity between the claims of the '238 Application and the '675 Patent through the interview with the examiner conducted on August 30, 2016.

267. For example, on information and belief, as a prosecuting attorney for the '238 Application, Mr. Daniels was familiar with the examiner's characterization of Newton's disclosure in the '238 Application.

268. For example, on information and belief, Mr. Daniels was aware that the Reime reference was a basis for repeated rejection of the claims of the '238 Application, and that his predecessor, Mr. Feng, was unable to persuade the USPTO to overcome the rejections. Mr.

36

Daniels himself substantively responded to the examiner's rejections based on Reime reference, discussing the disclosure of Reime and attended an interview with the examiner of the '238 Application. *See* Ex. 1 at SAMS302-0051227 – SAMS302-0051236; SAMS302-0051260 ('238 File History, Applicant Argument dated June 10, 2016; Examiner Interview Summary dated September 14, 2016). As a prosecuting attorney for the '238 Application, Mr. Daniels was also familiar with the examiner's characterization of Reime's disclosure in the '238 Application.

269. On information and belief, as a prosecuting attorney for the '675 Patent Application, Mr. Daniels was also familiar with the claims of the '675 Patent, at least because he submitted a petition to add priority claim to the '675 Patent, and because he was made aware of the claims of the '675 Patent through the interview with the examiner of the '238 Application.

270. Thus, on information and belief, Mr. Daniels would have understood that Newton and Reime are material and non-cumulative references to the patentability of the '675 Patent.

271. On information and belief, Eran Kali, Sara Michelle Lipman, Boris Gutin, Moti Margalit, and Power2B were aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '675 Patent Application, and the rejections of the claims of the '238 Application based on the Newton and Reime references. In addition, Power2B, through its patent counsel, Mr. Daniels, acknowledged the similarity between the claims of the '238 Application and the '675 Patent by filing a terminal disclaimer in the prosecution of the '238 Application based on the '675 Patent. Ex. 1 at SAMS302-0051240 – SAMS302-0051250 (terminal disclaimer, dated September 1, 2016).

### Specific Intent to Deceive USPTO

272. On information and belief, despite having been aware of Newton and Reime, and being intimately familiar with the disclosures contained in Newton and Reime, Mr. Feng, Mr. Daniels, the inventors of the '675 Patent (including at least Eran Kali, Sara Michelle Lipman,

Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '675 Patent with a duty of candor and good faith in dealing with the USPTO did not submit, or cause to be submitted, Newton or Reime to the USPTO in connection with the prosecution of the '675 Patent.

273.    Both Mr. Feng and Mr. Daniels actively participated in the prosecution of the '675 Patent.

274.    In particular, Mr. Feng was intimately involved in the prosecution of both the '238 Application and the '675 Patent.  He substantively responded to office actions in prosecution of both the '238 Application and the '675 Patent.  He had numerous opportunities to submit these known material references, but he chose not to do so each time he communicated with the Office.

275.    In particular, Mr. Daniels signed nearly every communication with the Office after he received power of attorney to prosecute those Patents.  He had numerous opportunities to submit these known material references, but he chose not to do so each time he communicated with the Office.  In contrast, Mr. Daniels submitted these references to the USPTO during prosecution of the '931 Patent as part of an information disclosure statement, but chose not to do so for the '675 Patent.  Like the '675 Patent, the '931 Patent was being prosecuted by Mr. Daniels on behalf of the inventors Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit.  The examiner in the '238 Application (who was also assigned to the '931 Patent Application) considered the '931 Patent not patentably distinct from the alleged invention of the '238 Application.  *See* Ex. 4  at P2BGES-0001616 – P2BGES-0001619 ('931 Patent File History, Office Action dated December 30, 2016, at 2-5).

276.    Mr. Daniels knew that the prosecution of the '675 Patent, pending before a different examiner (Examiner Abbas Abduselam) than the prosecution of the '238 Application

(pending before Examiner Premal Patel), did not include Newton or Reime. Mr. Daniels knew that the examiner in the '238 Application had determined that the claims in the '675 Patent were directed to the same invention as the '238 Application, whose claims were rejected multiple times over the Newton and Reime references.  Yet, at every opportunity, Mr. Daniels failed to correct his omissions by, for example, including or later submitting the references.

277.     On information and belief, given their intimate familiarity with the disclosure of Newton and Reime, their respective relevance to the claims of the '675 Patent, and their involvement in the prosecution of the '675 Patent Application, the single most reasonable inference to draw from the failure to disclose Newton and Reime to the USPTO during the prosecution of the '675 Patent is that Mr. Feng and Mr. Daniels each made a deliberate decision to withhold these material prior art references from the examiner, despite ample opportunity to include the information or otherwise correct the record.

278.     In addition, given the repeated pattern of failure to disclose material information to the USPTO committed by the patent attorneys (including at least Mr. Feng and Mr. Daniels), committed across multiple prosecutions (including at least during prosecution of the '675, '170, '850, and '093 Patents), each pending before the Examiner Abduselam, the single most reasonable inference to draw from the failure to disclose Newton and Reime to the USPTO during the prosecution of these patent was that the inventors of the '675 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), by and through Mr. Feng and Mr. Daniels, deliberately attempted to conceal the Newton and Reime references from Examiner Abduselam.

279.     Thus, on information and belief, Mr. Feng, Mr. Daniels, the inventors of the '675 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '675 Patent with a duty of candor and

good faith in dealing with the USPTO intended to deceive the USPTO by deliberately withholding material and non-cumulative prior art that would have led the examiner to reject at least the independent claim 1 of the '675 Patent as unpatentable in the absence of further explanation.

280.     Mr. Feng, Mr. Daniels, the inventors of the '675 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '675 Patent committed inequitable conduct by withholding a material, non-cumulative reference from the examiner of the application that issued as the '675 Patent with the intent to deceive the examiner that the claims were patentable.

281.     Because of the inequitable conduct committed by Mr. Feng, Mr. Daniels, the inventors of the '675 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '675 Patent, the '675 Patent is not enforceable, and Power2B may not obtain any relief regarding the '675 Patent.

## FOURTEENTH DEFENSE
### (Inequitable Conduct – Unenforceability of the '170 Patent)

282.     Samsung incorporates by reference paragraphs 227 to 281.

283.     All claims of the '170 Patent are unenforceable because the '170 Patent was obtained through inequitable conduct before the United States Patent and Trademark Office ("USPTO") by intentionally and deceptively failing to disclose to the USPTO material information during the prosecution of the application for the '170 Patent.

284.     Specifically, the inventors, their patent counsel, and/or other individuals associated with the filing and prosecution of the application for the '170 Patent intentionally and deceptively failed to disclose to the USPTO during the prosecution of the patent application material information.  The material information include USPTO's Office Actions and the prior art relied upon by the patent examiner in the prosecution of patents and patent applications by the

inventors of the '170 Patent.  Those patents and patent applications were being prosecuted by the same patent counsel and directed to the same invention as the '170 Patent.  The withheld information was material to the patentability of at least one of the claims of the '170 Patent, and the intentional and deceptive failure to disclose this material information to the USPTO constituted inequitable conduct.

285.    Additionally, the claims of the '170 Patent, which is a division of the '675 Patent, are unenforceable due to the inequitable conduct of Mr. Feng, Mr. Daniels, and the inventors of the '170 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit) committed during prosecution of the '675 Patent under the theory of infectious unenforceability.

### Background Regarding the '170 Patent and
### Prosecution of U.S. Patent Application No. 12/066,238

286.    On March 7, 2008, Mr. S. Peter Ledwig of Darby & Darby, PC, filed U.S. Patent Application No. 12/066,238 (the "'238 Application").  The '238 Application lists Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit as inventors.  Each of the inventors of the '238 Application is also a named inventor of the '170 Patent.

287.    On September 11, 2009,  Mr. Alan Young of Young Law Firm, P.C., filed U.S. Patent Application No. 12/531,039 (the "'039 Application" or the "'675 Patent Application"). The '039 Application is a parent application of U.S. Patent Application No. 14/108,242 (the "'242 Application or the "'170 Patent Application"), which issued as the '170 Patent.  The '039 Application eventually issued as the '675 Patent.  The '242 Application lists as inventors Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, who are also the inventors of the '238 Application, as well as Robert Michael Lipman and Ken Zwiebel as co-inventors.

288.    On May 10, 2010, Mr. Paul Y. Feng of Fulwder Patton LLP filed  a revocation of Power of Attorney for prior patent counsel and filed a new Power of Attorney to represent the

inventors of the '238 Applications in the prosecution of the '238 Application.  On the same day, Mr. Feng also filed a revocation of Power of Attorney for prior patent counsel and filed a new Power of Attorney to represent the inventors of the '675 Patent Application.

289.    Mr. Feng became aware of U.S. Patent Application Publication No. 2002/0075243 ("Newton") at least as early as December 23, 2011, when the examiner assigned to the '238 Application issued an office action.  In the office action, the examiner rejected all pending claims of the '238 Application as anticipated by Newton.  On information and belief, each of Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, also learned of Newton reference at least through Mr. Feng.

290.    On June 21, 2012, Mr. Feng substantively responded to the December 23, 2011, office action in the '238 Application.

291.    Mr. Feng became aware of U.S. Patent Application Publication No. 2003/0034439 ("Reime") at least as early as January 23, 2013, when the examiner assigned to the '238 Application issued an office action.  In the office action, the examiner rejected all pending claims of the '238 Application as anticipated by Reime.  On information and belief, each of Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, also learned of Reime reference at least through Mr. Feng.

292.    On July 23, 2013, Mr. Feng substantively responded to the January 23, 2013, office action in the '238 Application.

293.    While prosecuting the '238 Application and responding to office actions based on Newton and Reime, Mr. Feng was actively filing various papers in the prosecution of the '675 Patent Application, including responding to a requirement for restriction (filed on October 29, 2012), and substantively amending claims and responding to an office action (mailed on January

23, 2013).  Nonetheless, Mr. Feng failed to disclose Newton or Reime to the USPTO during the prosecution of the '675 Patent Application.

294.    On August 20, 2013, the examiner in the '675 Patent Application issued a Notice of Allowance, without having been made aware of Newton or Reime.

295.    On August 30, 2013, the examiner in the '238 Application issued a final rejection of then-pending claims of the '238 Application, again based on Reime.

296.    On December 16, 2013, Mr. Feng filed the '170 Patent Application as a divisional application to the '675 Patent Application, on behalf of the inventors of the '170 Patent Application.

297.    The '238 Application and the '170 Patent Application were each assigned to different examiners.

298.    On January 3, 2014, Mr. Feng filed an Information Disclosure Statement ("IDS") in the prosecution of the '170 Patent Application.  The IDS did not list Newton or Reime, despite Mr. Feng's knowledge of these references.

299.    On February 28, 2014, Mr. Feng substantively responded to the August 30, 2013, office action in the '238 Application.

300.    On March 27, 2014, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

301.    On November 21, 2014, Mr. Feng substantively responded to the March 27, 2014, office action in the '238 Application.

302.    On January 13, 2015, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

303.    During 2014 through 2016, Mr. Feng was also actively filing various papers in the prosecution of the '170 Patent Application, including substantively responding to an office

action (filed on December 18, 2015).  Nonetheless, Mr. Feng failed to disclose Newton or Reime

to the USPTO during the prosecution of the '170 Patent Application.

304.     On February 9, 2016, Mr. Feng substantively responded to the January 13, 2015,

office action in the '238 Application.

305.     On February 12, 2016, the examiner in the '170 Patent Application issued a notice

of allowance, without being made aware of Newton or Reime.

