# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| POWER2B, INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.<br>and SAMSUNG ELECTRONICS<br>AMERICA, INC.,<br><br>    *Defendants*. | Case No. 6:20-cv-01183-ADA |

## PLAINTIFF POWER2B INC.'S
## <u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

## Table of Contents

1.  **Introduction** .................................................................................................. 1
2.  **Person of Ordinary Skill in the Art** ............................................................ 2
3.  **Disputed Claim Terms** ................................................................................. 2
    A.  "radiation at [a]/[the]/[said] baseline level" ........................................ 2
        (1)  *Samsung's construction imposes improper temporal limitations and creates ambiguity.* ................................................................. 3
        (2)  *No construction is necessary because ordinary words are used pursuant to their ordinary meanings.* ............................................. 4
    B.  "propinquity" terms ............................................................................. 5
        (1)  *Samsung's proposed construction imports an extraneous limitation that is unsupported by the intrinsic evidence.* ...................... 6
        (2)  *The proper construction for "propinquity" is "proximity" and plain and ordinary meaning for the remainder of the terms.* ................ 10
    C.  "pixel array" ........................................................................................ 12
        (1)  *The intrinsic evidence demonstrates that "pixel array" includes input sensing capabilities.* ................................................... 12
        (2)  *Samsung fails to prove a clear disavowal of claim scope.* ....... 15
        (3)  *The proper construction of "pixel array" is "arrangement of semiconductor components."* .............................................. 16
    D.  "the at least one pixel array being configured to sense a position of at least one object with respect to a surface thereof" ................................. 17
    E.  "circuitry coupled to and receiving an output from the at least one pixel array receiving" ...................................................................................... 20
    F.  "impingement" terms ........................................................................... 23
        (1)  *Samsung's proposed construction impermissibly narrows the term.* ...... 23
        (2)  *Power2B's proposed construction is proper.* ........................... 28
4.  **Conclusion** .................................................................................................. 29

79809041.2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007)...............................................................................11

*Cal. Inst. of Tech. v. Hughes Communications Inc.*,
    35 F. Supp. 3d 1176 (C.D. Cal. 2014) ...................................................................20

*Cent. Admixture Pharmacy Services., Inc. v. Advanced Cardiac Solutions, P.C.*,
    482 F.3d 1347 (Fed. Cir. 2007)...............................................................................2

*Cordis Corp. v. Medtronic AVE, Inc.*,
    339 F.3d 1352 (Fed. Cir. 2003)...............................................................................3

*Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*,
    526 F. App'x 927 (Fed. Cir. 2013) .........................................................................16

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
    845 F.3d 1357 (Fed. Cir. 2017)...............................................................................8

*In re Elonex Phase II Power Mgmt. Litig.*,
    No. C.A. 01-082 GMS, 2002 WL 34487165 (D. Del. Oct. 3, 2002)......................15

*Finalrod IP, LLC v. John Crane, Inc.*,
    No. 7:15-CV-00097-ADA, 2019 WL 4061703 (W.D. Tex. May 30, 2019) ............2

*Goldenberg v. Cytogen*,
    373 F.3d 1158 (Fed.Cir.2004)................................................................................11

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
    183 F.3d 1369 (Fed. Cir. 1999)................................................................................7

*Intel Corp. v. VIA Technologies.*,
    319 F.3d 1357 (Fed. Cir. 2003)..............................................................................15

*Jonathan Mfg. Corp. v. Cent. Indus. Supply Co.*,
    No. SA CV04-1365DOC(SHX), 2005 WL 6300784 (C.D. Cal. Oct. 26, 2005)....22

*Kara Tech. Inc. v. Stamps.com Inc.*,
    582 F.3d 1341 (Fed. Cir. 2009)..............................................................................12

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)..................................................................................................18

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)...................................................................................................20

*Nexus Display Technologies. LLC v. Dell Inc.*,
   No. 2:14-CV-762, 2015 WL 5578735 (E.D. Tex. Sept. 22, 2015)...........................................3

*Novo Indus., L.P. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003)...................................................................................21

*O2 Micro Intl'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008).....................................................................................5

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed.Cir.2003)..............................................................................15, 16

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)......................................................................1, 4, 5, 12

*Purdue Pharma L.P. v. Endo Pharmaceuticals. Inc.*,
   438 F.3d 1123 (Fed.Cir.2006)................................................................................12, 15

*Seachange Int'l, Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005).....................................................................................7

*SmithKline Beecham Corp. v. Apotex Corp.*,
   403 F.3d 1331 (Fed. Cir. 2005)....................................................................................20

*SynQor, Inc. v. Artesyn Technologies., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013)....................................................................................26

*Texas Digital v. Telegenix, Inc.*,
   308 F.3d 1193 (Fed.Cir.2002)......................................................................................11

*TV/Com Int'l, Inc. v. Mediaone of Greater Fla., Inc.*,
   No. 3:00-CV-1045-J-21HTS, 2001 WL 36169709 (M.D. Fla. Aug. 3, 2001) ........................22

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed.Cir.1997)......................................................................................3

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
   587 F.3d 1339 (Fed. Cir. 2010)....................................................................................20

*Victor Co. of Japan, Inc. v. Intervideo, Inc.*,
   No. A-08-CA-041-SS, 2009 WL 10670040 (W.D. Tex. July 27, 2009) ................................4

79809041.2

Plaintiff Power2B, Inc. (Power2B) submits its brief in response to Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s (collectively, Samsung) opening claim construction brief as follows:

## 1.     Introduction

In its opening brief, Samsung ignores the very purpose of claim construction—resolving disputes relating to the meaning and technical scope of the claims.  Samsung's proposed constructions do not clarify the disputed terms, but are directed to non-infringement litigation positions.  Further, Samsung's proposed constructions are contrary to the intrinsic evidence and do not reflect how one of ordinary skill in the art at the time of the invention would have understood the claims.

Samsung's proposed constructions also contradict its own positions and expert opinions before the PTO in IPR petitions corresponding to the asserted patents.  Under the same *Phillips* claim construction standard employed by this Court, Samsung submitted to the PTO that it does "not believe that any term requires explicit construction."  (*See* Ex. 1 at P2BGES-0006917; Ex. 2 at P2BGES-0007084; Ex. 3 at P2BGES-0007285-86; Ex. 4 at P2BGES-0007474; Ex. 5 at P2BGES- 0007669.)  Likewise, Samsung's IPR expert opined to the PTO that he does "not believe that any term requires explicit construction" and was able to "ascribe the plain meaning to each claim term, as that plain meaning would have been understood by a POSITA."  (Ex. 6 at P2BGES-0007017; Ex. 7 at P2BGES-0007197; Ex. 8 at P2BGES-0007389; Ex. 9 at P2BGES- 0007582; Ex. 10 at P2BGES-0007762.)

