# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| POWER2B, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> *Defendants*. | Case No. 6:20-cv-01183-ADA |

## DECLARATION OF DR. D. RICHARD BROWN III
## IN SUPPORT OF PLAINTIFF POWER2B INC.'S
## SUR-REPLY CLAIM CONSTRUCTION BRIEF

I, D. Richard Brown III, declare and state as follows:

1. I incorporate the opinions in my Opening Claim Construction Declaration. I respectfully submit this Declaration in further support of Power2B's Sur-Reply Claim Construction Brief. Plaintiff Power2B, Inc. ("Power2B") has retained me in connection with the above captioned litigation. My compensation is not dependent on the outcome of this litigation. I have personal knowledge of the matters set forth herein and could competently testify to these matters if called as a witness.

2. I have been asked to provide my opinion about how a person of ordinary skill in the art at the time of invention of U.S. Patent Nos. 8,610,675 ("the '675 Patent"), 8,624,850 ("the '850 Patent"), 9,317,170 ("the '170 Patent"), 9,569,093 ("the '093 Patent") and 10,156,931 ("the '931 Patent") (collectively the "Asserted Patents"), would understand the meaning of certain terms appearing in claims of the Asserted Patents, as well as whether certain terms identified by Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively

"Samsung") inform, with reasonable certainty, those skilled in the art about the scope of the invention.

3. In response I have provided my opinions and the bases thereof in the following sections of this Declaration.

## I. MATERIALS CONSIDERED

4. In addition to the materials considered in my Opening Claim Construction Declaration, I have also considered Samsung's Reply Claim Construction Brief and accompanying Exhibits.

## II. DISPUTED TERMS

### A. "propinquity" terms

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "when the [at least one] object has at least a predetermined degree of propinquity to" <br> **('675 Patent, claims 1, 13; '850 Patent, claims 15, 31; '093 Patent, claims 1, 44)** | *propinquity* means "proximity," and plain and ordinary meaning for the remaining language | "when the [at least one] object is within a predetermined proximity to and when the object is touching" |
| "configured to illuminate at least one object having at least a predetermined degree of propinquity to" <br> **('170 Patent, claim 2)** | *propinquity* means "proximity," and plain and ordinary meaning for the remaining language | "configured to illuminate the at least one object when the object is within a predetermined proximity to and when the object is touching" |
| "propinquity" <br> **('675 Patent, claims 1, 13; '850 Patent, claims 15, 31; '170 Patent, claims 1, 2; '093 Patent, claims 1, 44)** | "proximity" | This term must be understood in the context of the larger phrases above. See proposed constructions above. |

5. Samsung contends that "having at least a predetermined degree of propinquity" requires the capability of detecting a touch. For the reasons discussed below, I disagree.

- 2 -

6. The claims recite a system for sensing a position of an object disposed in proximity, or near, the device. The independent claims do not recite the word "touch" or "touching." While the specifications disclose some embodiments that may provide position sensing and/or touch sensing, other embodiments disclosed at FIGS. 1E & 1F disclose only position sensing. (*See* '675 Patent at FIGS. 1E & 1F.) As such, a POSITA would not narrowly interpret the independent claims to require touch sensing, as it would effectively read out those embodiments that only disclose position sensing.

7. The only claims of the '675 patent related to touch are dependent claim 4, which recites "distinguish[ing] at least between positions of the at least one object touching or not touching the position sensing assembly," and dependent claim 7, which recites "sens[ing] a distinction between instances when the at least one object touches and does not touch the position sensing assembly." I note that both of these dependent claims make no mention of "propinquity" or the claimed "detector elements" or "pixel array." The capability of "distinguishing" or "sensing a distinction" is achieved through *further configuration of the claimed "utilization circuitry."* As such, Samsung's suggestion that the claimed "detector elements" or "pixel array" must detect touch is an improper attempt in narrowing the scope of this term.

8. Samsung also contends that Power2B's position requires claim 4 of the '675 Patent to be able to do something claim 1 is not capable of doing: detecting a touch. Samsung is incorrect. A POSITA would understand claim 1 requires position sensing of nearby objects but does not require touch detection. Claim 4 does not contradict this understanding of claim 1. Rather, claim 4 narrows claim 1 by adding additional capabilities, *i.e.*, "distinguish[ing] at least between positions of the at least one object touching or not touching the position sensing assembly," through further configuration of the "utilization circuitry."

B.  "pixel array"

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "pixel array" ('675 Patent, claims 1, 13; '850 Patent, claims 15, 21, 26, 30, 31; '093 Patent, claims 1, 12, 44; '931 Patent, claims 1, 13, 21) | "arrangement of semiconductor components" | "arrangement of two or more picture elements" |

9.  In Samsung's Reply Claim Construction Brief, Samsung contends that picture elements "form elements of pictures." As an initial matter, I note that this definition of "picture elements" proposed by Samsung is circular in nature.

