```
 1            IN THE UNITED STATES DISTRICT COURT

 2           FOR THE WESTERN DISTRICT OF TEXAS

 3                    WACO DIVISION

 4   POWER2B, INC.,                )(

 5        PLAINTIFF,               )(    CIVIL ACTION NO.

 6                                 )(    6:20-CV-1183-ADA

 7   VS.                           )(    WACO, TEXAS

 8                                 )(

 9   SAMSUNG ELECTRONICS COMPANY   )(

10   LIMITED, ET AL.,              )(    OCTOBER 19, 2021

11        DEFENDANTS.              )(    1:32 P.M.

12

13                 CLAIM CONSTRUCTION HEARING

14         BEFORE THE HONORABLE JUDGE ALAN D ALBRIGHT

15                UNITED STATES DISTRICT JUDGE

16

17   FOR PLAINTIFF:    Mr. Jason Wietjes
                       Mr. Michael D. Pegues
18                     Polsinelli, PC
                       2950 N. Harwood Street
19                     Suite 2100
                       Dallas, TX 75201
20
     COURT REPORTER:   Ms. Shelly Holmes, CSR, TCRR
21                     Certified Shorthand Reporter
                       2593 Myrtle Road
22                     Diana, TX 75640
                       (903) 720-6009
23                     shellyholmes@hotmail.com

24
     (Proceedings recorded by mechanical stenography, transcript
25   produced on a CAT system.)
```

```
 1   FOR PLAINTIFF:      Mr. Eric R. Garcia
                         Mr. Adam P. Daniels
 2                       Polsinelli, PC
                         2049 Century Park East
 3                       Suite 2900
                         Los Angeles, CA 90067
 4
     FOR DEFENDANTS:     Mr. Ryan K. Yagura
 5                       Mr. Nicholas J. Whilt
                         Mr.  Benjamin Haber
 6                       O'Melveny & Myers, LLP
                         400 South Hope Street
 7                       18th Floor
                         Los Angeles, CA 90071-2899
 8
                         Mr. William Fink
 9                       O'Melveny & Myers, LLP
                         1625 Eye Street, NW
10                       Washington, DC 20006

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good afternoon, everyone.

2          Katherine, if you'd call the case, please.

3          COURTROOM DEPUTY:  Certainly.

4          Court calls Waco Case 6:20-CV-1183, Power2B, Inc.,

5    versus Samsung Electronics Company Limited, et al., for a

6    Markman Hearing.

7          THE COURT:  If I could have announcements from

8    counsel, please.

9          MR. WIETJES:  Good afternoon, Your Honor.  Jason

10   Wietjes for the Plaintiff, Power2B, Inc.  With me today are

11   Eric Garcia and Adam Daniels, who will be arguing on behalf

12   of Plaintiffs.  Also present is Michael Pegues.

13         MR. YAGURA:  Good afternoon, Your Honor.  Ryan

14   Yagura from O'Melveny Myers for Samsung, the Defendant.

15   And with me and arguing today will be Nick Whilt, William

16   Fink, and Ben Haber from the same firm, as well as we have

17   three client representatives from the U.S. and Korea

18   offices.  It's Phillip Lee, Sunghwan Youn, and Jung-A Yun.

19         THE COURT:  Welcome to your clients, especially

20   the ones that are -- through the magic of Zoom are able to

21   attend from Asia.  I think that's terrific that clients --

22   first, I think it's terrific that they attend at all, but,

23   second, I think it's wonderful that they're able to do so

24   without having to -- to come here.

25         So the first claim term, I believe, is -- has to

1   do with radiation at the baseline level.

2           Who is going to be arguing on behalf of Samsung

3   with respect to this claim term?

4           MR. YAGURA:  Your Honor, I think the first term

5   might be the "propinquity" term.  I don't believe anybody

6   designated the "baseline" -- that was a term for

7   construction.  I don't believe either party designated

8   that.

9           THE COURT:  Oh, I'm sorry.  I apologize.  No, I --

10  oh, I'm sorry.  Got it.

11          MR. YAGURA:  So the "propinquity" terms will be

12  argued by William Fink on behalf of Samsung.

13          THE COURT:  All right.  I got it here.  So, okay.

14          MR. YAGURA:  Great.  Thanks, Your Honor.

15          MR. FINK:  Good afternoon, Your Honor.

16          THE COURT:  And as I was reading through this -- I

17  have to say, I was reading through these claim terms

18  yesterday with Jeff.  I don't think I've propinquity used

19  in a -- I don't know, the -- the prosecuting attorney must

20  have been an English major in an earlier life.  So I'm kind

21  of interested to hear this one.

22          Mr. Fink?

23          MR. FINK:  I think you're right, Your Honor.  I --

24  it wouldn't be my go-to word for trying to convey the idea

25  of nearness.  But -- but we certainly appreciate the chance

1   to talk about this term.  And we agree that -- that

2   proximity, as Your Honor's preliminary construction

3   provides, is a useful synonym for -- for purposes of

4   understanding what propinquity means.