306.     On March 11, 2016, the examiner in the '238 Application issued a non-final

rejection of then-pending claims of the '238 Application, again based on Reime.

307.     After having failed to overcome Reime reference through multiple rounds of

amendments and arguments over three years, Power2B retained a new patent counsel.  On April

8, 2016, Mr. Adam P. Daniels of Polsinelli PC replaced Mr. Feng in the prosecution of the '238

Application. *See* Ex. 1 at SAMS302-0051220  ('238 Application File History, Power of Attorney

dated April 8, 2016).  On April 15, 2016, Mr. Daniels replaced Mr. Feng in the prosecution of

the '242 Application as well.  *See* Ex. 5 at P2BGES-0000255 ('170 Patent file history, Power of

Attorney dated April 15, 2016).  On the same day, Mr. Daniels filed a petition to add a foreign

priority claim in the '242 Application.  *See* Ex. 5 at P2BGES-0000236 – P2BGES-0000237

('170 Patent file history, Petition dated April 15, 2016).

308.     On June 10, 2016, Mr. Daniels substantively responded to the March 11, 2016,

office action in the '238 Application.

309.     On August 30, 2016, the examiner in the '238 Application conducted an interview

Mr. Daniels.  *See* Ex. 1 at SAMS302-0051260 (Interview summary, dated September 14, 2016).

During the interview, the examiner "discussed subject matter of independent claims in view

Patent# 9317170, 8610675 and 8624850; and how these claims could be potentially rejected

under ODP. Examiner requested for Applicant to file a Terminal Disclaimer for ALL THREE

Patent# mentioned above." *Id.* (capitalization original).  On September 1, 2016, Mr. Daniels

filed terminal disclaimers in the prosecution of the '238 Application on behalf of Power2B.

310.    While prosecuting the '238 Application, Mr. Daniels was also actively filing

various papers relating to the '170 Patent, including a petition to correct priority claim (filed on

April 15, 2016), a request for certificate of correction (filed on August 3, 2016), and response to

decision on petition (filed September 23, 2016).  Nonetheless, Mr. Daniels failed to disclose

Newton or Reime to the USPTO.

### Newton and Reime References Were Material to the Patentability of the '170 Patent and Not Cumulative to Other Information Before the USPTO

311.    Newton was published on June 20,2002, and therefore is a prior art to the '170

Patent.

312.    During prosecution of the '170 Patent Application, the examiner rejected then-

pending claims of the '170 Patent Application as rendered obvious by prior art references before

the examiner. *See* Ex. 5 at P2BGES-0000294 – P2BGES-0000298 ('170 Patent File History,

Office Action dated September 18, 2015 at 2-6).  The examiner stated that then-pending

dependent claim 26 would be patentable if written in independent form:

> Claims 26-34 are objected to as being dependent upon a rejected
> base claim, but would be allowable if rewritten in independent form
> including all of the limitations of the base claim and any intervening
> claims.
>
> 4. The following is a statement of reasons for the indication of
> allowable subject matter:
>
> Regarding claim 26, the prior art does not each "the arrangement of
> detector elements is configured to detect electromagnetic radiation
> at a baseline level and to sense a position of at least one object with
> respect to the interactive surface element and wherein the utilization
> circuitry is further configured to provide an output according to a
> location of at least one detector in the arrangement for which at least
> one of an amount of radiation detected and a change in the amount
> of radiation detected exceed a first predetermined threshold".

Ex. 5 at P2BGES-0000299('170 Patent File History, Office Action dated

September 18, 2015 at 7).

313.     During prosecution of the '238 Application, the examiner characterized Newton as below:

> Regarding claim 1, Newton teaches an integrated display and input device comprising: a first pixel array (102; Fig 1) operative to provide a visually sensible output (para [0023]); a second pixel array (109; Fig 1) operative to sense at least a position of an object with respect to said first pixel array; and circuitry (computing device 200; Fig 2; para [0031]) receiving an output from said second pixel array (para [0031]) and providing a non-imagewise input to utilization circuitry (202, 206, 204, 211; Fig 2; para [00321]). . . .

> Regarding claim 58, Newton teaches a position sensing assembly comprising: a plate (touch panel display screen 100; Fig 1) defining a surface; and at least one pixel array (109; Fig 1) comprising a plurality of detector elements (109a-109e; Fig 1) detecting electromagnetic radiation (infrared, visible light, microwave radiation; para [0017]) at a baseline level (para [0036]; para [0041]), said at least one pixel array being operative to sense a position of an object with respect to said surface according to locations of ones of said plurality of detector elements at which at least one of the amount of radiation detected and the change in the amount of radiation detected exceed a predetermined threshold (para [0036] - para [0041]). (Note: as explained in para [0041], comparing a detection map created at the instant in time of a touch to a stored detection match created when the touch panel display screen 100 is not being touched (a baseline level), a determination may be made as to which beams have been interrupted. This comparing, indicates the change in the amount of radiation detected exceed a predetermined threshold).

Ex. 1 at SAMS302-0050858 – SAMS302-0050859 ('238 Application File History, Office Action dated June 7, 2011, at 3-4) (emphasis added) (original emphasis omitted).

314.     Thus, the examiner in the '238 Application stated that Newton teaches the same element that were found missing in the prior art *that* was before the examiner in the '170 Patent Application.  Despite having knowledge the disclosure of Newton and the interpretation of Newton's disclosure discussed during '238 Application, Mr. Feng did not disclose Newton to the examiner in the '170 Patent Application.  Instead, Mr. Feng drafted a new claim 35 to add the additional limitation of the claim 26 to secure allowability.  *See* Ex. 5 at P2BGES-0000287 –

P2BGES-0000288 ('170 Patent File History, Applicant Argument dated December 18, 2015, at 9-10) ("Applicant submits for the examiner's review new independent claim 35.  New claim 35 includes all of the limitations of dependent claim 26 that the examiner noted in his statement of reasons for the indication of allowable subject matter. Applicant respectfully submits that new claim 35 is likewise allowable as is amended claim 1.")

315.    The newly written claim 35 issued as Claim 1 of the '170 Patent.

316.    Thus, on information and belief,  Newton was material and also not cumulative of the prior already before the USPTO during the prosecution of the '170 Patent Application, at least because Newton disclosed the elements considered missing in the prior art presented during the prosecution of the '170 Patent Application, and because the perceived absence of the elements of then-pending claim 26 in the prior art was the reason '170 Patent was allowed to issue.

317.    Reime was published on February 20, 2003, and therefore is a prior art to the '170 Patent.

318.    During prosecution of the '238 Application, the examiner characterized Reime as below:

> Regarding claim 1, Reime teaches an integrated display and input device (in a mobile device or other electronic device, the touch pad area 5 can be a display panel such as LCD; para [0086]; Fig 8A) comprising: a first pixel array (LCD display; Fig 7) operative to provide a visually sensible output (a displayed image on a screen; para [0108]); a second pixel array (RXU, RXD; Fig 5A) operative to sense at least a position (position of finger 100'; para [0073]; para [0074]) with respect to said first pixel array (Fig 2A) of an object (finger 100' or pencil 100; Fig 1; Fig 2a; para [0073]; Fig 11) directing electromagnetic radiation (Fig 1; LED operated in an infrared (IR)= type of electromagnetic radiation; para [0092]), wherein said second pixel array senses an increase in electromagnetic radiation directed from said object (light rays 202,204 reach the receiver 30 by way of partial reflection. When a user's finger 100' (Fig 2) approaches the cover plate 60, the light rays 203,205 could encounter approaching finger and partially reflect off

the finger towards the receiver 30. Reflection causes the increase in the received light amount by the receiver 30; para [0086]); and circuitry (signal-processing module 450 is a type of circuitry; Fig 14; para [0106]) receiving an output (130+132; Fig 14; para [0106]) from said second pixel array and providing a non-imagewise input (measurement information 452 is non-imagewise input under broadest reasonable interpretation; para [0106]) to utilization circuitry (460; Fig 14; para [0106]). . . .

Regarding claim 58, Reime teaches a position sensing assembly comprising: a plate (cover plate 60; Fig 8a; para [0086]) defining a surface (a touch surface; Fig 8A; para [0086]); and at least one pixel array (RXU, RXD; Fig 5A) comprising a plurality of detector elements (RXU and RXD; Fig 5A) detecting electromagnetic radiation (Fig 1; LED operated in an infrared (IR)= type of electromagnetic radiation; para [0092]) at a baseline level (baseline of the output signal; para [0088]), said at least one pixel array being operative to sense a position (position of finger 100'; para [0073]; para [0074]) of an object (finger 100' or pencil 100; Fig 1; Fig 2a; para [0073]; Fig 11) with respect to said surface according to locations of .ones of said plurality of detector elements (Fig 1; Fig 2A; Fig 8D; Fig 11) at which at least one of the amount of radiation detected (light rays 202,204 reach the receiver 30 by way of partial reflection is described in para [0086] which indicated that at least one amount of radiation is detected by receiver 30) and the change in the amount of radiation detected exceed a predetermined threshold (reflection causes the increase in the received light amount by the receiver 30; para [0086]; the term "increase" with respect to the partial reflection clearly shows that the amount of radiation detected exceed a predetermined threshold where predetermined threshold is broadly interpreted as any threshold value).

Ex. 1 ('238 Application File History, Office Action dated January 23, 2013, at 2-5) (emphasis added) (original emphasis omitted).

319.    Thus, the examiner in the '238 Application stated that Reime teaches the same element that were found missing in the prior art that was before the examiner in the '170 Patent Application.  Despite having knowledge the disclosure of Reime and the interpretation of Newton's disclosure discussed during '238 Application, Mr. Feng did not disclose Reime to the examiner in the '170 Patent Application.  Instead, Mr. Feng drafted a new claim 35 to add the additional limitation of the claim 26 to secure allowability.  *See* Ex. 5 at P2BGES-0000287 – P2BGES-0000288 ('170 Patent File History, Applicant Argument dated December 18, 2015, at

9-10) ("Applicant submits for the examiner's review new independent claim 35.  New claim 35 includes all of the limitations of dependent claim 26 that the examiner noted in his statement of reasons for the indication of allowable subject matter.  Applicant respectfully submits that new claim 35 is likewise allowable as is amended claim 1.").

320.    Thus, on information and belief, Reime was material and also not cumulative of the prior already before the USPTO during the prosecution of the '170 Patent Application, at least because Reime disclosed the elements considered missing in the prior art presented during the prosecution of the '170 Patent Application, and because the perceived absence of the elements of then-pending claim 26 in the prior art was the reason '170 Patent was allowed to issue.

321.    Newton and Reime are each material and non-cumulative of other prior art already before the USPTO during the prosecution of the '170 Patent Application, and renders claims of the '170 Patent invalid.  *See* Ex. 6 (Samsung's IPR petition on '170 Patent).  Samsung filed an *inter-partes* review to invalidate the claims of the '170 Patent based on disclosure of Newton and Reime.  Samsung incorporates by reference the allegations made in Samsung's *inter-partes* review petition as if stated herein.

322.    Thus, the examiner would not have allowed the '170 Patent claims to issue had it been aware of the undisclosed Newton and Reime references. Specifically, but-for their omission, the claims would not have been allowed.

### Individuals Involved in the Prosecution of the '170 Patent Knew Newton and Reime Were Material to the Patentability of the '170 Patent and Not Cumulative to Other Information Before the USPTO

323.    On information and belief, Mr. Feng was aware of the materiality of the Newton and Reime references to the '170 Patent Application, at least due to the similarity of the claims in the '238 Application and the '170 Patent Application, and the rejections of the claims of the '238

Application based on the Newton and Reime references, the disclosure of these references, and his intimate familiarity with Newton and Reime, gained through the prosecution of the '238 Application.