Unsurprisingly, Samsung seeks broader constructions before the PTO to apply prior art, but narrower constructions before this Court to avoid infringement.  The Court should reject Samsung's request to ignore the intrinsic evidence (and its own IPR positions) and to rewrite the claims to conform to Samsung's litigation positions.

## 2.    Person of Ordinary Skill in the Art

With respect to the asserted patents, a POSITA would have had a bachelor's degree in electrical engineering, computer engineering or a related field, and at least three years of experience relating to research, design, and/or development of sensor systems, circuits and signal processing algorithms, or the equivalent, with education substituting for experience and vice versa.  (Decl. of D. Richard Brown III (hereinafter, Brown Decl.) at ¶ 14.)

## 3.    Disputed Claim Terms[1]

## A.    "radiation at [a]/[the]/[said] baseline level"

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "radiation at [a]/[the]/[said] baseline level" **('675 pat., claims 1, 11, 13; '170 pat., claims 1, 26; '850 pat., claims 21, 26, 31; '093 pat., claims 44, 56)** | plain and ordinary meaning | "level of light in the absence of a nearby object" |

Samsung contends the term "radiation at [a]/[the]/[said] baseline level" requires construction because otherwise, a "baseline level" "*could* be any arbitrary level at some unspecified time in the past."  (Opening Claim Construction Br. [Doc. 38] (hereinafter, Opening Br.) at 3-4 (emphasis added).)  Before the PTO, Samsung interprets the plain language of the "baseline level" to mean "ambient light" *with or without* any nearby object.  (*See* Ex. 2 at P2BGES-0007107 ("Yamaguchi also teaches that the detector elements are configured to detect radiation at a baseline level, including for example baseline ambient light."); *id*. at P2BGES-

---

[1]Samsung identified three additional terms for construction in its identification of revised claim constructions.  (*See* Ex. 11 at 3-4 (listing three additional terms as being indefinite at end of table).)  Samsung contended that each of these three terms is indefinite.  (*Id.*)  Because Samsung identified these claim terms for construction yet failed to advance claim construction positions for these terms in its opening brief, Samsung has waived its ability to articulate an opposing position.  *See Cent. Admixture Pharmacy Services., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that [defendant] waived any argument with respect to this term by failing to raise it during the claim construction phase.  We agree."); *Finalrod IP, LLC v. John Crane, Inc.*, No. 7:15-CV-00097-ADA, 2019 WL 4061703, at *2 (W.D. Tex. May 30, 2019) (finding waiver of indefiniteness arguments because defendants failed to raise them during the claim construction phase).

0007119 ("This background ambient light is the baseline signal.").)  Now, Samsung attempts to narrow the term.

**(1)**     ***Samsung's construction imposes improper temporal limitations and creates ambiguity.***

In its Opening Brief, Samsung states that "[i]n each of the '675, '170, '850, and '093 Patents, the plain language of the claims itself clarifies that the detected 'baseline level' is a specific level of radiation detected by the detector elements or the sensors, not some arbitrary level at some unspecified earlier time."  (Opening Br. at 4.)  Samsung argues that construction is necessary because the plain and ordinary meaning could somehow encompass a radiation level measured at "some unspecified time in the past."  (*Id*. at 3-4.  This makes no sense.

The word "baseline" denotes an "initial" or "control" level of radiation, which renders Samsung's basis for requesting construction redundant.  (Brown Decl. at ¶ 38.)  No construction is required if the requested construction would be "an exercise in redundancy".  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed.Cir.1997).

In addition, Samsung's basis for advancing its construction relies on imposition of a temporal limitation to resolve its "unspecified" time issue.  The asserted claims are apparatus claims and imposing a particular time or temporal limitation is improper.  *See Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1357 (Fed. Cir. 2003) (declining to superimpose a process limitation on the product claims at issue); *Nexus Display Technologies. LLC v. Dell Inc.*, No. 2:14-CV-762, 2015 WL 5578735, at *4 (E.D. Tex. Sept. 22, 2015) ("[T]he Court finds that "immediately" adds an unwarranted temporal limitation into the apparatus claims.").

Moreover, inserting Samsung's construction into the relevant claims would muddle them by modifying "electromagnetic radiation" to "electromagnetic level of light."  This term has no discernable meaning to a POSITA.  (Brown Decl. at ¶ 35.)

- 3 -

Further, Samsung's construction injects ambiguity where none exists.  Samsung's construction does not specify when an object would be considered "nearby" or when it would not.  It is also unclear if Samsung's "nearby object" is different from the "object" already recited in the claim.  (*Id*. at ¶ 37.)  Samsung's proposed construction provides a new antecedent "a" to introduce its proposed "nearby object," which means Samsung's "nearby object" is apparently different than the "object" already claimed.  Where a party's proposed construction creates ambiguity, the construction should be rejected.  *See Victor Co. of Japan, Inc. v. Intervideo, Inc.*, No. A-08-CA-041-SS, 2009 WL 10670040, at *2 (W.D. Tex. July 27, 2009) ("A Court may refuse to construe a commonly understood term if the proposed construction would create ambiguity or confuse the jury.") (citation omitted).  Samsung failed to provide meaningful clarification when asked about these ambiguities during the parties' meet and confer.  In particular, Samsung refused to clarify its construction in the context of different ambient light conditions or when multiple objects are present (e.g. a mobile phone on a desk, in a pocket, etc.).

Samsung's proposed construction for "radiation at [a]/[the]/[said] baseline level" fails to provide clarity, introduces ambiguity, raises more questions than answers, and contradicts its own positions before the PTO.  (Brown Decl. at ¶¶ 35-38.)  It should be rejected.

**(2)    *No construction is necessary because ordinary words are used pursuant to their ordinary meanings.***

A disputed claim term should be construed in light of its "ordinary and customary meaning," which is "the ordinary meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips v. AWH Corp*., 415 F.3d 1303, 1313 (Fed. Cir. 2005).  The ordinary meaning of a disputed term may well be readily apparent, and claim construction can require "little more than the application of the widely accepted meaning of commonly understood words."  *Id*. at 1314.  "[A] district court is not obligated to construe

terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

Because a POSITA at the time of the invention would have understood the term "radiation at a baseline level," this term does not need construction as it consists of ordinary words being used in their ordinary senses and is thus readily understandable by a jury. For example, "baseline level" may be understood by a POSITA as an initial or control level of radiation. (Brown Decl. at ¶¶ 34, 38.) And while the claims "must be read in view of the specification, of which they are a part," nothing in the specification of the asserted patents alters the plain and ordinary meaning of the term. *See Phillips*, 415 F.3d at 1315. The Court should give the term its plain and ordinary meaning.