10. Samsung and Dr. Sarrafzadeh also contend that the prosecution history of the '931 patent expressly disclaims the ability of a "pixel array" to have sensing or detecting capabilities. I disagree that there was a clear and unmistakable disclaimer during the prosecution of the '931 patent. In the August 31, 2018 response to the USPTO's rejection of the pending claims, the applicants amended the claims and distinguished the cited art based on differences in the manner in which light was detected. Specifically, the applicants argued that Omura taught a complicated system for *manipulating light into parallel rays* relative to the writing surface, whereas the claimed invention received light "*through at least one layer of the display panel*." (*See* Doc. 38-11 at P2BGES-0001506.) Nowhere did the applicants delineate the cited art based on the "pixel array" being limited solely to "picture elements." As such, a POSITA would understand that the amendments made to overcome Omura had nothing to do with limiting the scope of "pixel array."

11. I also note that the specification of the '931 patent discloses "a first pixel array operative to provide a visually sensible output, a second pixel array operative to sense at least a position of an object with respect to the first pixel array." (*See* '931 Patent at 1: 40-43). A POSITA would understand that the '931 patent discloses pixel arrays with output/display capabilities and

pixel arrays with detecting/sensing capabilities in order to be *operative to sense at least a position of an object*.

12. Samsung's contention that the applicants expressly disclaimed the ability of a "pixel array" to have sensing or detecting capabilities is directly in conflict with the intrinsic evidence. Notably, Samsung also provides no specific quotes of any express disclaimer by the applicants in their arguments. Samsung only alludes to an express disclaimer through opaque arguments about one independent claim amended to overcome a rejection for being unpatentable over Omura for reasons unrelated to the scope of the claim term "pixel array." Nowhere in the Examiner's explanation of the claim rejection in light of Omura or the applicants remarks regarding the amended claim is there any discussion of limiting the scope of the term "pixel array."

C. **"circuitry coupled to and receiving an output from the at least one pixel array receiving"**

| Claim Term | Power2B's Construction | Samsung's Construction |
|---|---|---|
| "circuitry coupled to and receiving an output from the at least one pixel array receiving" **('675 Patent, claims 1, 13)** | Not indefinite<br><br>"circuitry coupled to and receiving an output from the at least one pixel array," where the term *pixel array* means "arrangement of semiconductor components" | Indefinite |

13. Samsung proposes alternative corrections for this term. Each of Samsung's alternative corrections are unsupported by the intrinsic evidence such that, from a perspective of a POSITA, each would be unreasonable to consider.

14. Samsung first proposes that "pixel array receiving" could refer to a "name of a physical component." Nowhere, however, does the '675 patent reference any component as a "pixel array receiving" or even "array receiving." As such, a POSITA would not interpret "pixel array receiving" as referencing some physical component of the invention.

15.     Samsung then proposes that "pixel array receiving" could be missing an object. Samsung suggests that this "missing" object could be "the electromagnetic radiation at a baseline level," "the amount of radiation detected," or "the change in the amount of radiation detected." Each of these suggestions is without any support.

16.     The specification of the '675 patent only uses the verb "receiving" or "received" in two contexts: (1) circuitry *receiving* signals from detectors/sensors; and (2) "user interface function selection functionality which is responsive to inputs *received* from the touch responsive input functionality." There is never any mention of a "pixel array" with the verb "receiving" in the specification. Rather, the specification only discloses that the pixel array can be "operative to sense a position of an object," "senses light reflected from the at least one object," "senses ambient light reflected from the at least one object," and "senses IR light reflected from the at least one object." As such, Samsung's speculative list of things the pixel array might be "receiving" are not supported by the specification.

17.     Samsung offers, as one suggestion, that the "missing" object might be "the electromagnetic radiation at a baseline level." This position is contrary to the intrinsic evidence in the specification of the '675 patent, however, where "radiation at a baseline level" is always *detected*, not "received." (*See* '675 Patent at 3: 38-39, 48, 57-59; 4: 55-57).

18.     Samsung's other two speculative suggestions for the "missing" object are similarly unsupported by the intrinsic evidence and suffer from the fact that simply substituting Samsung's suggestions results in nonsensical combinations of words. For example, "pixel array receiving the amount of radiation detected" is nonsense because a POSITA would understand that the "amount of radiation detected" is an output of the detector elements of the pixel array, not an input. Samsung's final speculative suggestion, "pixel array receiving the change in the amount of

radiation detected," is also nonsense because, again, "the change in the amount of radiation detected" is determined based on outputs of the detector elements of the pixel array. Since the pixel array can't "receive" quantities corresponding to its own outputs, both of these speculative suggestions by Samsung would not be reasonable to a POSITA.

19. When considering the intrinsic evidence, particularly the "Summary of the Invention" which includes language similar to this claim term that omits the errant "receiving," a POSITA would understand that correction of the second "receiving" is not subject to reasonable debate based on consideration of the claim language and the specification. (*See* '675 Patent at 4:52-5:2.)

20. In reviewing the prosecution history, there was nothing to suggest a different interpretation of the claims. While Samsung contends that the examiner's parroting of the claim language denotes that the examiner found this claim term in the prior art, a reading of the examiner's analysis of this claim terms reveals that the examiner did not consider "pixel array receiving" in their analysis. (*See* 46-2 at P2BGES-0003319.) Instead, the examiner addresses other limitations of the claim that are unrelated to the "pixel array receiving." As such, a POSITA would not view the prosecution history as suggesting a different correction. Deletion of the second "receiving" is the only reasonable and intrinsically supported correction.

### III. CONCLUSION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on the 5th day of October, 2021, at Shrewsbury, Massachusetts.

By: _____
D. Richard Brown III