5        So really the dispute, Your Honor, is whether

6   propinquity should be construed in isolation or in the

7   context of the full term.

8        And while -- as we agree that proximity can be

9   used as a substitute, we respectfully disagree that the

10  preliminary construction relying on plain and ordinary

11  meaning is sufficient.

12        So what I'd like to do is talk about how Samsung's

13  construction clarifies something that's not clear, which is

14  that the claims are the system claims, and that the systems

15  must be configured to detect objects in proximity, as well

16  as objects that are touching, because touching is as

17  proximate as you can get.

18        If I could have the next slide, please.

19        And this is just another -- this is just another

20  version of the claim term in the '170 patent.  The parties

21  don't argue this separately.

22        So we could have the next slide.

23        So this is -- to orient ourselves, in this first

24  box, Claim 1, we see the -- the claim term in full context.

25  And the claim is to a device -- integrated display device,

1 and the device is configured to sense a position of an

2 object when the object has at least a predetermined degree

3 of propinquity.

4   So Power2 -- so you could think of that as a range

5 of proximities that includes touching, that predetermined

6 degree of propinquity -- at least a predetermined degree of

7 propinquity, and we'll get into that a little bit more.

8 But, in effect, it's a range of proximities.

9   Power2B argued that Samsung's construction seems

10 to require both at the same time.  In other words, an

11 object that is both touching and proximate.  That's not --

12 that's not correct.

13   If I could direct Your Honor to the second box

14 here, this is that same limitation with Samsung's

15 construction substituted.  So it's at least one sensor

16 configured to sense a position when the object -- when the

17 at least one object is within a predetermined proximity to

18 and when the object is touching.

19   So it's just -- it's requiring a capability that

20 isn't specified in the claim but is within the

21 predetermined proximity, nothing requiring both to happen

22 at the same time for an object.

23   So if I could have the next slide, please.

24   And -- and Claim 44 of the '093 patent is a

25 particularly good claim as a representative claim.  It

1   uses -- rather than having a predetermined degree of

2   proximity, it uses the term "within" a predetermined degree

3   of proximity.  Within means -- generally means inside of.

4   And so that's what I was saying is this claim is talking

5   about a range of proximities, and that must include

6   touching.  Touching is within a predetermined degree of

7   propinquity.

8           If I go to the next slide.

9           And here's an example using the figures from the

10   patent.

11           So here, we have two fingers near/proximate to a

12   device, the surface of a device, and if a person of

13   ordinary skill in the art were to choose a predetermined

14   degree of propinquity in advance, say in this figure that

15   it's 2 centimeters, for example, the -- you would have the

16   two fingers, H1 and H2, as within that predetermined degree

17   of propinquity, and that would satisfy the claim.

18           Could I have the next slide?

19           And this is -- this is exactly how the

20   specification describes H1 and H2, the fingers, at heights

21   H1 and H2.  They are located in propinquity to the

22   interactive surface element, and they both fall within that

23   shaded range, which, you know, we picked arbitrarily to --

24   to convey this point, but the shaded range being within a

25   predetermined range of propinquity.

1          And it's interesting here because the

2   specification points out, Your Honor, that H1 might -- may

3   be less than, equal to, or greater than H2.  So why would

4   it do that?  It's -- it's because the system -- the claim

5   system is looking at a range of propinquities within the

6   predetermined degree that was chosen.  Any fingers or

7   objects, stylus, what have you, falling within that range

8   are within the predetermined degree of propinquity.

9          In another example -- the next slide, please.

10          This is from Figure 22 of the '675 patent.  One of

11   the -- this one is described as having one of the user's

12   fingers located in propinquity, but the other one is

13   actually touching the surface.  But here again, both are

14   within the predetermined degree of propinquity.

15          Now, P2 -- Power2B argues that the "touch" and

16   "propinquity" terms used in the -- throughout the

17   specification are intended to describe different

18   relationships.  But I think we've shown it's clear here

19   that both fall within this predetermined degree of

20   propinquity.  And that makes sense.  Touching -- as I -- as

21   I said before, touching is as in propinquity as you can get

22   on the surface without going through the surface.

23          And this is also borne out by the dependent

24   claims.

25          So if I could have the next slide, please.

1          So there's a chain of dependency that occurs

2     throughout some of these patents, and here's an example.

3     Claim 1 of the '675 patent is -- is -- has got the familiar

4     language, configured to sense the position of an object

5     having -- or when it has at least a predetermined degree of

6     propinquity.

7          Then in Claim 4, you'll see that the claimed

8     system -- the claimed assembly is further configured to

9     distinguish at least positions -- between positions of at

10    least one object touching or not touching the

11    position-sensing assembly.