324.    For example, Mr. Feng substantively responded to the examiner's rejections based on Newton reference, discussing the disclosure of Newton.  *See* Ex. 1 at SAMS302-0050901 – SAMS302-0050915; SAMS302-0050953 – SAMS302-0050967 ('238 File History, Applicant Argument dated December 7, 2011; Applicant Argument dated June 21, 2012).  As a prosecuting attorney for the '238 Application, Mr. Feng was familiar with the examiner's characterization of Newton's disclosure in the '238 Application.

325.    For example, Mr. Feng substantively responded to the examiner's rejections based on Reime reference, discussing the disclosure of Reime.  *See* Ex. 1 at SAMS302-0051009 – SAMS302 – SAMS302-0051022; SAMS302-0051060 – SAMS302-0051071; SAMS302-0051129 – SAMS302-0051141; SAMS302-0051182 – SAMS302-0051195 ('238 File History, Applicant Argument dated July 23, 2013; Applicant Argument dated February 28, 2014; Applicant Argument dated November 21, 2014; Applicant Argument dated February 9, 2016). As a prosecuting attorney for the '238 Application, Mr. Feng was also familiar with the examiner's characterization of Reime's disclosure in the '238 Application.

326.    On information and belief, as a prosecuting attorney for the '170 Patent Application, Mr. Feng was familiar with the claims of the '170 Patent Application, which later issued as the '170 Patent, and was familiar with the element considered missing in the prior art during the prosecution of the '170 Patent Application.  Thus, on information and belief, Mr. Feng would have understood that Newton and Reime are material and non-cumulative references to the patentability of the '170 Patent.

327.    On information and belief, Mr. Daniels was aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '170 Patent Application, the rejections of the claims of the '238 Application based on the Newton and Reime references, the disclosure of these references, and his intimate familiarity with Newton and Reime, gained at least through the prosecution of the '238 Application.  In addition, Mr. Daniels was specifically made aware of the similarity between the claims of the '238 Application and the '170 Patent through the interview with the examiner conducted on August 30, 2016.

328.    For example, on information and belief, as a prosecuting attorney for the '238 Application, Mr. Daniels was familiar with the examiner's characterization of Newton's disclosure in the '238 Application.

329.    For example, on information and belief, Mr. Daniels was aware that the Reime reference was a basis for repeated rejection of the claims of the '238 Application, and that his predecessor, Mr. Feng, was unable to persuade the USPTO to overcome the rejections.  Mr. Daniels himself substantively responded to the examiner's rejections based on Reime reference, discussing the disclosure of Reime and attended an interview with the examiner of the '238 Application.  *See* Ex. 1 at SAMS302-0051227 – SAMS302-0051236; SAMS302-0051260 ('238 File History, Applicant Argument dated June 10, 2016; Examiner Interview Summary dated September 14, 2016).  As a prosecuting attorney for the '238 Application, Mr. Daniels was also familiar with the examiner's characterization of Reime's disclosure in the '238 Application.

330.    On information and belief, as a prosecuting attorney for the '170 Patent Application, Mr. Daniels was familiar with the claims of the '170 Patent Application, at least because he submitted a petition to add priority claim to the '170 Patent, and because he was

made aware of the claims of the '170 Patent through the interview with the examiner of the '238 Application.

331.    Thus, on information and belief, Mr. Daniels would have understood that Newton and Reime are material and non-cumulative references to the patentability of the '170 Patent.

332.    On information and belief, Eran Kali, Sara Michelle Lipman, Boris Gutin, Moti Margalit, and Power2B were aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '170 Patent Application, and the rejections of the claims of the '238 Application based on the Newton and Reime references.  In addition, Power2B, through its patent counsel, Mr. Daniels, acknowledged the similarity between the claims of the '238 Application and the '170 Patent by filing a terminal disclaimer in the prosecution of the '238 Application based on the '170 Patent.  Ex. 1 at SAMS302-0051240 – SAMS302-0051250 (terminal disclaimer, dated September 1, 2016).

**Specific Intent to Deceive USPTO**

333.    On information and belief, despite having been aware of Newton and Reime, and being intimately familiar with the disclosures contained in Newton and Reime, Mr. Feng, Mr. Daniels, the inventors of the '170 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gustin, and Moti Margalit), and/or other individuals involved in the prosecution of the '170 Patent with a duty of candor and good faith in dealing with the USPTO did not submit, or cause to be submitted, Newton or Reime to the USPTO in connection with the prosecution of the '170 Patent.

334.    Both Mr. Feng and Mr. Daniels actively participated in the prosecution of the '170 Patent.

335.    In particular, Mr. Feng was intimately involved in the prosecution of both the '238 Application and the '170 Patent.  He substantively responded to office actions in

prosecution of both the '238 Application and the '170 Patent.  He had numerous opportunities to submit these known material references, but he chose not to do so each time he communicated with the Office.

336.    In particular, Mr. Daniels signed nearly every communication with the Office after he received power of attorney to prosecute those Patents.  He had numerous opportunities to submit these known material references, but he chose not to do so each time he communicated with the Office.  In contrast, Mr. Daniels submitted these references to the Office in the '931 Patent as part of an information disclosure statement, but chose not to do so for the '170 Patent. Like the '170 Patent, the '931 Patent was being prosecuted by Mr. Daniels on behalf of the inventors Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit.  The examiner in the '238 Application (who was also assigned to the '931 Patent Application) considered the '931 Patent not patentably distinct from the alleged invention of the '238 Application.  *See* Ex. 4 at P2BGES-0001616 – P2BGES-0001619 ('931 Patent File History, Office Action dated December 30, 2016, at 2-5).

337.    Mr. Daniels knew that the prosecution of the '170 Patent, pending before a different examiner (Examiner Abbas Abduselam) than the prosecution of the '238 Application (pending before Examiner Premal Patel), did not include Newton or Reime.  Mr. Daniels knew that the examiner in the '238 Application (Examiner Premal Patel) had determined that the claims in the '170 Patent were directed to the same invention as the '238 Application, whose claims were rejected multiple times over the Newton and Reime references.  Yet, at every opportunity, Mr. Daniels failed to correct his omissions by, for example, including or later submitting the references.

338.    On information and belief, given their intimate familiarity with the disclosure of Newton and Reime, their respective relevance to the claims of the '170 Patent, and their

involvement in the prosecution of the '170 Patent, the single most reasonable inference to draw from the failure to disclose Newton and Reime to the USPTO during the prosecution of the '170 Patent is that Mr. Feng and Mr. Daniels each made a deliberate decision to withhold this information from the examiner, despite ample opportunity to include the information or otherwise correct the record.

339.    In addition, given the repeated pattern of failure to disclose material information to the USPTO committed by the patent attorneys (including at least Mr. Feng and Mr. Daniels), committed across multiple prosecutions including at least during prosecution of the '675, '170, '850, and '093 Patents, each pending before the same Examiner Abduselam, the single most reasonable inference to draw from the failure to disclose Newton and Reime to the USPTO during the prosecution of these patent was that the inventors of the '170 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), by and through Mr. Feng and Mr. Daniels, deliberately attempted to conceal the Newton and Reime references from Examiner Abduselam.

340.    Thus, on information and belief, Mr. Feng, Mr. Daniels, the inventors of the '170 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '170 Patent with a duty of candor and good faith in dealing with the USPTO intended to deceive the USPTO by deliberately withholding material prior art that would have led the examiner to reject at least the independent claim 1 of the '170 Patent as unpatentable in the absence of further explanation.

341.    Mr. Feng, Mr. Daniels, the inventors of the '170 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '170 Patent committed inequitable conduct by withholding a material,

non-cumulative reference from the examiner of the application that issued as the '170 Patent

with the intent to deceive the examiner that the claims were patentable.

342.    Because of the inequitable conduct committed by Mr. Feng, Mr. Daniels, the

inventors of the '170 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin,

and Moti Margalit), and/or other individuals involved in the prosecution of the '170 Patent, the

'170 Patent is not enforceable, and Power2B may not obtain any relief regarding the '170 Patent.

### FIFTEENTH DEFENSE
### (Inequitable Conduct – Unenforceability of the '850 Patent)

343.    Samsung incorporates by reference paragraphs 227 to 342.

344.    All claims of the '850 Patent are unenforceable because the '850 Patent was

obtained through inequitable conduct before the United States Patent and Trademark Office

("USPTO") by intentionally and deceptively failing to disclose to the USPTO material

information during the prosecution of the application for the '850 Patent.

345.    Specifically, the inventors, their patent counsel, and/or other individuals

associated with the filing and prosecution of the application for the '850 Patent intentionally and

deceptively failed to disclose to the USPTO during the prosecution of the patent application

material information.  The material information include USPTO's Office Actions and the prior

art relied upon by the patent examiner in the prosecution of patents and patent applications by the

inventors of the '850 Patent.  Those patents and patent applications were being prosecuted by the

same patent counsel and directed to the same invention as the '850 Patent.  The withheld

information was material to the patentability of at least one of the claims of the '850 Patent, and

the intentional and deceptive failure to disclose this material information to the USPTO

constituted inequitable conduct.

### Background Regarding the '850 Patent and
### Prosecution of U.S. Patent Application No. 12/066,238

346.     On March 7, 2008, Mr. S. Peter Ledwig of Darby & Darby, PC, filed U.S. Patent Application No. 12/066,238 (the "'238 Application").  The '238 Application lists Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit as inventors.  Each of the inventors of the '238 Application is also a named inventor of the '170 Patent.

347.     On September 11, 2009,  Mr. Alan Young of Young Law Firm, P.C., filed U.S. Patent Application No. 12/531,031 (the "'031 Application or the "'850 Patent Application").  The '031 Application eventually issued as the '850 Patent.  The '031 Application lists as inventors Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, who are also the inventors of the '238 Application, as well as Robert Michael Lipman and Ken Zwiebel.

348.     The '238 Application and the 850 Patent Application were each assigned to different examiners.

349.     On May 10, 2010, Mr. Paul Y. Feng of Fulwder Patton LLP filed  a revocation of Power of Attorney for prior patent counsel and filed a new Power of Attorney to represent the inventors of the '238 Applications in the prosecution of the '238 Application.  On the same day, Mr. Feng also filed a revocation of Power of Attorney for prior patent counsel and filed a new Power of Attorney to represent the inventors of the '850 Patent Application.

350.     Mr. Feng became aware of U.S. Patent Application Publication No. 2002/0075243 ("Newton") at least as early as December 23, 2011, when the examiner assigned to the '238 Application issued an office action.  In the office action, the examiner rejected all pending claims of the '238 Application as anticipated by Newton.  On information and belief, each of Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, also learned of Newton reference at least through Mr. Feng.

351.     On June 21, 2012, Mr. Feng substantively responded to the December 23, 2011, office action in the '238 Application.

352.    Mr. Feng became aware of U.S. Patent Application Publication No. 2003/0034439 ("Reime") at least as early as January 23, 2013, when the examiner assigned to the '238 Application issued an office action.  In the office action, the examiner rejected all pending claims of the '238 Application as anticipated by Reime.  On information and belief, each of Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, also learned of Reime reference at least through Mr. Feng.

353.    On July 23, 2013, Mr. Feng substantively responded to the January 23, 2013, office action in the '238 Application.