## B.   "propinquity" terms

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "when the [at least one] object has at least a predetermined degree of propinquity to"[2] **('675 pat., claims 1, 13; '850 pat., claims 15, 31; '093 pat., claims 1, 44)** | propinquity means "proximity," and plain and ordinary meaning for the remaining language | "when the [at least one] object is within a predetermined proximity to and when the object is touching" |
| "configured to illuminate at least one object having at least a predetermined degree of propinquity to"[3] **('170 pat., claim 2)** | propinquity means "proximity," and plain and ordinary meaning for the remaining language | "configured to illuminate the at least one object when the object is within a predetermined proximity to and when the object is touching" |
| "propinquity" **('675 pat., claims 1, 13; '850 pat., claims 15, 31; '170 pat., claims 1, 2; '093 pat., claims 1, 44)** | "proximity" | This term must be understood in the context of the larger phrases above. See proposed constructions above. |

---

[2]In its opening brief, Samsung modified this term as follows:  "when the [at least one] object has at least a predetermined degree of propinquity to the [at least one] pixel array."  As a result, Power2B has revised its proposed construction to remove reference to "pixel array."

[3]In its opening brief, Samsung modified this term as follows:  "configured to illuminate at least one object having at least a predetermined degree of propinquity to the at least one interactive surface element."

Samsung defines "propinquity" as "proximity" in its own proposed construction, but disagrees with Power2B's construction that "propinquity" means "proximity."  Likewise before the PTO, Samsung interprets "propinquity" to mean "nearness" or "proximity," without any "touch" requirement.  (*See* Ex. 2 at P2BGES-0007148 ("A POSITA would have understood that determining the presence of the object when it is *near, but not touching*, the pixel array detects its location within a predetermined degree of propinquity.") (emphasis added).)  Samsung now attempts to significantly narrow the meaning of this term to import extraneous limitations.  Common sense (as demonstrated by Samsung's own interpretation before the PTO) dictates that the term "propinquity" means "proximity."

**(1)** *Samsung's proposed construction imports an extraneous limitation that is unsupported by the intrinsic evidence.*

Samsung contends that "propinquity" as used in the claims, requires "touching" such that the claim limitations relating to sensing a position of an object must be limited to only instances where the object is both in proximity to *and* touching the device.  In effect, Samsung seeks to rewrite the claims to import a limitation that is wholly unsupported by the surrounding claim language, dependent claims, and specifications.  *See Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999) ("proper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation").

In proper context, claim 1 of the '675 patent provides, in part:

the at least one pixel array being configured to sense at least a position of the at least one object with respect to the at least one pixel array when the at least one object has at least a predetermined *degree of propinquity* to the at least one pixel array.

Inserting Samsung's litigation-inspired construction into the claim results in the following claim limitation:

the at least one pixel array being configured to sense at least a position of the at least one object with respect to the at least one pixel array when the at least one object ~~has at least~~ is within a predetermined ~~degree of propinquity~~ proximity to and when the object is touching the at least one pixel array.

Samsung's construction adds an entirely new requirement that would limit position sensing to *only* instances where the object is (1) in proximity to; *and also* (2) touching the pixel array. Nowhere do the relevant independent claims recite the word "touch" or "touching." Nowhere do the relevant independent claims limit position sensing to instances where the object is "touching" the device. (Brown Decl. at ¶¶ 44, 47); *see also Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005) (rejecting construction because it had no support in the claims, written description, prosecution history, or technical dictionary).

Samsung argues the scope of dependent claim 4 of the '675 patent supports its proposed "proximity" and "touching" construction. (Opening Br. at 8.) Samsung scrambles the scope of the dependent claims. In proper context:

- claim 1 recites "[a] pixel array being configured to sense at least a position of the at least one object with respect to . . . pixel array";
- claim 3 depends from claim 1 and introduces a new "utilization circuitry" element; and
- claim 4 depends from claim 3 and elaborates, "the utilization circuitry is further configured to distinguish at least between positions of the . . . object touching or not touching the position sensing assembly."

Contrary to Samsung's assertion, claim 4 is not broader than claim 1 because claim 1 does not recite "utilization circuitry," and claim 1 does not require "distinguish[ing] between positions" of the object. (*See* '675 pat., claims 1, 4); *see also Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1371 (Fed. Cir. 2017) ("The doctrine of claim differentiation, however, presumes that dependent claims are 'of narrower scope than the independent claims from which they depend.'"). Nothing in the dependent claims identified by Samsung, nor in any other dependent claims, mandate that position sensing performed by the "pixel array" in claim 1

- 7 -

must occur *only* when the object is both in proximity to and touching the device.  (Brown Decl. at ¶¶ 44, 47.)

Similarly, there is nothing in the specifications of the '675 patent, '850 patent, '170 patent, or '093 patent that warrants limiting the claim scope to require position sensing only when an object is in proximity to and touching the device.  (*Id*. at ¶¶ 40-43, 46-48.)  Samsung points to a handful of instances where the specification of the '675 patent references touching and propinquity together:  "touching *or* located in propinquity."  (*See* Opening Br. at 9 (emphasis added).)  In this context, Samsung interprets "or" to be an equivalent or substitute, not an alternative.  Samsung's interpretation of "touching *or* located in propinquity" is contrary to the teachings in the specifications which show that "touch" and "propinquity" are not synonyms, but rather have different meanings.

For example, the '675 patent repeatedly uses "propinquity" to describe and depict an object positioned at a distance or proximity from the device without touching.  (*See* '675 pat. at 62:11-13 ("In FIG. 20A, the user's fingers are located in propinquity to interactive surface element 1508, at a height H therefrom."), 62:48-50 ("In FIG. 21A, the user's fingers are located in propinquity to interactive surface element 1508, at respective heights H1 and H2 therefrom."), 64:48-53 ("FIG. 23B shows finger 1606 located at a first distance D1 from the second region of the interactive surface element 1601 overlying keyboard 1604, such that the propinquity responsive input functionality senses finger 1606 in propinquity to keyboard 1604."), 66:39-42 ("FIG. 24B shows finger 1710 located at a second location in the second region of the interactive surface element 1704 overlying slider 1708, such that the propinquity responsive input functionality senses the location of finger 1710 in propinquity to slider 1708."), 67:65-68:2 ("FIG. 25B shows finger 1806 located at a second location in the second region of the interactive

surface element 1802 overlying slider 1805, such that the propinquity responsive input functionality senses the location of finger 1806 in propinquity to slider 1805."), 69:6-12 ("In the arrangement shown in FIG. 26A, the functionality of the second region governs the ringing volume of the communicator 1900 and the position of the hand 1906 shown in FIG. 26A and its degree of propinquity to the keyboard zone 1904 causes a reduction in the ringing volume."); *see also* FIGS. 20A, 21A, 23B, 24B, 25B, 26A.)

Where the '675 patent intends to describe "touch," it uses the word "touch" to describe and depict an object in contact with the device.  (*See* '675 pat. at 62:13-14 ("[I]n FIG. 20B, the user's fingers touch interactive surface element 1508"), 62:51-52 ("[I]n FIG. 21B, the user's fingers touch interactive surface element 1508."), 65:24-29 ("In accordance with a preferred embodiment of the present invention, as shown in FIG. 23E, when the finger 1606 touches the second region of the interactive surface element 1601 overlying button 1611 of keyboard 1604, a third function is actuated, such as the appearance of a number on display screen 1602, as indicated by reference numeral 1616."), *see also* FIGS. 20B, 21B, 23E.)