12         So, Your Honor, if Claim 1 does not require having

13    a predetermined degree of propinquity to include touching

14    as well as mere proximity, then Claim 4 would require a

15    configuration to do something that Claim 1 doesn't have to

16    support, which is sensing a touch.

17         So, you know, the argument from Power2B is that

18    the intervening Claim 3 introduces the term "utilization

19    circuitry" and that it's "utilization circuitry" in Claim 4

20    that is configured to distinguish at least between

21    positions of the at least one object touching or not

22    object (sic).  That's -- that's not right.

23         So utilization, yes, it's true, utilization

24    circuitry in Claim 4 is the thing that's distinguishing a

25    touch from a non-touch, but it's not the utilization

1   circuitry that does the sensing of the position of the

2   object in Claim 1.  It's the detector elements in Claim 1

3   that do the sensing of the objects.

4          So for them to be able to sense both the proximity

5   as well as touching, for Claim 4 is -- to be able to

6   distinguish a non-touch from a touch, Claim 1 needs to be

7   able to sense when there is a touch and a non-touch.

8          And the next slide, there's just -- you know, I

9   mentioned there were several chains.  I don't know need to

10  go through every one, they're all similar.

11         Claim '850 patent, Claims 31, 33, and 34; the '093

12  patent, 1, 8, and 16, same -- same thing.

13         Let's turn to the next slide.

14         This touching -- the idea of touching is really

15  what the alleged invention is all about.  Here is

16  illustrative Figure 1A from the '850 patent.  It

17  illustrates a mobile phone having a touch responsive input

18  in accordance with the preferred embodiment.

19         '093 patent, same thing.

20         In the lower right, other -- the other patents,

21  touch responsive input functionality in accordance with

22  preferred embodiments.  If the device does not have to

23  detect a touch, these embodiments are read out of the

24  independent claims.

25         Next slide, please.

1          So in addition to the other arguments that I

2   mentioned, Power2B incorrectly argues that this is

3   importing an extraneous limitation unsupported by the

4   intrinsic evidence.  And we've just gone through a lot of

5   intrinsic evidence, the specification, the claims make

6   clear that the system must be configured to sense a touch.

7          Unless there are any other questions or there are

8   any questions from Your Honor, I'll conclude where I

9   started.  The construction of this full term is needed to

10  clarify that a system configured to sense object having --

11  or within a predetermined degree of proximity, or

12  propinquity, requires also sensing a touch.

13          Thank you, Your Honor.

14          THE COURT:  Okay.  I'll be back in just a second.

15          (Pause in proceedings.)

16          THE COURT:  Let's go back on the record.

17          I don't think there's anything in the

18  specification that supports an inclusion of the words "and

19  when the object is touching."  I think that would be an

20  incorrect construction of the word "propinquity."

21          The Court is going to go with the word that we

22  submitted already, which is "proximity."

23          The next claim term up is "pixel array."

24          Who will be taking this on behalf of the

25  Defendant?

1          MR. WHILT:  Good afternoon, Your Honor, this is --

2          THE COURT:  Is this going to be -- is this the

3   Defendant or Plaintiff going first?

4          MR. WHILT:  This is the Samsung Defendant.  The

5   Defendant going first.

6          THE COURT:  Okay.  Very good.

7          MR. WHILT:  Good afternoon, Your Honor.  This

8   is -- my name is Nick Whilt.  Good to see you again.

9          THE COURT:  I was going to say, welcome back.  I

10  remember --

11         MR. WHILT:  Thank you.

12         THE COURT:  -- you did a great job last time.  I'm

13  looking forward to hearing from you.

14         MR. WHILT:  Thank you.  Good to see you again,

15  too.

16         So the next term as you just mentioned I'm going

17  to be addressing is the term "pixel array" that -- and this

18  term is included in the asserted claims of the '675, '850,

19  '093, and '931 patents.

20         Your Honor, Samsung respectfully disagrees with

21  the preliminary construction, and we urge you to reconsider

22  it.

23         As background, this is a claim term that the

24  Plaintiff proposed for construction.  Samsung originally

25  didn't believe this term required construction because the

1   term "pixel" has had a very well-known meaning for over 50

2   years.

3           And I'd like to start by pointing out something

4   that's very important about this claim term.  As -- if you

5   look at the first bullet point on this slide, as shown in

6   that bullet point, the term "pixel" is just an abbreviation

7   for the phrase "picture element."  The letters "p-i-x" at

8   the beginning of pixel are short for picture, and the

9   letters "e-l" at the end are short for element.

10          So Samsung's construction just adopts this

11  well-known meaning.  In other words, Samsung -- Samsung's

12  construction incorporates the plain and ordinary meaning of

13  pixel, because pixel is just an abbreviation for picture

14  element.