354.    While prosecuting the '238 Application and responding to office actions based on Newton and Reime, Mr. Feng was actively filing various papers in the prosecution of the '850 Patent Application including two Information Disclosure Statements (filed on May 9, 2011, and on January 6, 2012), and substantively amending claims and responding to an office action (filed on July 15, 2013).  Nonetheless, Mr. Feng failed to disclose Newton or Reime to the USPTO during the prosecution of the '850 Patent Application.

355.    On August 27, 2013, the examiner in the '850 Patent Application issued a Notice of Allowance, without having been made aware of Newton or Reime.

356.    On August 30, 2013, the examiner in the '238 Application issued a final rejection of then-pending claims of the '238 Application, again based on Reime.

357.    On February, 2014, Mr. Feng substantively responded to the August 30, 2013, office action in the '238 Application.

358.    On March 27, 2014, the examiner in the '238 Application issued a final rejection of then-pending claims of the '238 Application, again based on Reime.

359.    On November 21, 2014, Mr. Feng substantively responded to the March 27, 2014, office action in the '238 Application.

360.    On January 13, 2015, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

361.    On February 9, 2016, Mr. Feng substantively responded to the January 13, 2015, office action in the '238 Application.

362.    On March 11, 2016, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

363.    After having failed to overcome Reime reference through multiple rounds of amendments and arguments over three years, Power2B retained a new patent counsel.  On April 8, 2016, Mr. Adam P. Daniels of Polsinelli PC replaced Mr. Feng in the prosecution of the '238 Application. *See* Ex. 1 at SAMS302-0051220  ('238 Application File History, Power of Attorney dated April 8, 2016).  On May 16, 2016, Mr. Daniels replaced Mr. Feng in the prosecution of the '850 Patent Application as well.  *See* Ex. 7 at P2BGES-0002110 ('850 Patent file history, Power of Attorney dated May 16, 2016).

364.    On June 10, 2016, Mr. Daniels substantively responded to the March 11, 2016, office action in the '238 Application.

365.    On August 30, 2016, the examiner in the '238 Application conducted an interview Mr. Daniels.  *See* Ex. 1 at SAMS302-0051260  (Interview summary, dated September 14, 2016). During the interview, the examiner "discussed subject matter of independent claims in view Patent# 9317170, 8610675 and 8624850; and how these claims could be potentially rejected under ODP. Examiner requested for Applicant to file a Terminal Disclaimer for ALL THREE Patent# mentioned above."  *Id.* (capitalization original).  On September 1, 2016, Mr. Daniels filed terminal disclaimers in the prosecution of the '238 Application on behalf of Power2B.

366.    Having been made aware of the similarity of claims between the '238

Applications and the '850 Patent, Mr. Daniels failed to disclose Newton or Reime to the USPTO

in connection with the '850 Patent.

**Newton and Reime References Were Material to the Patentability of the '850 Patent
and Not Cumulative to Other Information Before the USPTO**

367.    Newton was published on June 20,2002, and therefore is a prior art to the '850

Patent.

368.    During prosecution of the '850 Patent Application, the examiner rejected then-

pending claims of the '850 Patent Application as anticipated by a prior art. *See* Ex. 7 at

P2BGES-0002192 – P2BGES-0002194 ('850 Patent File History, Office Action dated January

17, 2013 at 2-4).  The examiner stated that then-pending dependent claims 120, 122, 134-149,

and 158-160 would be patentable if written in independent form.  The examiner stated:

> Allowable Subject Matter
>
> 4. Claims 120, 122, 134-149 and 158-160 are objected to as being
> dependent upon a rejected base claim, but would be allowable if
> rewritten in independent form including all of the limitations of the
> base claim and any intervening claims.
>
> 5. The following is a statement of reasons for the indication of
> allowable subject matter:
>
> Regarding claim 120, the prior art does not teach "at least one
> illuminator is further configured to function as at least one
> backlighting illuminator associated with the pixel array".
>
> Regarding claim 122, the prior art does not teach [t]he at least one
> illuminator is located generally in a same plane as at least one
> backlighting illuminator associated with the pixel array.
>
> Regarding claim 134, the prior does not teach "the at least one sensor
> comprises a detector assembly arranged at least one edge of a
> viewing plane defining plate".
>
> Regarding claim 158, the prior art does not teach "the change in the
> amount of radiation detected results from ones of the plurality of
> detector elements detecting reflected light from the object in
> addition to detecting the radiation at the baseline level".

Ex. 7 at P2BGES-0002199 – P2BGES-0002200 ('850 Patent File History, Office Action dated January 17, 2013, at 9-10).

369.    Newton discloses a "display screen" that may be "a liquid crystal display ('LCD') screen."  Newton states:

> [0021] The following description will hereinafter refer to the drawing, in which like numerals indicate like elements throughout the several figures. FIG. 1 is a block diagram illustrating a top schematic view of a touch panel display screen 100 in accordance with an exemplary embodiment of the present invention. A touch panel display screen 100 comprises a display screen 102 configured with hardware and/possibly software components for detecting a touch provided by a user. The display screen 102 may be, for example, a liquid crystal display ("LCD") screen. Those skilled in the art will appreciate, however, that any type of display screen may be used in conjunction with the present invention. By way of example only, other types of display screens that may be used in conjunction with the present invention include cathode ray technology, polysilicon thin film transistor ("TFT"), super twisted nematic ("STN"), twist nematic ("TN"), plasma display panels ("PDP"), or electroluminescence display technology. In addition, vacuum fluorescent displays, field emission displays, digital micro meter devices or light emitting diodes display technology may also be used. The applicants also consider that plasma addressed liquid crystal displays, anti ferroelectric liquid crystal displays, and also ferroelectric liquid crystal displays can all also be used to provide a display screen in conjunction with the present invention.

Ex. 8 (Newton at [0021]) (emphasis added).

370.    It is well known that LCD screens include a backlight.  Thus, on information and belief, the examiner of the '850 Patent Application would have found Newton to disclose the element (e.g., "at least one illuminator is further configured to function as at least one backlighting illuminator associated with the pixel array") found to be missing in the prior art references before the USPTO.

371.    Thus, on information and belief,  Newton was material and also not cumulative of the prior already before the USPTO during the prosecution of the '850 Patent Application, at least because Newton disclosed the elements considered missing in the prior art presented during the prosecution of the '850 Patent Application, and because the perceived absence of the element

("at least one illuminator is further configured to function as at least one backlighting illuminator associated with the pixel array") in the prior art was the reason '850 Patent was allowed to issue.

372.    Reime was published on February 20, 2003, and therefore is a prior art to the '850 Patent.

373.    Reime also discloses a "display panel such as a liquid crystal display (LCD)." Reime states:

> [0086] In a mobile device or other electronic device, the touch pad area 5 can be a display panel such as a liquid crystal display (LCD) 92 mounted on a printed circuit board (PCB) or a printed wire board (PWB) 90. As shown in FIG. 7, the optical sensor components 10, 12, 20, 22, 30 and 32 are mounted in the peripheral area surrounding the LCD 92. Preferably, the touch pad device 1 also includes a cover plate to provide a touch surface. As shown in FIG. 8A, a cover plate 60 is placed on top of the LCD 92 and the optical sensor components (only emitters 10 and 12 are shown). The cover plate 60 is designed as a light guide such that light emitted from the emitter 10 can reach the receiver 30 (see FIG. 8D) and light emitted from the emitter 12 can be reach the receiver 32 (not shown) by way of total internal reflection, for example, when the touch pad device 1 is touched by or adjacent to the object 100. . . .

Ex. 9 (Reime, at [0086]).

374.    It is well known that LCD screens include a backlight.  Thus, on information and belief, the examiner of the '850 Patent Application would have found Reime to disclose the element (e.g., "at least one illuminator is further configured to function as at least one backlighting illuminator associated with the pixel array") found to be missing in the prior art references before the USPTO.

375.    Thus, on information and belief,  Reime was material and also not cumulative of the prior already before the USPTO during the prosecution of the '850 Patent Application, at least because Reime disclosed the elements considered missing in the prior art presented during the prosecution of the '850 Patent Application, and because the perceived absence of the element

("at least one illuminator is further configured to function as at least one backlighting illuminator associated with the pixel array") in the prior art was the reason '850 Patent was allowed to issue.

376.    Reime is material and non-cumulative of other prior art already before the USPTO during the prosecution of the '850 Patent Application, and renders claims of the '850 Patent invalid.  *See* Ex. 10 (Samsung's IPR petition on '850 Patent).  Samsung filed an *inter-partes* review to invalidate the claims of the '850 Patent based on disclosure of Reime.  Samsung incorporates by reference the allegations made in Samsung's *inter-partes* review petition as if stated herein.

377.    Thus, the examiner would not have allowed the '850 Patent claims to issue had it been aware of the undisclosed Newton and Reime references. Specifically, but-for their omission, the claims would not have been allowed.

### Individuals Involved in the Prosecution of the '850 Patent Knew Newton and Reime Were Material to the Patentability of the '850 Patent and Not Cumulative to Other Information Before the USPTO

378.    On information and belief, Mr. Feng was aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '850 Patent Application, and the rejections of the claims of the '238 Application based on the Newton and Reime references, the disclosure of these references, and his intimate familiarity with Newton and Reime, gained through the prosecution of the '238 Application.

379.    For example, Mr. Feng substantively responded to the examiner's rejections based on Newton reference, discussing the disclosure of Newton.  *See* Ex. 1 at SAMS302-0050901 – SAMS302-0050921; SAMS302-0050953 – SAMS302-0050967 ('238 File History, Applicant Argument dated December 7, 2011; Applicant Argument dated June 21, 2012).  As a prosecuting attorney for the '238 Application, Mr. Feng was familiar with the examiner's characterization of Newton's disclosure in the '238 Application.

380.    For example, Mr. Feng substantively responded to the examiner's rejections based on Reime reference, discussing the disclosure of Reime. *See* Ex. 1 at SAMS203-0051009 – SAMS203-0051022; SAMS302-0051060 – SAMS302-0051071; SAMS302-0051129 – SAMS302-0051141 ('238 File History, Applicant Argument dated July 23, 2013; Applicant Argument dated February 28, 2014; Applicant Argument dated November 21, 2014; Applicant Argument dated February 9, 2016).  As a prosecuting attorney for the '238 Application, Mr. Feng was also familiar with the examiner's characterization of Reime's disclosure in the '238 Application.

381.    On information and belief, as a prosecuting attorney for the '850 Patent Application, Mr. Feng was familiar with the claims of the '850 Patent Application, which later issued as the '850 Patent, and was familiar with the element considered missing in the prior art during the prosecution of the '850 Patent Application.  Thus, on information and belief, Mr. Feng would have understood that Newton and Reime are each material and non-cumulative references to the patentability of the '850 Patent.

382.    On information and belief, Mr. Daniels was aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '850 Patent Application, the rejections of the claims of the '238 Application based on the Newton and Reime references, the disclosure of these references, and his intimate familiarity with Newton and Reime, gained at least through the prosecution of the '238 Application.  In addition, Mr. Daniels was specifically made aware of the similarity between the claims of the '238 Application and the '850 Patent through the interview with the examiner conducted on August 30, 2016.

383.     For example, on information and belief, Mr. Daniels was aware that the Reime reference was a basis for repeated rejection of the claims of the '238 Application, and that his predecessor, Mr. Feng, was unable to persuade the USPTO to overcome the rejections.

384.     On information and belief, as a prosecuting attorney for the '850 Patent Application, Mr. Daniels was also familiar with the claims of the '850 Patent, at least because he was made aware of the claims of the '850 Patent through the interview with the examiner of the '238 Application.