And when the specification describes both propinquity and touch, it uses "propinquity" in describing an object in proximity to the device and "touch" in describing an object in contact with the device.  (*See* '675 pat. at 63:18-22 ("As seen in FIG. 22, the user's fingers are located at a distance from one another.  One of the user's fingers is located in propinquity to interactive surface element 1508, at a height H therefrom, and one of the user's fingers touches interactive surface element 1508."); *see also* FIG. 22.)

| Excerpt of FIG. 21A Depicting "Propinquity" | Excerpt of FIG. 21B Depicting "Touch" | Excerpt of FIG. 22 Depicting Both "Propinquity" and "Touch" |
|---|---|---|



Samsung points to a single instance in the specification of the '850 patent where it contends that "touch" was expressly carved out of "propinquity," thereby allegedly evidencing that "propinquity" must, by default, encompass touching. (*See* Opening Br. at 9-10.) If, as Samsung suggests, "propinquity" must include "touch" by default, then there would presumably be no need to utilize the word "touch" throughout the specifications when describing instances where the object is in contact with the device. As shown above, however, the specifications repeatedly use (1) "propinquity" to describe an object in proximity to a device; and (2) "touch" to describe an object in contact with a device. Accordingly, Samsung's argument that "propinquity" must include "touch" contradicts the intrinsic evidence, as well as Samsung's own statements and expert opinions before the PTO.

**(2)**     ***The proper construction for "propinquity" is "proximity" and plain and ordinary meaning for the remainder of the terms.***

While Samsung substitutes "proximity" for "propinquity" in its own proposed constructions, it contends that Power2B's construction (which proposes "proximity" for "propinquity") ignores context. In support, Samsung cites to claims of an unrelated patent, the '931 patent, arguing that the use of "proximity" in the claims of the '931 patent implies a different scope. But the '931 patent is irrelevant in determining the meaning of "propinquity" because it is not related to the '675 patent, the '850 patent, the '170 patent, or the '093 patent. *See Goldenberg v. Cytogen*, 373 F.3d 1158, 1167 (Fed.Cir.2004) (holding that unrelated patents cannot be used to construe claims of patent at issue); *Texas Digital v. Telegenix, Inc.*, 308 F.3d

1193, 1211 (Fed.Cir.2002) (finding that unrelated patents "shed no light" on claims of patent-in-suit).

As explained above, Samsung's basis for narrowing claim scope is unsupported and in direct contradiction to the intrinsic evidence.  The intrinsic evidence demonstrates that "touch" is not, by default, included in "propinquity."  Rather, "touch" and "propinquity" are intended to describe different relationships between an object and the device.  In addition, the independent claims use the term "propinquity," not "touch."  *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007) ("The intrinsic evidence of the specification therefore suggests that the patentees knew how to restrict their claim coverage . . . as they did in discussing their preferred embodiment.  Instead, they chose a different term that implies a broader scope.").  More particularly, the claims use "propinquity" to describe a spatial relationship between the "object" and the device or screen.  (Brown Decl. at ¶ 44.)

As used in the specification and the claims, "propinquity" means "proximity," or in other words, an object's proximity or nearness to the device or screen.  (*See* '675 pat. at 62:11-13, 62:48-50, 64:48-53, 66:39-42, 67:65-68:2, 69:6-12 & FIGS. 20A, 21A, 23B, 24B, 25B, 26A; *see also* Ex. 12 at P2BGES-0007821 (defining "propinquity" as "nearness in place or time: Proximity"); Brown Decl. at ¶¶ 39, 44.)  Moreover, Samsung fails to cite to any evidence of "a clear and unmistakable disavowal of scope during prosecution" that would warrant limiting "propinquity" to instances of both proximity and touch.  *See Purdue Pharma L.P. v. Endo Pharmaceuticals. Inc.*, 438 F.3d 1123, 1136 (Fed.Cir.2006).

"Propinquity" should be construed according to Power2B's proposed construction.  The remainder of the "propinquity" terms should be construed in light of their "ordinary and

customary meaning," as they consist of ordinary words being used in their ordinary senses and, thus, are readily understandable by a jury.  (Brown Decl. at ¶¶ 39, 49.)

## C.    "pixel array"

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "pixel array" ('675 pat., claims 1, 13; '850 pat., claims 15, 21, 26, 30, 31; '093 pat., claims 1, 12, 44; '931 pat., claims 1, 13, 21) | "arrangement of semiconductor components" | "arrangement of two or more picture elements" |

The dispute for "pixel array" turns on whether the term should be construed in light of the intrinsic evidence, versus solely based on Samsung's limited extrinsic evidence.  Before considering extrinsic evidence to construe a disputed claim, courts must first examine the intrinsic evidence.  *Phillips*, 415 F.3d at 1317-19; *see also Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("extrinsic sources like expert testimony cannot overcome more persuasive intrinsic evidence").  Samsung argues that its construction is based on the "long established meaning of 'pixel,'" but fails to acknowledge that its handpicked definitions advance a narrow definition that ignores the reality that "pixel" has also historically been used in the context of input/sensing functionality.  (Brown Decl. at ¶ 64.)  As one common example, digital cameras typically describe the number of "pixels" in the camera's sensor in terms of "megapixels."  (Brown Decl. at ¶ 64.)  In this context, "pixels" refer to sensing or detecting elements, not "picture elements."  The intrinsic evidence also demonstrates that "pixel array" is not limited to solely output display-related functionality, but rather also includes input sensing capabilities.

### (1)    *The intrinsic evidence demonstrates that "pixel array" includes input sensing capabilities.*

Samsung cites to a handful of excerpts that describe a "pixel array" as providing display functionality, but conveniently ignores and fails to address other aspects of the disclosure that

associate the "pixel array" with input sensing.  (*See* Opening Br. at 13-14.)  A full consideration of the specifications reveals that "pixel array" is not limited to "picture elements."  (Brown Decl. at ¶¶ 51, 52 & 60.)

For example, the specifications of the '675 patent, the '850 patent, the '093 patent, and the '931 patent each contemplate that the "pixel array" can have sensing capabilities used to sense a position of an object.  (*See* '675 pat. at 4:55-58 ("at least one pixel array including a plurality of detector elements detecting electromagnetic radiation at a baseline level, the at least one pixel array being operative to sense a position of an object with respect to the surface"), 4:62-64 ("the at least one pixel array being operative to sense at least a position of at least one object with respect to the at least one pixel array"), 5:14-18 ("preferably, the at least one pixel array senses light reflected from the at least one object"; "additionally, the at least one pixel array senses ambient light reflected from the at least one object"; "alternatively or additionally, the at least one pixel array senses IR light reflected from the at least one object");'850 pat. at 4:46-50, 4:53-56, 5:10-14; '093 patent at 4:55-59, 4:63-65, 5:20-25, 6:12-18; '931 pat. at 1:41-52 ("a second pixel array operative to sense at least a position of an object with respect to the first pixel array . . . the second pixel array includes a plurality of detector elements"), 4:20-23, 4:53-55.