15          And -- and we believe that any construction that

16  doesn't require a picture element, such as the preliminary

17  construction, can't be correct, because it would be

18  inconsistent with the term's plain and ordinary meaning.

19          If we go to the next slide.

20          As I just mentioned, it's been known for a

21  decade --

22          THE COURT:  I'm going to interrupt you because I

23  think you may be right.

24          So let me hear from opposing counsel.  I'm

25  actually strongly considering just giving plain and

1   ordinary meaning on this.

2        So let me hear from -- I'll give you an

3   opportunity to respond, but let me hear from the Plaintiff

4   as to why pixel array isn't just a pixel array.  I mean,

5   it's -- there are few terms that are more easily wide known

6   or well-known, and so I'm -- I'm not sure why we have to

7   construe this.

8        MR. DANIELS:  Hi, Your Honor, this is Adam Daniels

9   on behalf of Power2B.

10        So the long story short about I guess the dispute

11   with the "pixel" word is really -- we're really trying to

12   hedge against a requirement that there has to be a display

13   component.

14        So, ultimately, the words "pixel array" are used

15   in two different contexts in the specification and in the

16   claims, where there's the context of pixel array that

17   actually displays, you know, visually digital content, like

18   a traditional display panel would, and there's also the use

19   of arrays in the context of detecting, photo sensitive

20   components that are actually receiving and sensing.

21        So my only concern with the -- with the

22   construction that was proposed by Defendants was that it

23   would require some sort of display component.

24        THE COURT:  So here's what I get a lot, and I'm

25   not criticizing anyone here.  What I get a lot, when I see

1  a claim term like "pixel array," and one thing I do is

2  Google it, you know, I'm not looking for a construction

3  there, but if you get 3 million hits on pixel array, it

4  tells you that -- what it -- here's what it -- the reason I

5  do that.  What it tells me is that when the prosecuting

6  attorney was drafting this patent, this was not a claim

7  term he thought he had to explain because he would -- he

8  thought pixel array is something everyone would just

9  under -- know what that means, unless he does something on

10 purpose to -- to -- you know.

11        But, here, I get the sense both of you are worried

12 what the other side's going to say pixel array is, and

13 you're both trying to be very prophylactic.  And I don't do

14 that in my constructions on a claim term like this where I

15 see -- I think it just is plain and ordinary meaning.  I

16 get it.  I've read O2Micro, all that.

17        But I'm going to give this plain and ordinary

18 meaning.  And here's the deal, if when -- when the

19 Plaintiff sends their infringement contentions or final

20 infringement contentions or if the Plaintiff's technical

21 expert says Samsung infringes because the accused products

22 have a pixel array, if Samsung believes that that is --

23 what they do could not be a pixel array as a matter of law,

24 then come back, and I'll take it up on a summary judgment

25 level.

1          And so -- and I know I've talked too long, but,

2    again, I try and let you all know how I see the world.

3    Is -- this is the best analogy.  I hate analogies, but if

4    one of you came up with a method patent on how to install

5    AstroTurf at a baseball field in the outfield, and the

6    magic of it was getting it done in a way with a curved

7    field, you know, I don't know if curved is like an umbrella

8    or curved is like a C.  What I do know is that that patent

9    would not apply to a soccer field.  There's no curve in a

10   soccer field.  No curve in a football field.

11         And so I don't feel like I would need to construe

12   "curved" to tell you how much curve it needs, but there's

13   got to be a curve.  And that's the way I see this here.

14         I think I will be able to tell by looking at the

15   Plaintiff's expert's expert if he is saying that Samsung

16   has a pixel array, and -- and they don't.

17         So I'm going to give plain and ordinary meaning on

18   pixel array.  And that's the reason why.

19         The next claim term up is "the at least one pixel

20   array," and it goes on from there.  The Court's preliminary

21   construction is that this is indefinite.

22         So I'll hear from the Plaintiff first.

23         MR. GARCIA:  Hi, Your Honor.  This is Eric Garcia

24   for Plaintiff.  Let me --

25         THE COURT:  Mr. Garcia, I don't think I've had the

1  pleasure of you being in front of me, have I?

2          MR. GARCIA:  No, this will be a first for me, Your

3  Honor.

4          THE COURT:  Welcome, Mr. Garcia.  Where -- where

5  are you -- where are you at right now?

6          MR. GARCIA:  I'm in Los Angeles.

7          THE COURT:  I saw something that said Los Angeles

8  in the back, so...

9          It's been a tough series so far.

10          MR. GARCIA:  Oh.  Yeah, let's not mention that.

11          THE COURT:  Good luck -- well, I'm -- I'm pulling

12  for the Dodgers, so...

13          At any rate, I invite -- I thank you for being in

14  my court, and I look forward to hearing your presentation.