385.     Thus, on information and belief, Mr. Daniels would have understood that Newton Reime are material and non-cumulative references to the patentability of the '850 Patent.

386.     On information and belief, Eran Kali, Sara Michelle Lipman, Boris Gutin, Moti Margalit, and Power2B were aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '031 Application, and the rejections of the claims of the '238 Application based on the Newton and Reime references.  In addition, Power2B, through its patent counsel, Mr. Daniels, acknowledged the similarity between the claims of the '238 Application and the '850 Patent by filing a terminal disclaimer in the prosecution of the '238 Application based on the '850 Patent.  Ex. 1 at SAMS302-0051240 – SAMS302-0051250 (terminal disclaimer, dated September 1, 2016).

**Specific Intent to Deceive USPTO**

387.     On information and belief, despite having been aware of Newton and Reime, and being intimately familiar with the disclosures contained in Newton and Reime, Mr. Feng, Mr. Daniels, the inventors of the '850 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '850 Patent with a duty of candor and good faith in dealing with the USPTO did not submit, or cause

to be submitted, Newton or Reime to the USPTO in connection with the prosecution of the '850 Patent.

388.     Both Mr. Feng and Mr. Daniels actively participated in the prosecution of the '850 Patent.  In particular, Mr. Feng was intimately involved in the prosecution of both the '238 Application and the '850 Patent.  He substantively responded to office actions in prosecution of both the '238 Application and the '850 Patent.  He had numerous opportunities to submit these known material references, but he chose not to do so each time he communicated with the Office.

389.     In particular, Mr. Daniels signed nearly every communication with the Office after he received power of attorney to prosecute those Patents.  He had numerous opportunities to submit these known material references, but he chose not to do so each time he communicated with the Office.  In contrast, Mr. Daniels submitted these references to the Office in the '931 Patent as part of an information disclosure statement, but chose not to do so for the '850 Patent. Like the '850 Patent, the '931 Patent was being prosecuted by Mr. Daniels on behalf of the inventors Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit.  The examiner in the '238 Application (who was also assigned to the '931 Patent Application) considered the '931 Patent not patentably distinct from the alleged invention of the '238 Application. *See* Ex. 4 at P2BGES-0001616 – P2BGES-0001619 ('931 Patent File History, Office Action dated December 30, 2016, at 2-5).

390.     Mr. Daniels knew that the prosecution of the '850 Patent, pending before a different examiner (Examiner Abbas Abduselam) than the prosecution of the '238 Application (pending before Examiner Premal Patel), did not include Newton or Reime.  Mr. Daniels knew that the examiner in the '238 Application (Examiner Premal Patel) had determined that the claims in the '850 Patent were directed to the same invention as the '238 Application, whose

claims were rejected multiple times over the Newton and Reime references.  Yet, at every opportunity, Mr. Daniels failed to correct his omissions by, for example, including or later submitting the references.

391.    On information and belief, given their intimate familiarity with the disclosure of Newton and Reime, their respective relevance to the claims of the '850 Patent, and their involvement in the prosecution of the '850 Patent, the single most reasonable inference to draw from the failure to disclose Newton and Reime to the USPTO during the prosecution of the '170 Patent is that Mr. Feng and Mr. Daniels made a deliberate decision to withhold this information from the examiner, despite ample opportunity to include the information or otherwise correct the record.

392.    In addition, given the repeated pattern of failure to disclose material information to the USPTO committed by the patent attorneys (including at least Mr. Feng and Mr. Daniels), committed across multiple prosecutions including at least during prosecution of the '675, '170, '850, and '093 Patents, each pending before the same Examiner Abduselam, the single most reasonable inference to draw from the failure to disclose Newton and Reime to the USPTO during the prosecution of these patent was that the inventors of the '850 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), by and through Mr. Feng and Mr. Daniels, deliberately attempted to conceal the Newton and Reime references from Examiner Abduselam.

393.    Thus, on information and belief, Mr. Feng, Mr. Daniels, the inventors of the '850 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '850 Patent with a duty of candor and good faith in dealing with the USPTO intended to deceive the USPTO by deliberately

withholding material prior art that would have led the examiner to reject at least the independent claim 15 of the '850 Patent as unpatentable in the absence of further explanation.

394.     Mr. Feng, Mr. Daniels, the inventors of the '850 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '850 Patent committed inequitable conduct by withholding a material, non-cumulative reference from the examiner of the application that issued as the '850 Patent with the intent to deceive the examiner that the claims were patentable.

395.     Because of the inequitable conduct committed by Mr. Feng, Mr. Daniels, the inventors of the '850 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '850 Patent, the '850 Patent is not enforceable, and Power2B may not obtain any relief regarding the '850 Patent.

**SIXTEENTH DEFENSE**
**(Inequitable Conduct – Unenforceability of the '093 Patent)**

396.     Samsung incorporates by reference paragraphs 227 to 395.

397.     All claims of the '093 Patent are unenforceable because the '093 Patent was obtained through inequitable conduct before the United States Patent and Trademark Office ("USPTO") by intentionally and deceptively failing to disclose to the USPTO material information during the prosecution of the application for the '093 Patent.

398.     Specifically, the inventors, their patent counsel, and/or other individuals associated with the filing and prosecution of the application for the '093 Patent intentionally and deceptively failed to disclose to the USPTO during the prosecution of the patent application material information.  The material information include USPTO's Office Actions and the prior art relied upon by the patent examiner in the prosecution of patents and patent applications by the inventors of the '093 Patent.  Those patents and patent applications were being prosecuted by the same patent counsel and directed to the same invention as the '093 Patent.  The withheld

information was material to the patentability of at least one of the claims of the '093 Patent, and

the intentional and deceptive failure to disclose this material information to the USPTO

constituted inequitable conduct.

399.    Additionally, the claims of the '093 Patent, which is a continuation of the '850

Patent, are unenforceable due to the inequitable conduct of Mr. Feng, Mr. Daniels, and the

inventors of the '093 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin,

and Moti Margalit) committed during prosecution of the '850 Patent under the theory of

infectious unenforceability.

### Background Regarding the '093 Patent and<br>Prosecution of U.S. Patent Application No. 12/066,238

400.    On March 7, 2008, Mr. S. Peter Ledwig of Darby & Darby, PC, filed U.S. Patent

Application No. 12/066,238 (the "'238 Application").  The '238 Application lists Eran Kali, Sara

Michelle Lipman, Boris Gutin, and Moti Margalit as inventors.  Each of the inventors of the '238

Application is also a named inventor of the '093 Patent.

401.    On September 11, 2009,  Mr. Alan Young of Young Law Firm, P.C., filed U.S.

Patent Application No. 12/531,031 (the "'031 Application or the "'850 Patent Application").

The '031 Application is a parent application of U.S. Patent Application No. 14/148,309 (the

"'309 Application" or the "'093 Patent Application"), which issued as the '093 Patent.  The '031

Application eventually issued as the '850 Patent.  The '309 Application lists as inventors Eran

Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, who are also the inventors of the

'238 Application, as well as Robert Michael Lipman and Ken Zwiebel.

402.    On May 10, 2010, Mr. Paul Y. Feng of Fulwider Patton LLP filed  a revocation of

Power of Attorney for prior patent counsel and filed a new Power of Attorney to represent the

inventors of the '238 Applications in the prosecution of the '238 Application.  On the same day,

Mr. Feng also filed a revocation of Power of Attorney for prior patent counsel and filed a new Power of Attorney to represent the inventors of the '850 Patent Application.

403.    Mr. Feng became aware of U.S. Patent Application Publication No. 2002/0075243 ("Newton") at least as early as December 23, 2011, when the examiner assigned to the '238 Application issued an office action.  In the office action, the examiner rejected all pending claims of the '238 Application as anticipated by Newton.  On information and belief, each of Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, also learned of Newton reference at least through Mr. Feng.

404.    On June 21, 2012, Mr. Feng substantively responded to the December 23, 2011, office action in the '238 Application.

405.    Mr. Feng became aware of U.S. Patent Application Publication No. 2003/0034439 ("Reime") at least as early as January 23, 2013, when the examiner assigned to the '238 Application issued an office action.  In the office action, the examiner rejected all pending claims of the '238 Application as anticipated by Reime.  On information and belief, each of Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, also learned of Reime reference at least through Mr. Feng.

406.    On July 23, 2013, Mr. Feng substantively responded to the January 23, 2013, office action in the '238 Application.

407.    While prosecuting the '238 Application and responding to office actions based on Newton and Reime, Mr. Feng was actively filing various papers in the prosecution of the '031 Application, including Information Disclosure Statements (filed on May 9, 2011, and January 6, 2012), and substantively amending claims and responding to an office action (filed on July 15, 2013).  Nonetheless, Mr. Feng failed to disclose Newton or Reime to the USPTO during the prosecution of the '031 Application.

408.     On August 23, 2013, the examiner in the '031 Application issued a Notice of Allowance, without having been made aware of Newton or Reime.

409.     On August 30, 2013, the examiner in the '238 Application issued a final rejection of then-pending claims of the '238 Application, again based on Reime.

410.     On January 6, 2014, Mr. Feng filed the '093 Patent Application as a divisional application to the '850 Patent Application, on behalf of the inventors of the '093 Patent Application.

411.     The '238 Application and the '093 Patent Application were each assigned to different examiners.

412.     On April 10, 2014, Mr. Feng filed an Information Disclosure Statement ("IDS") in the prosecution of the '093 Patent Application.  The IDS did not list Newton or Reime, despite Mr. Feng's knowledge of these references.

413.     On February, 2014, Mr. Feng substantively responded to the August 30, 2013, office action in the '238 Application.

414.     On March 27, 2014, the examiner in the '238 Application issued a final rejection of then-pending claims of the '238 Application, again based on Reime.

415.     On November 21, 2014, Mr. Feng substantively responded to the March 27, 2014, office action in the '238 Application.

416.     On January 13, 2015, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

417.     During 2014 through 2016, Mr. Feng was also actively filing various papers in the prosecution of the '093 Patent Application, including responding to an office action rejecting the '093 Patent Application as double-patenting over the earlier-issued '850 Patent, and filing

terminal disclaimer in response (filed on December 18, 2015).  Nonetheless, Mr. Feng failed to disclose Newton or Reime to the USPTO during the prosecution of the '093 Patent Application.

418.     On February 9, 2016, Mr. Feng substantively responded to the January 13, 2015, office action in the '238 Application.

419.     On March 11, 2016, the examiner in the '238 Application issued a non-final rejection of then-pending claims of the '238 Application, again based on Reime.

420.     After having failed to overcome Reime reference through multiple rounds of amendments and arguments over three years, Power2B retained a new patent counsel.  On April 8, 2016, Mr. Adam P. Daniels of Polsinelli PC replaced Mr. Feng in the prosecution of the '238 Application. *See* Ex. 1 at SAMS302-0051220  ('238 Application File History, Power of Attorney dated April 8, 2016).  On the same day, Mr. Daniels replaced Mr. Feng in the prosecution of the '093 Patent Application as well.  *See* Ex. 11 at P2BGES-0005311 ('093 Patent file history, Power of Attorney dated April 8, 2016).

421.     On September 14, 2016, Mr. Daniels responded to an office action in the prosecution of the '093 Patent Application, substantively responding to the examiner's rejection based on prior art references.