The claims of the '675 patent, the '850 patent, and the '093 patent similarly recite a "pixel array" that senses a position of an object.  (*See* '675 pat. at claim 1 ("at least one pixel array comprising a plurality of detector elements configured to detect electromagnetic radiation at a baseline level . . . the at least one pixel array being configured to sense at least a position of the at least one object with respect to the at least one pixel array"), claim 2 ("wherein the at least one pixel array is configured to sense light reflected from the at least one object"); '850 pat. at

claim 31 ("at least one pixel array including a plurality of detector elements configured to detect electromagnetic radiation at a baseline level . . . the at least one pixel array being configured to sense at least a position of at least one object with respect to the at least one pixel array"), claim 32 ("wherein the at least one pixel array is configured to sense light reflected from the at least one object"); '093 pat. at claim 63 ("at least one pixel array including a plurality of detector elements detecting electromagnetic radiation at a baseline level . . . said at least one pixel array being operative to sense at least a position of at least one object with respect to said at least one pixel array"), claim 68 ("wherein said at least one pixel array senses light reflected from said at least one object"), claim 69 ("wherein said at least one pixel array senses ambient light reflected from said at least one object"), claim 70 ("wherein said at least one pixel array senses IR light reflected from said at least one object").)

Samsung's proposed construction to limit "pixel" to "picture elements" in a display is irreconcilable in the context of the plain claim language listed above.  For example, limiting "pixel" to "picture elements," as Samsung suggests, would render the above noted claims irreconcilable.  Claim 1 of the '675 patent would recite, in part:

> at least one <u>arrangement of two or more picture elements</u> comprising a plurality of detector elements configured to detect electromagnetic radiation at a baseline level.

According to Samsung, picture elements cannot detect.  As such, claim 1 would be incapable of ever being satisfied.  Such a result cannot be correct.  *See In re Elonex Phase II Power Mgmt. Litig.*, No. C.A. 01-082 GMS, 2002 WL 34487165, at *1 (D. Del. Oct. 3, 2002) (rejecting construction where effect "would be irreconcilable with the reality of the patent claims").

Instead, the proper approach is to consider the overwhelming intrinsic evidence that demonstrates that "pixel array" is not limited to solely output display-related functionality, but rather also includes input sensing capabilities.  (Brown Decl. at ¶ 61.)  Relying on extrinsic

evidence to contradict the intrinsic evidence is improper.  *See Intel Corp. v. VIA Technologies.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) ("When an analysis of intrinsic evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained.").

**(2)    *Samsung fails to prove a clear disavowal of claim scope.***

Samsung further cites to the prosecution history of the '931 patent and argues that an amendment to the claims demonstrates the "pixel array" is distinct from "sensors or detectors" in every asserted patent.  (*See* Opening Br. at 15-16.)  For "pixel array" to be so limited, there must be "a clear and unmistakable disavowal of scope during prosecution."  *Purdue Pharma L.P.*, 438 F.3d at 1136.  An alleged disavowal of claim scope will not limit the scope of a claim if the disavowal is ambiguous.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed.Cir.2003).

In proper context, the applicants' arguments for the '931 patent focused on a specific manner of operation different than the prior art:  "Omura teaches a complicated system for *manipulating light into parallel rays* relative to the writing surface, and detecting only a specific portion of the light by image pickup devices."  (Doc. 38-11 at P2BGES-0001505 (emphasis added).)  In contrasting the cited art to the then-pending '931 patent claims, applicants argued the pending claims did not require a similar manipulation of light into parallel lines:

> In contrast to Omura's **coordinate-position inputting/detecting device, independent claim 2 now recites a fundamentally different principle of operation** -- e.g., "a position sensing array positioned proximate to at least one edge of the display area, the position sensing array is configured to *receive, through at least one layer of the display panel, at least a portion of light reflected by an object in proximity to the device* and generate an output signal that represents an amount of the portion of light." (*Emphasis* added.) **That is, while Omura specifically teaches (and requires) a complex manipulation of light to produce parallel lines associated with a "thickness" (relative to the writing surface), the position sensing array of independent claim 2 receives, *"through at least one layer of the display panel, at least a portion of light reflected by an object in proximity to the device."***

(*Id.*) Nowhere did the applicants delineate the cited art based on the "pixel array" being limited solely to "picture elements."

In addition, as demonstrated above, the specification of the '931 patent contemplates the "pixel array" may provide visual output and/or sense a position of an object. (*See* '931 pat. at 1:41-52 ("a second *pixel array operative to sense at least a position of an object* with respect to the first pixel array . . . the second *pixel array includes a plurality of detector elements*") (emphasis added); *see also* 4:20-23, 4:53-55.) As such, the prosecution history excerpt cited by Samsung cannot be a clear and unambiguous disavowal of the other embodiments disclosed in the '931 patent. *See Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*, 526 F. App'x 927, 934 (Fed. Cir. 2013) (rejecting disavowal argument where the supposed disavowal sentence described one embodiment, out of many, and therefore was not a clear and unambiguous disavowal of the other embodiments).

**(3)    *The proper construction of "pixel array" is "arrangement of semiconductor components."***

As demonstrated above, the specifications describe "pixel arrays" in different contexts and as providing different functions—e.g. output display-related functionality and/or input

- 16 -

sensing functionality.  (*See* '675 pat. at 4:55-58, 4:62-64, 5:14-18; '850 pat. at 4:46-50, 4:53-56, 5:10-14; '093 pat. at 4:55-59, 4:63-65, 5:20-25, 6:12-18; '931 pat. at 1:41-52, 4:20-23, 4:53-55.)

The specifications also disclose that the position sensing or detector elements "may be formed of one or more CCD or CMOS arrays, or may be created by photolithography."  (*See id*. at 12:32-50, 16:50-59, 18:1-22, 52:21-37.)  The specifications also disclose that the display elements may "includ[e] LCD or OLED elements.  (*See id*. at 12:32-50, 16:60-17:4, 18:1-22, 52:21-37.)  Each of these elements are semiconductor components.  (*See* Ex. 12 at P2BGES-0007821 (defining "charge-coupled device" as "a semiconductor device used esp. as an optical sensor"), P2BGES-0007822 (defining "LED" as "a semiconductor diode that emits light when a voltage is applied to it and is used esp. for electronic displays"); *see also* Brown Decl. at ¶¶ 61-62.)  As used in the specification and the claims, the term "pixel array" means components that provide display and/or sensing functionality, and such components are semiconductors.  Power2B's proposed construction of an "arrangement of semiconductor components" is therefore the correct construction.  (Brown Decl. at ¶¶ 61-62.)