15          MR. GARCIA:  Thank you, Your Honor.

16          If we could go ahead and proceed down to Slide 7.

17          Your Honor --

18          Can we go back up?  Sorry.  There we go.  Down --

19  down one more.  There we go.

20          Your Honor, here's the term we're going to be

21  talking about today.

22          Next slide, Jason.

23          The dispute here is whether or not the highlighted

24  text here renders Claims 1 and 13 of the '675 patent

25  indefinite.

1          Next slide.

2          Samsung -- Samsung contends that the claims are

3    indefinite because it is unclear what the term "a surface

4    thereof" is referencing.  Samsung posits that it could be

5    one of three things.  A surface of the inventory active

6    surface element, a surface of the pixel array, or a surface

7    of the object.

8          I'll address each one in turn.

9          Next slide.

10         If the surface thereof we're referencing is

11   surface of the object, we know that such a reading would be

12   completely unsupported by the intrinsic record.  Nowhere in

13   the specification is position sensing of an object

14   described or disclosed with respect to a surface of the

15   object.  Rather, every instance of position sensing is made

16   with respect to a component of a device.

17         In addition, as stated in Dr. Brown's unrebutted

18   expert declaration, the resulting term would be nonsensical

19   to a POSITA, as a POSITA would not understand how to sense

20   a position of an object with respect to the object itself.

21         Next slide.

22         I now turn to whether a surface thereof could be

23   referencing a surface of the interactive surface element.

24         First, we know that the claim already recites a

25   surface attributed to the interactive surface element.  As

1   such, when the term "a surface thereof" later appears, it

2   is introduced with the letter "a," thereby denoting that

3   this surface is different from the previously-recited

4   surface.

5         Indeed, when the applicant wished to correlate

6   position sensing of an object with respect to a surface of

7   the interactive surface element, it knew how to do so.

8         Next slide.

9         For example, in Slide 31 of the '850 patent, a

10  plate is introduced that defines a surface.  Later in the

11  same claim, the same surface is referenced in regard to

12  position sensing for the use of the words "the."

13        Specifically, the applicant claimed that the pixel

14  array is configured to sense a position of the object with

15  respect to the surface.  In contrast, Claim 1 of the '67

16  (sic) patent uses the word "a" to necessarily introduce a

17  new surface.

18        Next slide.

19        This leads us to the only logical and

20  intrinsically-supported object, that a surface thereof must

21  be referencing a surface of the pixel array.

22        Next slide.

23        Specifically, the specification discloses that a

24  pixel array contains structure that may include a cover

25  layer that has a surface.  For example, there's an excerpt

1   here of Figure 17A which depicts an array having a

2   substrate, denoted as Reference No. 1164; a number of the

3   detector elements, denoted as Reference No. 1162; and a

4   cover layer, denoted as Reference No. 1166.

5         Light reflected from an object passes through the

6   cover layer and onto the detectors of the pixel array.  As

7   such, the cover layer represents a surface to which

8   position sensing of an object may be performed.

9         Next slide.

10        Now, to the extent Samsung has demonstrated that

11  there are at least two plausible options that the term "a

12  surface thereof" could be referencing, specifically that it

13  could be a surface of the interactive surface element or a

14  surface of the pixel array.  We know that the mere fact

15  that a claim term may be amenable to more than one

16  interpretation does not on its own render a claim

17  indefinite.

18        Next slide.

19        Instead, Samsung must demonstrate by clear and

20  convincing evidence that a POSITA is unable to ascertain

21  the scope of the claim with reasonable certainty in light

22  of the intrinsic evidence.  Here, Samsung has failed to do

23  so.

24        First, Samsung has failed to explain how either of

25  these options would prevent a POSITA from ascertaining the

1  scope of the claim.  At most, Samsung leaves out

2  alternative options without following through how each

3  prevents a POSITA from understanding the scope of the

4  claim.

5      Second, Samsung failed to rebut Dr. Brown's expert

6  testimony demonstrating that under either of these options,

7  a POSITA would be able to ascertain the scope of the claim

8  because at its core, the claim recites a device for

9  position sensing of an object with respect to a device.

10      And, finally, Samsung's options are distinctions

11  without differences.

12      Next slide.

13      Certain embodiments disclose that a surface of the

14  interactive surface element may act as a cover layer for

15  the pixel array such that the pixel array and the

16  interactive surface element share a surface.

17      For example, shown here in Figure 11A, Figure 11A

18  depicts an embodiment where the rearward-facing surface of

19  the interactive surface element, denoted by Reference No.

20  811, acts as a cover layer for the pixel array.  In this

21  example, the cover layer of the pixel array and the

22  interactive surface element are one of the same.

23      In effect, the result is that because these

24  components are one of the same, an outer surface of the

25  pixel array is completely aligned with the rearward-facing

1   surface of the interactive surface element.