422.     On August 30, 2016, the examiner in the '238 Application conducted an interview Mr. Daniels.  *See* Ex. 1 at SAMS302-0051260 (Interview summary, dated September 14, 2016). During the interview, the examiner "discussed subject matter of independent claims in view Patent# 9317170, 8610675 and 8624850; and how these claims could be potentially rejected under ODP. Examiner requested for Applicant to file a Terminal Disclaimer for ALL THREE Patent# mentioned above."  *Id.* (capitalization original).  On September 1, 2016, Mr. Daniels filed terminal disclaimers in the prosecution of the '238 Application on behalf of Power2B.

423.   While prosecuting the '238 Application, Mr. Daniels was also actively filing various papers relating to the '093 Patent, including substantively responding to an office action rejecting then-pending claims of the '093 Patent based on prior art references.  *See* Ex. 11 at P2BGES-005257 – P2BGES-005282 ('093 Patent File History, Response to Office Action, dated September 14, 2016).  Nonetheless, Mr. Daniels failed to disclose Newton or Reime to the USPTO in connection with the '093 Patent or its parent, '850 Patent.

424.   On September 27, 2016, the examiner in the '309 Application issued a notice of allowance, without having been made aware of the Newton or Reime.

**Newton and Reime References Were Material to the Patentability of the '093 Patent and Not Cumulative to Other Information Before the USPTO**

425.   Newton was published on June 20,2002, and therefore is a prior art to the '093 Patent.

426.   During prosecution of the '093 Patent Application, the examiner rejected then-pending claims of the '093 Patent Application as rendered obvious by prior art references before the examiner.  *See* Ex. 11 at P2BGES-005295 – PS2BGES-005296 ('093 Patent File History, Office Action dated April 15, 2016, at 3-4).  The examiner stated that then-pending dependent claims 3, 5, 46-64 would be patentable if written in independent form.  The examiner also allowed then-pending claims 65-177, and explained his reasons for allowance:

> Allowable Subject Matter
>
> 6. Claims 3, 5, and 46-64 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.
>
> 7. The following is a statement of reasons for the indication of allowable subject matter:
>
> . . . .
>
> Regarding claim 46, the prior art does not teach "at least one detector in said arrangement detects electromagnetic radiation at a baseline

72

level and senses said position of said object with respect to said pixel array and said circuitry provides said non-imagewise input according to location of at least one detector in said arrangement for which at least one of the amount of radiation detected and the change in the amount of radiation detected exceed a first predetermined threshold".

8. Claims 65-117 are allowed.

Reasons for allowance

9. Regarding claim 65, Graham et al. (USPN 5914709) teaches as shown Fig. 1(108), a user's finger (touch input) or a stylus (pen-based input) blocks one or more of the light beams 106 from reaching both the waveguides 110 and the light receiver 112 such that the light beams 106 being blocked thus provides a position of the user's input with respect to the light beams 106 that preferable have a predetermined relative location with respect to the transmission media 108 (e.g., display screen) Graham et al. also teach a light detector is to detect light intensity at a plurality of light detecting elements, and as shown in Fig. 9, the threshold adjustment processing 900 initially reads 902 a light intensity value for each of the enabled light sensing elements at ambient light conditions, and then, an "on" threshold is determined 904 based on the light intensity values that have been read (col. 2, lines 34-37, col. 4, lines 21-35).

A feature that is directed toward an allowable subject matter is "at least one pixel array including a plurality of detector elements detecting electromagnetic radiation at a baseline level, said at least one pixel array being configured to sense a position of an object with respect to said surf ace according to locations of one of said plurality of detector elements at which at least one of the amount of radiation detected and the change in the amount of radiation detected exceed a predetermined threshold". This feature along with the rest of claim limitations make claims 65- 117 allowable over prior art.

Ex. 11 at P2BGES-0005299 – P2BGES-0005300 ('093 Patent File History, Office Action dated April 15, 2016, at 7-9).

427.    During prosecution of the '238 Application, the examiner characterized Newton

as below:

Regarding claim 58, Newton teaches a position sensing assembly comprising: a plate (touch panel display screen 100; Fig 1) defining a surface; and at least one pixel array (109; Fig 1) comprising a plurality of detector elements (109a-109e; Fig 1) detecting electromagnetic radiation (infrared, visible light, microwave radiation; para [0017]) at a baseline level (para [0036]; para [0041]),

said at least one pixel array being operative to sense a position of an object with respect to said surface according to locations of ones of said plurality of detector elements at which at least one of the amount of radiation detected and the change in the amount of radiation detected exceed a predetermined threshold (para [0036] - para [0041]). (Note: as explained in para [0041], comparing a detection map created at the instant in time of a touch to a stored detection match created when the touch panel display screen 100 is not being touched (a baseline level), a determination may be made as to which beams have been interrupted. This comparing, indicates the change in the amount of radiation detected exceed a predetermined threshold).

Ex. 1 at SAME302-0050859 ('238 Application File History, Office Action dated June 7, 2011, at 4) (emphasis added) (original emphasis omitted).

428.    Thus, the examiner in the '238 Application stated that Newton teaches the same element that were found missing in the prior art that was before the examiner in the '093 Patent Application.  Despite having knowledge the disclosure of Newton and the interpretation of Newton's disclosure discussed during '238 Application, Mr. Daniels did not disclose Newton to the examiner in the '093 Patent Application.  Instead, Mr. Daniels drafted rejected claims into independent form, without bringing examiner's attention to previously allowed claims.  *See* Ex. 11 at P2BGES-005280 – P2BGES-005281 ('093 Patent File History, Applicant Argument dated September 14, 2016 at 24-25).

429.    Then-pending claim 46 of the '093 Patent Application issued as Claim 44 of the '093 Patent.  Then-pending claims 65 to 117 of the '093 Patent Application issued as claims 63 to 113 of the '093 Patent.

430.    Thus, on information and belief,  Newton was material and also not cumulative of the prior already before the USPTO during the prosecution of the '093 Patent Application, at least because Newton disclosed the elements considered missing in the prior art presented during the prosecution of the '093 Patent Application, and because the perceived absence of the element ("at least one pixel array including a plurality of detector elements detecting electromagnetic radiation at a baseline level, said at least one pixel array being configured to sense a position of

an object with respect to said surf ace according to locations of one of said plurality of detector elements at which at least one of the amount of radiation detected and the change in the amount of radiation detected exceed a predetermined threshold") in the prior art was the reason '093 Patent was allowed to issue.

431.    Reime was published on February 20, 2003, and therefore is a prior art to the '093 Patent.

432.    During prosecution of the '238 Application, the examiner characterized Reime as below:

> Regarding claim 58, Reime teaches a position sensing assembly comprising: a plate (cover plate 60; Fig 8a; para [0086]) defining a surface (a touch surface; Fig 8A; para [0086]); and at least one pixel array (RXU, RXD; Fig 5A) comprising a plurality of detector elements (RXU and RXD; Fig 5A) detecting electromagnetic radiation (Fig 1; LED operated in an infrared (IR)= type of electromagnetic radiation; para [0092]) at a baseline level (baseline of the output signal; para [0088]), said at least one pixel array being operative to sense a position (position of finger 100'; para [0073]; para [0074]) of an object (finger 100' or pencil 100; Fig 1; Fig 2a; para [0073]; Fig 11) with respect to said surface according to locations of ones of said plurality of detector elements (Fig 1; Fig 2A; Fig 8D; Fig 11) at which at least one of the amount of radiation detected (light rays 202,204 reach the receiver 30 by way of partial reflection is described in para [0086] which indicated that at least one amount of radiation is detected by receiver 30) and the change in the amount of radiation detected exceed a predetermined threshold (reflection causes the increase in the received light amount by the receiver 30; para [0086]; the term "increase" with respect to the partial reflection clearly shows that the amount of radiation detected exceed a predetermined threshold where predetermined threshold is broadly interpreted as any threshold value).

Ex. 1 at SAMS302-0050992 – SAMS302-0050993 ('238 Application File History, Office Action dated January 23, 2013, at 4-5) (emphasis added) (original emphasis omitted).

433.    Thus, the examiner in the '238 Application stated that Reime teaches the same element that were found missing in the prior art that was before the examiner in the '093 Patent Application.  Despite having knowledge the disclosure of Reime and the interpretation of

Newton's disclosure discussed during '238 Application, Mr. Daniels did not disclose Reime to the examiner in the '093 Patent Application.

434.     Thus, on information and belief, Reime was material and also not cumulative of the prior already before the USPTO during the prosecution of the '093 Patent Application, at least because Reime disclosed the elements considered missing in the prior art presented during the prosecution of the '093 Patent Application, and because the perceived absence of the elements of then-pending claim 26 in the prior art was the reason '093 Patent was allowed to issue.

435.     Reime is material and non-cumulative of other prior art already before the USPTO during the prosecution of the '093 Patent Application, and render claims of the '093 Patent invalid.  *See* Ex. 12 (Samsung's IPR petition on '093 Patent).  Samsung filed an inter-partes review to invalidate the claims of the '093 Patent based on disclosure of Newton and Reime.  Samsung incorporates by reference the allegations made in Samsung's inter-partes review petition as if stated herein.

436.     Thus, the examiner would not have allowed the '093 Patent claims to issue had it been aware of the undisclosed Newton and Reime references. Specifically, but-for their omission, the claims would not have been allowed.

**Individuals Involved in the Prosecution of the '093 Patent Knew
Newton and Reime Were Material to the Patentability of the '675 Patent
and Not Cumulative to Other Information Before the USPTO**

437.     On information and belief, Mr. Feng was aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '093 Patent Application, and the rejections of the claims of the '238 Application based on the Newton and Reime references, the disclosure of these references, and his intimate familiarity with Newton and Reime, gained through the prosecution of the '238 Application.

438.    On information and belief, as a prosecuting attorney for the '093 Patent Application, Mr. Feng was familiar with the claims of the '093 Patent Application, which later issued as the '093 Patent.

439.    Thus, on information and belief, Mr. Feng would have understood that Newton is a material reference to the patentability of the '093 Patent.

440.    On information and belief, Mr. Daniels was aware of the materiality of the Newton and Reime references, at least due to the similarity of the claims in the '238 Application and the '093 Patent Application, the rejections of the claims of the '238 Application based on the Newton and Reime references, the disclosure of these references, and his intimate familiarity with Newton and Reime, gained at least through the prosecution of the '238 Application.  In addition, Mr. Daniels was specifically made aware of the similarity between the claims of the '238 Application and the '093 Patent through the interview with the examiner conducted on August 30, 2016, which discussed the '850

441.    For example, on information and belief, Mr. Daniels was aware that the Reime reference was a basis for repeated rejection of the claims of the '238 Application, and that his predecessor, Mr. Feng, was unable to persuade the USPTO to overcome the rejections.

442.    On information and belief, as a prosecuting attorney for the '093 Patent Application, Mr. Daniels was familiar with the claims of the '093 Patent, at least because he substantively addressed examiner's prior-art based rejections during prosecution of the '309 Application.

443.    In addition, Mr. Daniels was also made aware of the similarity of the claims between the '238 Application and the '850 Patent, which is the direct parent of the '093 Patent and disclosing same subject matter as the '093 Patent.  Further, Mr. Daniels was also made aware of the similarity of the claims between the '850 Patent and the '093 Patent Application,

when the examiner in the '093 Patent Application rejected the claims of the '093 Patent

Application under obviousness-type double patenting over the claims of the '850 Patent.  *See* Ex.

11 at P2BGES-0005367 – P2BGES-005372 ('093 Patent File History, Office Action dated May

21, 2015).

444.    Thus, on information and belief, Mr. Daniels knew that Newton and Reime are

material and non-cumulative references to the patentability of the '093 Patent.