**D.**    **"the at least one pixel array being configured to sense a position of at least one object with respect to a surface thereof"**

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "the at least one pixel array being configured to sense a position of at least one object with respect to a surface thereof" (**'675 pat., claims 1, 13**) | not indefinite<br><br>"the at least one pixel array being configured to sense a position of an object with respect to a surface of the pixel array," where pixel array means "arrangement of semiconductor components" | indefinite |

Samsung contends this claim term is indefinite because of an allegedly "unresolvable ambiguity."  Particularly, Samsung takes issue with "a surface thereof," contending there could be three different objects the "surface thereof" could be referencing.  Samsung must show the

term is indefinite by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Samsung has not, and cannot, make such a showing.

First, before the PTO, Samsung's expert was able to discern the scope of claims 1 and 13 with reasonable certainty by associating the "surface thereof" with the device. (*See* Ex. 7 at P2BGES-0007190-91 (interpreting this claim term as "determin[ing] the location of the sensed object *with respect to the device*") (emphasis added).) Second, the specification and claims provide adequate information to inform, with reasonable certainty, those skilled in the art about the scope of the invention. A plain reading of the claims shows that "a surface thereof" is intended to reference the "pixel array." (Brown Decl. at ¶¶ 65-70.) Otherwise, if as Samsung suggests, the "surface thereof" references the "object," the claim would make no sense, as it would read: "the at least one pixel array being configured to sense a position of at least one object with respect to a surface ~~thereof~~ of the object." Nowhere in the specifications is position sensing of an object with respect to the object described. (Brown Decl. at ¶ 66.) Rather, the specifications describe various embodiments intended to identify a position of an object with respect to a device or a component of the device. (*See* '675 pat. at 3:38-41 ("preferably, at least one detector in the arrangement detects electromagnetic radiation at a baseline level and senses the position of the object with respect to the interactive surface element"), 4:62-64 ("the at least one pixel array being operative to sense at least a position of at least one object with respect to the at least one pixel array "); *see also* Brown Decl. at ¶¶ 65, 67.) As such, Samsung's contention that the "surface thereof" could be the "object" is without intrinsic support.

Samsung also posits that "a surface thereof" could be associated with the "interactive surface element." First, Samsung fails to acknowledge that "a surface" associated with the "interactive surface element" is already recited in the claim such that when "a surface thereof" is

later introduced in the context of describing the "pixel array," the "surface thereof" should

naturally be associated with the "pixel array" and not the "interactive surface element":

> **1**. A position sensing assembly comprising:
> an interactive surface element defining a surface;
> at least one pixel array comprising a plurality of detector
> elements configured to detect electromagnetic radiation
> at a baseline level, the at least one pixel array being
> configured to sense a position of at least one object with
> respect to a surface thereof according to locations of
> ones of the plurality of detector elements at which at

Moreover, confirmation that "a surface thereof" refers to the "pixel array" is provided by

language appearing further below in the same claim limitation.  Specifically, in referencing the

claimed position sensing, the claim recites "sense at least a position of the at least one object

with respect to the *at least one pixel array*":

> **1**. A position sensing assembly comprising:
> an interactive surface element defining a surface;
> at least one pixel array comprising a plurality of detector
> elements configured to detect electromagnetic radiation
> at a baseline level, the at least one pixel array being
> configured to sense a position of at least one object with
> respect to a surface thereof according to locations of
> ones of the plurality of detector elements at which at
> least one of an amount of radiation detected and a change
> in the amount of radiation detected exceeds a predeter-
> mined threshold, the at least one pixel array being con-
> figured to sense at least a position of the at least one
> object with respect to the at least one pixel array when
> the at least one object has at least a predetermined degree
> of propinquity to the at least one pixel array;

The question on indefiniteness is whether the claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*,

572 U.S. 898, 908 (2014).  Here, the claim term, when viewed in light of the entire claim, as well

as the specification, does not result in a POSITA contemplating an unbounded degree of possibilities.  (Brown Decl. at ¶¶ 65-68.)

And while Samsung contends the term is susceptible to multiple meanings, these meanings include those supported by the intrinsic evidence, thereby demonstrating to a POSITA that "a surface thereof" is used in connection with determining a relative position of the object with respect to a surface of the position sensing assembly.  (*Id.* at ¶¶ 69-70); *see also Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1353 (Fed. Cir. 2010) ("[m]erely claiming broadly" does not "prevent the public from understanding the scope of the patent"); *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005) ("breadth is not indefiniteness"); *Cal. Inst. of Tech. v. Hughes Communications Inc.*, 35 F. Supp. 3d 1176, 1194 (C.D. Cal. 2014) (post-Nautilus holding that just because "a term covers broad possibilities does not render it indefinite, as long as a person of ordinary skill can identify the outer boundaries, expansive though they may be").

The claim term is not indefinite because, as demonstrated above (including by Samsung itself in connection with its IPR petition), claims 1 and 13 do inform, with reasonable certainty, those skilled in the art about the scope of the invention.  (Brown Decl. at ¶¶ 65-68.)

**E.**     **"circuitry coupled to and receiving an output from the at least one pixel array receiving"**

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "circuitry coupled to and receiving an output from the at least one pixel array receiving" (**'675 pat., claims 1, 13**) | not indefinite<br><br>"circuitry coupled to and receiving an output from the at least one pixel array," where the term pixel array means "arrangement of semiconductor components" | indefinite |

Samsung feigns confusion where common sense dictates the second "receiving" appearing in this term is an obvious typographical error.  A district court can correct a patent

only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification; and (2) the prosecution history does not suggest a different interpretation of the claims. *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003).

Indeed, as confirmed by Samsung's own expert before the PTO, correcting this typographical error by removing the second "receiving" makes the claim limitation easy to understand and is not subject to reasonable debate based upon a consideration of the entire claim and the specification. More particularly, in interpreting this term, Samsung's expert removed the errant "receiving" in analyzing the prior art: "Yamaguchi discloses circuitry coupled to and receiving an output from the at least one pixel array." (*See* Ex. 7 at P2BGES-0007229.)

Claims 1 and 13 recite, in part:

circuitry coupled to and receiving an output from the at least one pixel array *receiving*, the circuitry being configured to provide a non-imagewise input representing the position of the at least one object relative to the at least one pixel array.

A plain reading of the claim limitation demonstrates there is a typographical error. (Brown Decl. at ¶ 71.) Correction by removing the second "receiving" makes the claim limitation easy to understand and is not subject to reasonable debate based upon a consideration of the entire claim and the specification. More particularly, in the summary of the invention, the specification includes language parroting claims 1 and 13 that *omits* the typographical error:

There is also provided in accordance with another preferred embodiment of the present invention a position sensing assembly including an interactive surface element defining a surface, at least one pixel array including a plurality of detector elements detecting electromagnetic radiation at a baseline level, the at least one pixel array being operative to sense a position of an object with respect to the surface according to locations of ones of the plurality of detector elements at which at least one of the amount of radiation detected and the change in the amount of radiation detected exceed a predetermined threshold, the at least one pixel array being operative to sense at least a position of at least one object with respect to the at least one pixel array when the at least one object has at least a

predetermined degree of propinquity to the at least one pixel array and *circuitry receiving an output from the at least one pixel array* and providing a non-imagewise input representing the position of the at least one object relative to the at least one pixel array to utilization circuitry.