2        Here, there is no difference in the scope of the

3   claim, regardless of whether a surface thereof is

4   understood as referencing a surface of the interactive

5   surface element or a surface of the pixel array.

6        Next slide.

7        In conclusion, we believe we have shown that the

8   only logical intrinsically-supported option is that the

9   surface thereof is referencing a surface of the pixel

10  array.

11       Regardless, though, even if Samsung has

12  demonstrated there may be two plausible options, that alone

13  is not enough to render the claim indefinite, and we

14  believe we have demonstrated that under either option, the

15  scope of the claim remains unchanged.

16       As such, a POSITA in our view would be capable of

17  ascertaining the scope of the claim with reasonable

18  certainty based on the intrinsic record.

19       Thank you, Your Honor.

20       THE COURT:  A response?

21       MR. HABER:  Yes, Your Honor.  Benjamin Haber for

22  Samsung.

23       I just wanted to point out that the patent owner

24  hasn't really raised anything that wasn't already addressed

25  in its brief.  As I go through this claim element, I do

1   want to highlight a few important points.

2          So this claim term appears in all of the

3   independent claims, Claims 1 and 13 of the '675 patent.

4   And the dispute is whether the "surface thereof" term,

5   appearing in these independent claims, renders the claim

6   indefinite, as the Court found in its preliminary

7   construction.

8          Power2B proposes a -- a construction.  They pick

9   an option that they prefer, but the Court got it exactly

10  right.

11         If we can go to the next slide.

12         So what we have shown here is Claim 1 of the '675

13  patent.  Claim 1 is representative of Claim 13.  You can

14  see highlighted in yellow the term "surface thereof," and

15  the surface thereof plainly is referring back to some other

16  recited object in the claim.

17         And so looking back at the claim, there are at

18  least three different objects that are recited, and a

19  POSITA could plausibly understand the surface thereof as

20  referring to any one of these three options.

21         So I'll go through each one in turn.

22         If you'll go to the next slide.

23         The first option is that a POSITA might understand

24  the surface thereof as referring back to an interactive

25  surface element which defines a surface.  One reason that

1 that might be plausible is that that component expressly

2 defines a surface in the claim, whereas no other component

3 of the claim does.

4          And, in fact, it makes sense looking at the

5 specification, as well.

6          If you go to the next slide.

7          We can see Figure 18C showing the interactive

8 surface element in green at the surface of the device.  The

9 specification also explains that the interactive surface

10 element defines a surface, explains sensing a position of

11 an object with respect to that surface.  So a POSITA could

12 reasonably conclude that the surface thereof is referring

13 back to the interactive surface element.

14          If we go to the next slide.

15          You see the second option, Power2B's preferred

16 option, highlighted in peach color there.  They argue that

17 the surface thereof refers to the at least one pixel array

18 which comprises the plurality of detector elements.

19          What you'll note is that nowhere in that component

20 is a surface actually recited.

21          I'll come back to Claim 2, but I'd like to go

22 on -- Option 2, but I'd like to go on to Option 3 quickly.

23          Go to the next slide.

24          So the third option, and this is an option that

25 Power2B seems to criticize, is that a surface thereof is

1   referring to the at least one object.  The one plausible --

2   plausible reason to refer back to the object is that it is

3   the noun that is immediately following the surface thereof.

4           And, in fact, if you look at the next slide, you

5   can see Figure 21A of the '675 patent, the specification

6   shows light being reflected from the surface of objects

7   being detected.  You can see the fingertips of the user

8   interacting with the device, reflecting light.  So it is

9   plausible that the surface thereof could refer back to the

10  objects that are being detected by the sensor device.

11          If we go to the next slide.

12          So coming back to Option 2.  Option 2 is kind of

13  the worst of the three options for a few reasons.  One,

14  it's inferior choice to Option 1 because it doesn't

15  expressly recite a surface in the claim.  The specification

16  doesn't describe a surface of the pixel array.

17          Power2B points to a particular embodiment that has

18  a cover layer, and they say, ah-ha, that's the surface.

19  But the reality is there are a number of embodiments in the

20  specification that don't have any surface recited, that

21  don't have a cover layer.  For example, embodiments in

22  Figure 16A doesn't have a cover layer.  And it expressly

23  says at Column 4:35 to Line 65, that the -- that particular

24  embodiment, the embodiment of 16A, obviates the need for

25  any cover layer.

1         So the point is that there isn't anything in the

2  specification to provide any reasonable basis that a POSITA

3  would conclude that Option 2 is correct or preferable over

4  Option 1.

5         And Option -- if you can go to the next slide.

6         Option 2 is also inferior to Option 3.  So there's

7  nothing in the claim that kind of grammatically links this

8  pixel array to the surface thereof, which comes much later

9  in the sentence.  Just applying the general rules of

10  grammar, you would expect that when you have a surface

11  thereof, whatever the thereof is referring to, is the noun

12  that immediately precedes -- precedes that statement.  And

13  the noun that immediately precedes that statement is the

14  object.