445.    On information and belief, Eran Kali, Sara Michelle Lipman, Boris Gutin, Moti

Margalit, and Power2B were aware of the materiality of the Newton and Reime references, at

least due to the similarity of the claims in the '238 Application, the '309 Application, and the

rejections of the claims of the '238 Application based on the Newton and Reime references.  In

addition, Power2B, through its patent counsel, Mr. Daniels, acknowledged the similarity between

the claims of the '238 Application and the '850 Patent (which is a direct parent of the '093

Patent) by filing a terminal disclaimer in the prosecution of the '238 Application based on the

'850 Patent.  Ex. 1 at SAMS302-0051240 – SAMS302-0051250  ('238 Application file history,

terminal disclaimer, dated September 1, 2016).  Power2B, through Mr. Feng, also filed a

terminal disclaimer during prosecution of the '093 Patent based on the '850 Patent, thereby

acknowledging that the '238 Application, the '850 Patent, and the '093 Patent were all directed

to the same invention.  Ex. 11 at P2BGES-0005317 ('093 Patent file history, terminal disclaimer,

dated September 14, 2015).

## Specific Intent to Deceive USPTO

446.    On information and belief, despite having been aware of Newton and Reime, and

being intimately familiar with the disclosures contained in Newton and Reime, Mr. Feng, Mr.

Daniels, the inventors of the '093 Patent (including at least Eran Kali, Sara Michelle Lipman,

Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of the '093

Patent with a duty of candor and good faith in dealing with the USPTO did not submit, or cause to be submitted, Newton or Reime to the USPTO in connection with the prosecution of the '093 Patent.

447.    Both Mr. Feng and Mr. Daniels actively participated in the prosecution of the '170 Patent.

448.    In particular, Mr. Feng was intimately involved in the prosecution of both the '238 Application and the '093 Patent.  He substantively responded to office actions in prosecution of the '238 Application.  He submitted Information Disclosure Statement in the '093 Patent Application.  He had numerous opportunities to submit these known material references, but he chose not to do so each time he communicated with the Office.

449.    In particular, Mr. Daniels was intimately involved in the prosecution of both the '238 Application and the '093 Patent.  He substantively responded to office actions in prosecution of both the '238 Application and the '093 Patent.  He had numerous opportunities to submit these known material references, but he chose not to do so each time he communicated with the Office.  In contrast, Mr. Daniels submitted these references to the Office in the '931 Patent as part of an information disclosure statement, but chose not to do so for the '093 Patent. Like the '093 Patent, the '931 Patent was being prosecuted by Mr. Daniels on behalf of the inventors Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit.  The examiner in the '238 Application (who was also assigned to the '931 Patent Application) considered the '931 Patent not patentably distinct from the alleged invention of the '238 Application.  *See* Ex. 4 at P2BGES-0001616 – P2BGES-0001619 ('931 Patent File History, Office Action dated December 30, 2016, at 2-5).

450.    Mr. Daniels knew that the prosecution of the '093 Patent, pending before a different examiner (Examiner Abbas Abduselam) than the prosecution of the '238 Application

(pending before Examiner Premal Patel), did not include Newton or Reime.  Mr. Daniels knew

that the examiner in the '238 Application (Examiner Premal Patel) had determined that the

claims in the '850 Patent were directed to the same invention as the '238 Application, whose

claims were rejected multiple times over the Newton and Reime references.  Mr. Daniels also

knew that the examiner in the '093 Patent (Examiner Abduselam) had determined that the claims

in the '093 Patent were directed to the same invention as the '850 Patent.  Yet, at every

opportunity, Mr. Daniels failed to correct his omissions by, for example, including or later

submitting the references.

451.    On information and belief, given their intimate familiarity with the disclosure of

Newton and Reime, their respective relevance to the claims of the '850 Patent, and their

involvement in the prosecution of the '850 Patent, the single most reasonable inference to draw

from the failure to disclose Newton and Reime to the USPTO during the prosecution of the '170

Patent is that Mr. Feng and Mr. Daniels made a deliberate decision to withhold this information

from the examiner, despite ample opportunity to include the information or otherwise correct the

record.

452.    In addition, given the repeated pattern of failure to disclose material information

to the USPTO committed by the patent attorneys (including at least Mr. Feng and Mr. Daniels),

committed across multiple prosecutions including at least during prosecution of the '675, '170,

'850, and '093 Patents, each pending before the same Examiner Abduselam, the single most

reasonable inference to draw from the failure to disclose Newton and Reime to the USPTO

during the prosecution of these patent was that the inventors of the '093 Patent (including at least

Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), by and through Mr. Feng and

Mr. Daniels, deliberately attempted to conceal the Newton and Reime references from Examiner

Abduselam.

453.     Thus, on information and belief, Mr. Feng, Mr. Daniels, the inventors of the '093

Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit),

and/or other individuals involved in the prosecution of the '093 Patent with a duty of candor and

good faith in dealing with the USPTO intended to deceive the USPTO by deliberately

withholding material prior art that would have led the examiner to reject at least the independent

claim 15 of the '093 Patent as unpatentable in the absence of further explanation.

454.     Mr. Feng, Mr. Daniels, the inventors of the '093 Patent (including at least Eran

Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved

in the prosecution of the '093 Patent committed inequitable conduct by withholding a material,

non-cumulative reference from the examiner of the application that issued as the '093 Patent

with the intent to deceive the examiner that the claims were patentable.

455.     Because of the inequitable conduct committed by Mr. Feng, Mr. Daniels, the

inventors of the '093 Patent (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin,

and Moti Margalit), and/or other individuals involved in the prosecution of the '093 Patent, the

'093 Patent is not enforceable, and Power2B may not obtain any relief regarding the '093 Patent.

## SEVENTEENTH DEFENSE
### (Inequitable Conduct – Unenforceability of the '931 Patent)

456.     Samsung incorporates by reference paragraphs 227 to 455.

457.     All claims of the '931 Patent are unenforceable due to the inequitable conduct of

Mr. Feng, Mr. Daniels, and the inventors of the '675, '170, '850, and '093 Patents (including at

least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit) committed during

prosecution of the '675, '170, '850, and '093 Patents under the theory of infectious

unenforceability.

458.     The inequitable conduct that occurred during prosecution of the '675, '170, '850,

and '093 Patents have an immediate and necessary relation to the enforcement of the '931 Patent.

459.    For example, the '931 Patent claims are directed to the same subject matter as the '675, '170, '850, and '093 Patents.  An exemplary comparison between the text of '931 Patent specification and '850 Patent specification is attached as Ex. 13.  The comparison shows that the specifications have a large degree of overlap, with the later-filed '850 Patent specification adding additional figures (Figs. 20-33) and corresponding description.  Each of the patents relies on the same disclosed subject matter for written description support for its claims.  For example, both the '850 Patent and the '931 Patent incorporate by reference U.S. Provisional Patent Application No. 60/715,546 and U.S. Provisional Patent Application No. 60/734,027.   The '093 Patent, which is a continuation of the '850 Patent, shares the same specification as the '850 Patent and therefore shares the same degree of overlap with the '931 Patent.

460.    Another exemplary comparison between the text of '931 Patent specification and '675 Patent specification is attached as Ex. 14.  The comparison shows that the specifications have a large degree of overlap, with the later-filed '675 Patent specification adding additional figures (Figs. 20-26) and corresponding description.  Each of the patents relies on the earlier disclosed subject matter for written description support for its claims.  For example, both the '675 Patent and the '931 Patent incorporate by reference U.S. Provisional Patent Application No. 60/715,546 and U.S. Provisional Patent Application No. 60/734,027.   The '170 Patent, which is a division of the '675 Patent, shares the same specification as the '850 Patent and therefore shares the same degree of overlap with the '931 Patent.

461.    The prosecution history of the '931 Patent shows that its claims are directed to the same subject matter to that covered by the '675, '170, '850, and '093 Patents.  During prosecution of the '238 Application, which is a parent application to the '931 Patent, the examiner in the '238 Application conducted an interview Mr. Daniels.  *See* Ex.1 at SAMS302-0051260 (Interview summary, dated September 14, 2016).   During the interview, the examiner

"discussed subject matter of independent claims in view Patent# 9317170, 8610675 and 8624850; and how these claims could be potentially rejected under ODP. Examiner requested for Applicant to file a Terminal Disclaimer for ALL THREE Patent# mentioned above." *Id.* (capitalization original).  On September 1, 2016, Mr. Daniels filed terminal disclaimers in the prosecution of the '238 Application on behalf of Power2B.

462.    During prosecution of the '931 Patent, the examiner also rejected the claims of the '931 Patent as directed to the same alleged invention as the '238 Application (issued as U.S. Patent No. 9,494,972), and directed the applicant to file a terminal disclaimer.  Ex. 4 at P2BGES-0001616 – P2BGES-0001619 ('931 Patent File History, Office Action dated December 30, 2016, at 2-5).

463.    Thus, the '931 Patent is directed to the same alleged invention as the '238 Application, which is in turn directed to the same alleged invention as the '675, '170, '850, and '093 Patents.

464.    For another example, each of the '931 Patent's inventors, Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit, are also named inventors of the '675, '170, '850, and '093 Patents, during prosecution of which the inequitable conduct occurred.

465.    The enforcement of the '931 Patent is directly related to the inequitable conduct committed during prosecution of the '675, '170, '850, and '093 Patents, because the inequitable conduct, which is directly related to Power2B's ability to capture the alleged inventions set out in the '675, '170, '850, and '093 Patents, bears and immediate and necessary relation to the content of the claims of the '931 Patent.

466.    Because of the inequitable conduct committed by Mr. Feng, Mr. Daniels, the inventors of the '675, '170, '850, and '093 Patents (including at least Eran Kali, Sara Michelle Lipman, Boris Gutin, and Moti Margalit), and/or other individuals involved in the prosecution of

the '675, '170, '850, and '093 Patents, the '931 Patent, which is directed to the same subject matter that Mr. Feng, Mr. Daniels, and the inventors of the '931 Patent sought to capture through the '675, '170, '850, and '093 Patents, is also unenforceable under the theory of infectious unenforceability.

## **RESERVATION OF ADDITIONAL DEFENSES**

467.    Samsung reserves the right to assert additional defenses that may be developed through discovery in this action.

## COUNTERCLAIMS FOR DECLARATORY JUDGMENT

468.    Without admitting any of the allegations of the Complaint other than those expressly admitted herein, and without prejudice to either SEC's or SEA's right to plead additional counterclaims as additional information becomes available, Counterclaim-Plaintiff Samsung alleges as follows against Counterclaim-Defendant Power2B:

## BACKGROUND

469.    According to the allegations set forth in its Complaint, Power2B claims to be the assignee and owner of the Asserted Patents. *See* Dkt. No. 1 at ¶¶ 25, 52, 80, 106, 135, 161.

470.    Power2B has accused Samsung of infringing the Asserted Patents. Samsung denies that any of its products infringe any valid or enforceable claim in any of the Asserted Patents.

471.    An actual case and controversy exists between Samsung and Power2B concerning the alleged infringement of one or more claims of the Asserted Patents, and that controversy is ripe for adjudication by this Court.

## THE PARTIES

472.    Counterclaim-Plaintiff SEC is a business entity organized under the laws of the Republic of Korea with a principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, 443-742, Republic of Korea.