('675 pat. at 4:52-5:2 (emphasis added).)

As such, the correction of the errant "receiving" is not subject to reasonable debate based on consideration of the claim language and the specification. (Brown Decl. at ¶ 71); *see also Jonathan Mfg. Corp. v. Cent. Indus. Supply Co.*, No. SA CV04-1365DOC(SHX), 2005 WL 6300784, at *9 (C.D. Cal. Oct. 26, 2005) (removing an errant word and reasoning that the "correction makes the phrase comprehensible and is not subject to reasonable debate based upon a consideration of the entire claim and the specification."); *TV/Com Int'l, Inc. v. Mediaone of Greater Fla., Inc.*, No. 3:00-CV-1045-J-21HTS, 2001 WL 36169709, at *31 (M.D. Fla. Aug. 3, 2001) (correcting multiple grammatical errors by reasoning that a person of ordinary skill in the art reading the claim would understand there was "nothing ambiguous about this typographical error" and further noting the specification supported correction).

Moreover, nothing in the prosecution history suggests a different interpretation of the claims, as there were no arguments made relying on the typographical error to overcome prior art and there was no mention of the typographical error as a reason for allowing the application. (*See* Ex. 13 at P2BGES-0003290-3407; *see also* Brown Decl. at ¶ 72.)

The claim term is not indefinite because, as demonstrated above (including by Samsung itself in connection with its IPR petition), claims 1 and 13 do inform, with reasonable certainty, those skilled in the art about the scope of the invention. (Brown Decl. at ¶ 74.)

F.      "impingement" terms

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "each of the at least one input sensor being configured to provide an output indicative of an impingement of an electromagnetic radiation spot on at least one of the at least one first region and the at least one second region of the at least one interactive surface element"<br>('170 pat., claim 1) | impingement of an electromagnetic radiation spot means "an area of reflected or projected radiation," and plain and ordinary meaning for the remaining language | "each of the at least one input sensor being configured to provide an output distinguishing impingement of an object on electromagnetic radiation at a spot on either the at least one first region or the at least one second region of the at least one interactive surface element" |
| "impingement of an electromagnetic radiation spot"<br>('170 pat., claim 1) | "an area of reflected or projected radiation" | This term must be understood in the context of the larger phrase above. See proposed construction above. |

Samsung's construction limits the "impingement" terms by requiring an object to impinge on electromagnetic radiation, which would exclude certain embodiments. The plain language of the claim, however, makes it clear that "impingement" involves the electromagnetic radiation and the "interactive surface element." The "object" is not recited in this claim element and hence, cannot impinge on anything. Samsung's proposed construction is contrary to the express claim language and reads out disclosed embodiments.

**(1)     *Samsung's proposed construction impermissibly narrows the term.***

Inserting Samsung's proposed construction into claim 1 results in material changes including: (1) revising the sensor output from requiring an indication of an impingement on at least one region of a surface, to *distinguishing* impingement of an object on electromagnetic radiation *at a spot on* either the first region or the second region; and (2) altering the meaning of "impingement" from an interaction between an "electromagnetic radiation spot" and the "interactive surface element," to an interaction between an *object* and *electromagnetic radiation*:

> each of the at least one input sensor being configured to provide an output ~~indicative of an~~ distinguishing impingement of an <u>object on</u> electromagnetic radiation <u>at a</u> spot on ~~at least one of~~ either the at least one first region ~~and~~ or the at least one second region of the at least one interactive surface element.

Samsung explains that the claims allegedly recite a "'specific interaction spot' on the screen [that] is determined by sensing an object impinging on electromagnetic radiation associated with either the first or second region."  (*See* Opening Br. at 24-25.)  The intrinsic evidence, however, compels a complete rejection of Samsung's efforts to rewrite and narrow claim 1.

Contrary to Samsung's characterization, there are various embodiments for sensing a position of an object (e.g. finger, stylus, or remote control) using "impingement of an electromagnetic radiation spot" on a surface (e.g. screen).  Certain embodiments disclose use of an electromagnetic radiation emitting object, such as a stylus or remote.  (*See* '170 pat. at FIGS. 1C, 1F, 2B, 3B; *see also* 14:21-28 ("A user, holding a light beam emitting remote control device 292, may interact with one or more of the large screen display 270, mobile device 272, interactive interface assembly 274 and the docking cradle 288 by directing a beam of light in a direction which causes impingement of a spot of light on any one or more of large screen display 270, mobile device 272 and linear arrays 278, 284 and 290 of interactive interface assembly 274.").  In these examples, the "object" itself does not "impinge on electromagnetic radiation" as Samsung proposes, because the object is the emitter of electromagnetic radiation.  (*See* Brown Decl. at ¶ 76.)

Annotated Excerpt of FIG. 1F of the '170 Pat.

Other embodiments disclose use of electromagnetic radiation reflected by an object, such as a finger.  (*See* '170 pat. at 15:3-6 ("Light, preferably including light in the IR band, reflected by the user's finger, propagates through at least one cover layer 308 and is detected by one or more of detector elements 302.").)  In some instances, the source of reflected light may be external to the device as shown in FIG. 19.  (*See id.* at 15:20-21.)  In such cases, it is unclear how "impingement of an object on electromagnetic radiation" would occur, as the electromagnetic radiation could be ambient light, for example.  The specification of the '170 patent supports this possibility, disclosing "the at least one pixel array senses ambient light reflected from the at least one object."  (*Id.* at 5:16-18.)  Requiring the impingement of an object on ambient light would make no sense to a POSITA.  (Brown Decl. at ¶ 77.)

79809041.2

Excerpt of FIG. 19 of the '170 Pat.



Samsung's proposed construction would foreclose embodiments where an object itself does not "impinge" on "electromagnetic radiation."  A construction that forecloses embodiments are disfavored.  *See SynQor, Inc. v. Artesyn Technologies., Inc.*, 709 F.3d 1365, 1378 (Fed. Cir. 2013) ("A claim construction that excludes the preferred embodiment is rarely, if ever, correct.").

In addition, the intrinsic evidence demonstrates that "impingement of an electromagnetic radiation spot," as used in claim 1, refers to an interaction between electromagnetic radiation and a surface (e.g. screen), not an interaction between an object and electromagnetic radiation, as Samsung proposes.  For example, the specification explains:

> The array detection output is constructed on the basis of outputs of the individual detector in the array, taking into account the relative positions of the individual detectors. One or more array detection outputs represent the shape, size, location and/or intensity of *a light spot defined by the impingement of light on the interactive surface or a layer thereof.*

('170 pat. at 69:33-39 (emphasis added).)