15         So kind of -- it is plausible that a POSITA

16  reading this claim term could understand that Option 3 is

17  actually the correct option.

18         But even -- if you go to the next slide.

19         Even putting that issue aside, let's stop and look

20  at what Power2B is actually asking the Court to do.

21         So they're asking the Court to take out "the

22  surface thereof" and replace it with "a surface of the

23  pixel array."  And what you'll note when that happens, you

24  have language highlighted in pink in Claim 1 of the '675

25  patent, which is essentially identical and repeated twice.

1          So Power2B's construction renders the repeated

2    language superfluous, for one thing, and constructions that

3    render claim language superfluous are generally disfavored.

4    But perhaps more importantly here, we have this repeated

5    claim language appearing twice in the claim, and a POSITA

6    would not understand which of these repeated sets of words

7    actually have operative weight in the claim when they're

8    trying to read it and understand it and apply it.  So if

9    anything, Option 2 just makes the claim even more

10   indefinite.

11          Go to the next slide.

12          So at bottom, what we have is a claim that has at

13   least three plausible options for how to understand what

14   particular surface is being referred to.  The patent

15   specification doesn't explain which one of these options is

16   correct.  So a POSITA is left with nothing to conclude that

17   he could be reasonably certain as to which of any of these

18   options is actually the correct option.

19          And in view of that, this claim is indefinite.

20   And we would ask the Court to maintain its preliminary

21   construction, which got the analysis exactly right.

22          THE COURT:  A response?

23          MR. GARCIA:  Thank you, Your Honor.  Eric Garcia

24   again for Plaintiff.

25          Your Honor, if I could --

1        Could I get the Defendants' slides back on the

2  screen, or should I -- should I try to share my screen?

3  I'd like to talk about some of the slides they presented,

4  if possible.

5        MR. WHILT:  I can put them up, Eric.

6        MR. GARCIA:  Okay.  Let me see if I can do that.

7  One second.

8        Hopefully this is presented to everybody.  Yes?

9  Okay.

10       I want to touch upon the -- the Option No. 3 here.

11  Defendants state that one option is this -- that the

12  surface thereof could be referencing a surface of the

13  object, and they highlight in blue the fingertips.  I want

14  to just note that the claim says, you know, position

15  sensing of an object with respect to a surface thereof.

16       So what Defendant seems to be saying here is that

17  you're sensing a position of an object with respect to the

18  end of the fingertips.  But the claim require -- the claim

19  is stating that there has to be something relative to that

20  object to which you're detecting its position to.

21       Sure, the -- the light may be reflected from the

22  end of the object, but that's not where the position

23  sensing detection is occurring.  It's -- it has to be

24  relative to a component of the device.

25       In other words, Option 3 makes no sense.  You

1  know, when you plug that into the claim, position sensing

2  of an object with respect to the end of an object or

3  surface of an object just -- just doesn't make any sense

4  for the reasons I stated earlier.

5       Another thing that was mentioned was that the

6  pixel array does not have the surface.  I would note that

7  here in our slides, we have an illustration, Figure 11A, of

8  a pixel -- of a pixel array.  And color-coded here in

9  Figure 11A in red is a pixel array 800.  There's a

10 substrate, 806, detector elements arranged thereon, 808.

11 These are all surfaces.

12      To the extent that a cover layer is obviated

13 because the rearward surface -- rearward-facing surface of

14 interactive surface element, 811 here, the fact that that's

15 being -- acting as a cover layer doesn't mean that the

16 pixel array is devoid of any surfaces whatsoever.  That's,

17 again, nonsensical.

18      Defendant also mentioned that there was some

19 superfluous language if the surface thereof were to be

20 construed as a surface of the pixel array.

21      What the Defendant fails to acknowledge is that

22 the second instance of this recital goes on and states

23 that -- it goes on and adds limitations that the position

24 sensing occurs when the at least one object has a

25 predetermined degree of propinquity.

1        In other words, this limitation adds another

2   limitation to it.  This second highlighting in orange is --

3   this further limitation is adding on to it.  It's not -- it

4   doesn't just appear with a period or a semicolon.  It moves

5   on to the next limitation.  It's referencing the previous

6   limitation as it repeats that limitation, as it's commonly

7   done with claim drafting.

8        That's it, Your Honor.  Thank you so much.  If you

9   have any questions, I'm happy to try to address them.

10       THE COURT:  And reply?

11       MR. HABER:  Yes, Your Honor.  Two quick points

12   that I just wanted to hit on.

13       So Power2B argues that it doesn't make sense to --

14   to position sensing of the object with respect to itself.