473.    Counterclaim-Plaintiff SEA is a corporation organized under the laws of the state of New York with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

474.     On information and belief, Counterclaim-Defendant Power2B alleges it is a Power2B is a Delaware corporation having an address of 1302 Ozone Ave., Santa Monica, CA 90405. *See* Dkt. No. 1 at ¶ 2.

## JURISDICTION AND VENUE

475.     This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction over these Counterclaims under 28 U.S.C. §§ 1331 and 1338(a). These Counterclaims arise under the patent laws of the United States.

476.     This Court has personal jurisdiction over Power2B, at least because by initiating this lawsuit, Power2B has submitted to the jurisdiction of this District.

477.     Venue for these Counterclaims is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of the '675 Patent)

478.     Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

479.     An actual controversy exists between Samsung and Power2B as to whether Samsung infringes the '675 Patent, as Power2B contends, or does not do so, as Samsung contends.

480.     Samsung has been damaged by Power2B's filing of a lawsuit against Samsung based on a patent that Samsung does not infringe.

481.     By this Counterclaim, Samsung seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '675 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration to that effect.

482.     A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '675 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

483.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of the '850 Patent)

484.     Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

485.     An actual controversy exists between Samsung and Power2B as to whether Samsung infringes the '850 Patent, as Power2B contends, or does not do so, as Samsung contends.

486.     Samsung has been damaged by Power2B's filing of a lawsuit against Samsung based on a patent that Samsung does not infringe.

487.     By this Counterclaim, Samsung seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '850 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration to that effect.

488.     A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '850 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

489.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

**THIRD COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '170 Patent)**

490.     Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

491.     An actual controversy exists between Samsung and Power2B as to whether Samsung infringes the '170 Patent, as Power2B contends, or does not do so, as Samsung contends.

492.     Samsung has been damaged by Power2B's filing of a lawsuit against Samsung based on a patent that Samsung does not infringe.

493.     By this Counterclaim, Samsung seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '170 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration to that effect.

494.     A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '170 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

495.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## FOURTH COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of the '093 Patent)

496.    Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

497.    An actual controversy exists between Samsung and Power2B as to whether Samsung infringes the '093 Patent, as Power2B contends, or does not do so, as Samsung contends.

498.    Samsung has been damaged by Power2B's filing of a lawsuit against Samsung based on a patent that Samsung does not infringe.

499.    By this Counterclaim, Samsung seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '093 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration to that effect.

500.    A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '093 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

501.    This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## FIFTH COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of the '931 Patent)

502.    Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

503.    An actual controversy exists between Samsung and Power2B as to whether Samsung infringes the '931 Patent, as Power2B contends, or does not do so, as Samsung contends.

504.    Samsung has been damaged by Power2B's filing of a lawsuit against Samsung based on a patent that Samsung does not infringe.

505.    By this Counterclaim, Samsung seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '931 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration to that effect.

506.    A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '931 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

507.    This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## SIXTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '675 Patent)

508.    Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

509.    An actual controversy exists between Samsung and Power2B as to whether the '675 Patent is valid, as Power2B contends, or is invalid for failure to comply with the requirements of patentability of the Patent Laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 119, 132, 251, 256, and/or 282, as Samsung contends.

510.     By this Counterclaim, Samsung seeks a declaration that the claims of the '675 Patent are invalid. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '675 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

511.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### SEVENTH COUNTERCLAIM
**(Declaratory Judgment of Invalidity of the '850 Patent)**

512.     Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

513.     An actual controversy exists between Samsung and Power2B as to whether the '850 Patent is valid, as Power2B contends, or is invalid for failure to comply with the requirements of patentability of the Patent Laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 119, 132, 251, 256, and/or 282, as Samsung contends.

514.     By this Counterclaim, Samsung seeks a declaration that the claims of the '850 Patent are invalid. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '850 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

515.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## EIGHTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '170 Patent)

516.   Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

517.   An actual controversy exists between Samsung and Power2B as to whether the '170 Patent is valid, as Power2B contends, or is invalid for failure to comply with the requirements of patentability of the Patent Laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 119, 132, 251, 256, and/or 282, as Samsung contends.

518.   By this Counterclaim, Samsung seeks a declaration that the claims of the '170 Patent are invalid. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '170 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

519.   This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## NINTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '093 Patent)

520.   Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

521.   An actual controversy exists between Samsung and Power2B as to whether the '093 Patent is valid, as Power2B contends, or is invalid for failure to comply with the requirements of patentability of the Patent Laws of the United States, Title 35 of the United

States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 119, 132, 251, 256, and/or 282, as Samsung contends.

522.     By this Counterclaim, Samsung seeks a declaration that the claims of the '093 Patent are invalid. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '093 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

523.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## TENTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '931 Patent)

524.     Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

525.     An actual controversy exists between Samsung and Power2B as to whether the '931 Patent is valid, as Power2B contends, or is invalid for failure to comply with the requirements of patentability of the Patent Laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 119, 132, 251, 256, and/or 282, as Samsung contends.

526.     By this Counterclaim, Samsung seeks a declaration that the claims of the '931 Patent are invalid. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '931 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

527.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## ELEVENTH COUNTERCLAIM
### (Declaratory Judgment of Unenforceability of the '675 Patent)

528.     Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

529.     Samsung specifically incorporates by reference the allegations set forth in Samsung's Thirteenth Defense (Inequitable Conduct – Unenforceability of the '675 Patent).

530.     An actual controversy exists between Samsung and Power2B as to whether the '675 Patent is enforceable, as Power2B contends, or is unenforceable for due to inequitable conduct committed by Paul Y. Feng, Adam P. Daniels, Eran Kali, Sara Michelle Lipman, Boris Gustin, Moti Margalit, and Power2B, during prosecution of the '675 Patent.

531.     By this Counterclaim, Samsung seeks a declaration that the claims of the '675 Patent are unenforceable. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '675 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

532.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## TWELFTH COUNTERCLAIM
### (Declaratory Judgment of Unenforceability of the '170 Patent)

533.     Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

534.     Samsung specifically incorporates by reference the allegations set forth in Samsung's Fourteenth Defense (Inequitable Conduct – Unenforceability of the '170 Patent).

535.     An actual controversy exists between Samsung and Power2B as to whether the '170 Patent is enforceable, as Power2B contends, or is unenforceable for due to inequitable conduct committed by Paul Y. Feng, Adam P. Daniels, Eran Kali, Sara Michelle Lipman, Boris Gustin, Moti Margalit, and Power2B, during prosecution of the '170 Patent.

536.     By this Counterclaim, Samsung seeks a declaration that the claims of the '170 Patent are unenforceable. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '170 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

537.     This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

**THIRTEENTH COUNTERCLAIM**
**(Declaratory Judgment of Unenforceability of the '850 Patent)**

538.     Samsung incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

539.     Samsung specifically incorporates by reference the allegations set forth in Samsung's Fifteenth Defense (Inequitable Conduct – Unenforceability of the '850 Patent).

540.     An actual controversy exists between Samsung and Power2B as to whether the '850 Patent is enforceable, as Power2B contends, or is unenforceable for due to inequitable conduct committed by Paul Y. Feng, Adam P. Daniels, Eran Kali, Sara Michelle Lipman, Boris Gustin, Moti Margalit, and Power2B, during prosecution of the '850 Patent.

541.     By this Counterclaim, Samsung seeks a declaration that the claims of the '850 Patent are unenforceable. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '850 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or

offer for sale of its products.

542.    This is an exceptional case entitling Samsung to an award of its attorney's fees

incurred in connection with this action pursuant to 35 U.S.C. § 285.

## FOURTEENTH COUNTERCLAIM
### (Declaratory Judgment of Unenforceability of the '093 Patent)

543.    Samsung incorporates by reference the admissions, denials, and allegations set

forth in the preceding paragraphs of this Answer as if fully set forth herein.

544.    Samsung specifically incorporates by reference the allegations set forth in

Samsung's Sixteenth Defense (Inequitable Conduct – Unenforceability of the '093 Patent).

545.    An actual controversy exists between Samsung and Power2B as to whether

the '093 Patent is enforceable, as Power2B contends, or is unenforceable for due to

inequitable conduct committed by Paul Y. Feng, Adam P. Daniels, Eran Kali, Sara Michelle

Lipman, Boris Gustin, Moti Margalit, and Power2B, during prosecution of the '093 Patent.

546.    By this Counterclaim, Samsung seeks a declaration that the claims of the '093

Patent are unenforceable. A judicial declaration is necessary and appropriate at this time such

that Samsung may ascertain its rights and duties with respect to the '093 Patent and with

respect to any past, present, or future manufacture, use, importation, distribution, sale, or

offer for sale of its products.

547.    This is an exceptional case entitling Samsung to an award of its attorney's fees

incurred in connection with this action pursuant to 35 U.S.C. § 285.

## FIFTEENTH COUNTERCLAIM
### (Declaratory Judgment of Unenforceability of the '931 Patent)

548.    Samsung incorporates by reference the admissions, denials, and allegations set

forth in the preceding paragraphs of this Answer as if fully set forth herein.

549.    Samsung specifically incorporates by reference the allegations set forth in

Samsung's Seventeenth Defense (Inequitable Conduct – Unenforceability of the '931 Patent).

550.    An actual controversy exists between Samsung and Power2B as to whether the '931 Patent is enforceable, as Power2B contends, or is unenforceable for due to inequitable conduct committed by Paul Y. Feng, Adam P. Daniels, Eran Kali, Sara Michelle Lipman, Boris Gustin, Moti Margalit, and Power2B, during prosecution of the '931 Patent.

551.    By this Counterclaim, Samsung seeks a declaration that the claims of the '931 Patent are unenforceable. A judicial declaration is necessary and appropriate at this time such that Samsung may ascertain its rights and duties with respect to the '931 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

552.    This is an exceptional case entitling Samsung to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## SAMSUNG'S DEMAND FOR JURY TRIAL

553.    Samsung hereby demands a jury trial on all issues so triable.

## SAMSUNG'S PRAYER FOR RELIEF

Having answered Power2B's Complaint and having asserted Affirmative Defenses and Counterclaims, Samsung respectfully seeks the following relief:

A.    A judgment that Samsung has not infringed the '675, '850, '170, '093 and '931 Patents;

B.    A judgment that the '675, '850, '170, '093 and '931 Patents are invalid and/or unenforceable against Samsung;

C.    A judgment declaring this case exceptional under 35 U.S.C. § 285 and awarding Samsung its attorneys' fees and prejudgment interest, and an award to Samsung of all of its costs of this action; and

D.    Such other relief as the Court shall deem just and proper

Dated:  August 5, 2021                    Respectfully submitted,

                                          */s/ Ryan K. Yagura*
_____

                                          Ryan K. Yagura (Tex. Bar No. 24075933)
                                          ryagura@omm.com
                                          Nicholas J. Whilt (Cal. Bar No. 247738)
                                          nwhilt@omm.com
                                          Clarence Rowland (Cal. Bar No. 285409)
                                          crowland@omm.com
                                          **O'MELVENY & MYERS LLP**
                                          400 S. Hope Street
                                          Los Angeles, CA 90071
                                          Telephone: 213-430-6000
                                          Facsimile: 213-430-6407

                                          Bo K. Moon (Cal. Bar No. 268481)
                                          **O'MELVENY & MYERS LLP**
                                          610 Newport Center Dr 17FL
                                          Newport Beach, CA 92660
                                          Telephone: 949-823-7972
                                          Facsimile: 213-430-6407

                                          ***Attorneys for Defendants Samsung Electronics
                                          Co., Ltd. and Samsung Electronics America, Inc.***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on August 5, 2021.

*/s/ Ryan K. Yagura*
Ryan K. Yagura