The specification also describes "impingement" in the context of an interaction point or area with a surface (e.g. screen, button, slider, etc.).  (*See* '170 pat, at 51:66-3 ("[i]n the

configuration shown in FIG. 18B, two-dimensional location determining circuitry (not shown) preferably calculates the two-dimensional position of the impingement point of the user's finger on or above interactive surface element 1228"), 57:26-30 ("[t]hese characteristics of the various components of the interactive assembly are employed by the two-dimensional location determining circuitry to calculate the two-dimensional position of the impingement point of the user's finger on the interactive surface element 1308 or above it"), 64:48-54 ("FIG. 23B shows finger 1606 located at a first distance D1 from the second region of the interactive surface element 1601 overlying keyboard 1604, such that the propinquity responsive input functionality senses finger 1606 in propinquity to keyboard 1604 and defines an impingement area 1609 that is generally centered on a first button 1611, even though it may also partially impinge on other buttons"), 67:65-68:5 ("FIG. 25B shows finger 1806 located at a second location in the second region of the interactive surface element 1802 overlying slider 1805, such that the propinquity responsive input functionality senses the location of finger 1806 in propinquity to slider 1805 and defines an impingement area 1810 that is generally centered on a location of the slider 1805, even though it may also partially impinge on other portions of the slider 1805").)

Moreover, claim 1 does not recite "impingement" in connection with the object and electromagnetic radiation. Rather, claim 1 recites "impingement" in connection with "an electromagnetic radiation spot" and regions of the "interactive surface element." Dependent claim 28 (which depends on claim 1) also reinforces the notion that "impingement" is intended to refer to an interaction with the "interactive surface element":

> 28. An interactive assembly according to claim 27, wherein the array detection output includes information corresponding to a location of an *impingement* point of the object *on the interactive surface element* coinciding with a viewing plane.

Samsung's proposed construction fundamentally changes the plain meaning of the claim and also creates ambiguity. It would be unclear to a POSITA what "distinguishing

impingement" means, as the claims and the specification do not use this term.  (Brown Decl. at ¶ 81.)  The specification of the '170 patent discloses distinguishing positions, distinguishing directions of motion, distinguishing between touching or hovering over a surface, distinguishing between degrees of propinquity, and distinguishing between reflective symmetries.  (*See* '170 pat. at 9:55-10:9, 50:9-35, 65:19-23, 71:25-48.)  There is no disclosure of what "distinguishing impingement" might mean.  It would also be unclear to a POSITA how an object can impinge "on electromagnetic radiation."  (Brown Decl. at ¶ 81.)  As demonstrated, Samsung's proposed construction conflicts with the intrinsic evidence, forecloses embodiments, improperly narrows claim 1, and introduces significant ambiguity into the claim.

**(2)** *Power2B's proposed construction is proper.*

Samsung contends Power2B's proposed construction eviscerates the claim because it would allegedly give no meaning to "interacting with first and second regions."  (*See* Opening Br. at 28.)  The reality is the limitations relating to the first and second regions remain undisturbed by Power2B's proposed construction:

> each of the at least one input sensor being configured to provide an output indicative of an ~~impingement of an electromagnetic radiation spot~~ <u>area of reflected or projected radiation</u> on at least one of the at least one first region and the at least one second region of the at least one interactive surface element.

And as explained above, the '170 patent discloses the object may emit or project electromagnetic radiation, hence Power2B's inclusion of "projected" in its construction.  (*See* '170 pat. at 14:21-28 & FIGS. 1C, 1F, 2B, 3B.)  Alternatively, the object may reflect electromagnetic radiation, hence Power2B's inclusion of "reflected" in its construction.  (*See id*. at 15:3-6 ("Light, preferably including light in the IR band, reflected by the user's finger, propagates through at least one cover layer 308 and is detected by one or more of detector elements 302.").)  As also shown above, in describing "impingement" of radiation onto a surface,

button, or other component, the '170 patent describes the resulting "spot" as an "area."  (*See id.* at 64:48-54 ("FIG. 23B shows finger 1606 located at a first distance D1 from the second region of the interactive surface element 1601 overlying keyboard 1604, such that the propinquity responsive input functionality senses finger 1606 in propinquity to keyboard 1604 and defines an impingement area 1609 that is generally centered on a first button 1611, even though it may also partially impinge on other buttons."); *see also id.* at 67:65-68:5.)



Annotated FIG. 23B of the '170 Pat.

Power2B's construction is thus supported by the intrinsic evidence and provides clarity to the meaning of "impingement of an electromagnetic radiation spot."  (Brown Decl. at ¶ 82.)  The remainder of the "impingement" terms should be construed in light of their "ordinary and customary meaning," as they consist of ordinary words being used in their ordinary senses and, thus, are readily understandable by a jury.  (*Id.* at ¶ 83.)

**4.    Conclusion**

For the above reasons, Power2B requests that its proposed constructions be adopted, that Samsung's proposed constructions be rejected, and any further relief to which it may be entitled.

Dated:  September 8, 2021                    Respectfully submitted,

                                            By:  */s/Jason A. Wietjes*
                                                 Jason A. Wietjes
                                                 Texas Bar No. 24042154
                                                 jwietjes@polsinelli.com

                                                 POLSINELLI PC
                                                 2950 N. Harwood St., Ste. 2100
                                                 Dallas, TX 75201
                                                 Telephone:  (214) 661-5519
                                                 Facsimile:  (214) 594-5540

                                                 Adam P. Daniels
                                                 California Bar No. 296466
                                                 adaniels@polsinelli.com
                                                 POLSINELLI LLP
                                                 2049 Century Park E., Ste. 2900
                                                 Los Angeles, CA 90067
                                                 Telephone:  (310) 556-6754
                                                 Facsimile:  (310) 556-1802

                                                 Rebecca B. Horton (*admitted pro hac vice*)
                                                 California Bar No. 308052
                                                 rhorton@polsinelli.com
                                                 POLSINELLI LLP
                                                 Three Embarcadero Center, Ste. 2400
                                                 San Francisco, CA
                                                 Telephone:  (415) 248-2112
                                                 Facsimile:  (415) 248-2101

                                                 Eric R. Garcia (*admitted pro hac vice*)
                                                 egarcia@polsinelli.com
                                                 California Bar No. 261101
                                                 POLSINELLI LLP
                                                 2049 Century Park E., Ste. 2900
                                                 Los Angeles, CA 90067
                                                 Telephone:  (310) 203-5304
                                                 Facsimile:  (213) 477-2006

                                                 *Counsel for Plaintiff Power2B, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed with the Clerk of the

Court on September 8, 2021 using the CM/ECF System, which will send notification of such

filing to all registered ECF users, including the attorneys of record, who have consented to

accept this notice of service.

By:  <u>*/s/Jason A. Wietjes*</u>
Jason A. Wietjes