15   That's, respectfully, just not correct.  I mean, the sensor

16   device could be configured to sense the position of the

17   finger in space, for example, in which case, the position

18   of the finger is -- is what is actually being sensed.

19       And the second point, as the fact that the pixel

20   array in the claim is not recited with the surface, that is

21   problematic in a number of -- for a number of reasons.

22       So what Power2B has done is they've gone through

23   the specification and plucked out things that they say, oh,

24   this could be a surface, this could be a surface, it could

25   be the cover layer, it could be the detector elements, it

1    could be the structure.  That is exactly the analysis that

2    should not be done.

3          The fundamental issue is that a POSITA would not

4    be reasonably certain what surface is being referred to.

5    It's true that there are a few different things in a few

6    different embodiments that one might point to, but the

7    reality is that a POSITA would not understand any single

8    thing that is actually being referred to if the Court were

9    to adopt the proposed construction by Power2B.

10          THE COURT:  Anything else from Plaintiff?

11          MR. GARCIA:  Nothing further, Your Honor.  Thank

12    you.

13          THE COURT:  Thank you, Mr. Garcia.

14          I'll be back in a few seconds.

15          (Pause in proceedings.)

16          THE COURT:  If we can go back on the record.

17          The Court's going to maintain its preliminary

18    construction that this claim term is indefinite.

19          My sense is that that takes care of the final

20    claim term, as well.

21          But, Mr. Haber, I have you on my screen.  I'll ask

22    you if that's correct?

23          MR. YAGURA:  Your Honor, it's actually Ryan Yagura

24    will be presenting on the last -- the last claim term,

25    indefiniteness of "circuitry coupled to and receiving an

1    output from the at least one pixel array receiving."

2          THE COURT:  Okay.  But I'm just saying, do we need

3    to take it up separately from the one I just did?

4          MR. YAGURA:  You know, I guess, Your Honor, if

5    you're -- that does -- that does render both Claims 1 and

6    13 of the '675 patent invalid.

7          THE COURT:  Okay.

8          MR. YAGURA:  So I can just reserve, if it's okay

9    with you, and we'll stand on that record.

10          THE COURT:  Yeah, that's -- that's my -- my

11    determination.

12          So but since -- Mr. Yagura, since I have you on

13    the screen, do you know if we've set this for a trial?

14          MR. YAGURA:  I believe --

15          THE COURT:  Any of you can answer.

16          MR. YAGURA:  I believe we have.  Let me -- let me

17    look.  And Mr. Haber may be able to help me.

18          Sorry, Your Honor, we've had a couple of trial

19    settings with you recently.  Let me just check this one.

20          THE COURT:  Okay.  That happens.

21          MR. WIETJES:  Your Honor, this is Mr. Wietjes.

22          I believe the deadline that was -- that was set

23    forth in the scheduling order that's been submitted to the

24    Court is November 21st, 2022, with the beginning of jury

25    selection.

1          THE COURT:  Is the 21st a Monday, do you know?

2          MR. WIETJES:  Not off hand.

3          THE COURT:  And I'll explain to you why that's not

4    such an odd question in a second, so...

5          MS. MOON:  Yes, it is.

6          MR. YAGURA:  The 21st is a Monday, Your Honor.

7          THE COURT:  Okay.  So the jury -- that's when

8    trial starts.  The jury selection will be the week before.

9    And my magistrate will do that on the Thursday or Friday

10   before, so...

11         (Off-the-record discussion.)

12         THE COURT:  Oh, oh, so we are going to change

13   that.  Apparently, that's the week of Thanksgiving.  And,

14   unfortunately, there's no good way to do -- you know, it's

15   probably equally bad to go the week after or whatever,

16   but -- and I tried a case the week of Thanksgiving, I've

17   tried a case the week after, and neither one was much fun.

18         Why don't we do this, we'll -- we'll look at our

19   calendar, and we'll get you a trial date.  Regardless of

20   the trial date, you should presume that the jury selection

21   will occur the Thursday before, and the magistrate will be

22   doing it.  And when you show up on that date at 9:00 a.m.,

23   we'll be doing the opening arguments.

24         So is there anything else we need to take up at

25   the hearing?

1          MR. YAGURA:  Not from Defendants, Your Honor.

2     Thank you.

3          THE COURT:  And for Plaintiff?

4          MR. HABER:  Nothing for Plaintiff.

5          THE COURT:  Thank you, guys.  Have a good -- have

6     a good week.  Take care.

7          (Hearing concluded at 2:19 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            CERTIFICATION

2

3         I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9     /S/ Shelly Holmes                    10/22/2021
     SHELLY HOLMES, CSR, TCRR             Date
10   CERTIFIED SHORTHAND REPORTER
     State of Texas No.: 7804
11   Expiration Date: 10/31/2021

12

13

14

15

16

17

18

19

20

21

22

23

24

25